Case 1:24-ap-01055-MB Doc 51 Filed 10/11/24 Entered 10/11/24 Desc Main Document Page 20 of 28

paid to Bommel, the Debtor was in serious financial distress and was not paying its debts as they came due and was facing substantial claims for its breaches of the 2021 and 2022 Agreements with Fontainebleau and involved in Arbitration.

88. Plaintiff is informed and believes that the 2-Year Transfers included payments for substantial deferred compensation, contractual severance and vacation pay, and separate severance payouts for which the Debtor did not receive reasonably equivalent value.

89. Plaintiff is entitled to avoid and set aside the 2-Year Transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

## SIXTH CLAIM FOR RELIEF

**(Avoidance of Constructively Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B) – against Bommel)**

90. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

91. Plaintiff is informed and believes that on or within two years before the Petition Date, the Debtor made the 2-Year Transfers to, or for the benefit of Bommel.

92. Plaintiff is informed and believes that the 2-Year Transfers were transfers of property in which the Debtor had an interest.

93. Plaintiff is informed and believes that the Debtor did not receive reasonably equivalent value in exchange for any of the 2-Year Transfers.

94. Plaintiff is informed and believes that at the time of the 2-Year Transfers the Debtor was insolvent or became insolvent as a result thereof.

95. At all relevant times within the two years prior to the Petition Date, the Debtor (i) was insolvent, or became insolvent as a result of each such transfer; (ii) was engaged in or was about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation to the business or transaction; or (iii) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

96. Plaintiff is entitled to avoid and set aside the 2-Year Transfers pursuant to 11 U.S.C. § 548(a)(1)(B).

**SEVENTH CLAIM FOR RELIEF**

**(Avoidance of Preferential Transfers Under 11 U.S.C. § 547 – against all Defendants)**

97. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

98. Plaintiff is informed and believes that the Preferential Transfers were a transfer of an interest of the Debtor in property.

99. Plaintiff is informed and believes and thereupon alleges that the Preferential Transfers were made to the Defendants or for the benefit of the Defendants.

100. Plaintiff is informed and believes that the Preferential Transfers were made to or for the benefit of Defendants at a time in which Defendants were a creditor of the Debtor, as the term "creditor" is defined by 11 U.S.C. § 101(10).

101. Plaintiff is informed and believes that the Preferential Transfers were made for or on account of an antecedent debt owed by the Debtor to Defendants.

102. Plaintiff is informed and believes that the Preferential Transfers were made while the Debtor was insolvent.

103. Plaintiff is informed and believes that the Preferential Transfers enabled Defendants to receive more than it would have received as a creditor if: (a) the Preferential Transfers had not been made; and (b) Defendants received payment of the debts they were owed to the extent provided under the Bankruptcy Code.

104. Plaintiff is informed and believes that interest on the Preferential Transfers has accrued and continues to accrue at the maximum legal rate pursuant to 28 U.S.C. § 1961 from the time the Preferential Transfers were made.

105. Plaintiff performed reasonable due diligence in the circumstances of Defendants' known or reasonably knowable affirmative defenses.

106. Plaintiff is entitled to avoid and set aside the Preferential Transfers pursuant

to 11 U.S.C. § 547.

**EIGHTH CLAIM FOR RELIEF**

**(Avoidance of Post-Petition Transfers Under 11 U.S.C. § 549 – against Bommel)**

107. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

108. Plaintiff is informed and believes that the Post-Petition Transfers were transfers of property of the Estate.

109. Plaintiff is informed and believes that the Post-Petition Transfers occurred after the commencement of the Debtor's Bankruptcy Case.

110. Plaintiff is informed and believes that the Post-Petition Transfers were not authorized by the Bankruptcy Court or made in accordance with the provisions of the Bankruptcy Code.

111. Plaintiff is entitled to avoid the Post-Petition Transfer pursuant to 11 U.S.C. § 549.

**NINTH CLAIM FOR RELIEF**

**(Conversion – against all Defendants)**

112. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

113. As described above, the Debtor disposed of its assets to Defendants, the Executive Team, and others leading up, and subsequent, to this bankruptcy case, despite the Debtor's own dire financial circumstances.

114. Defendants exerted control over the Debtor's assets, and knowingly participated in, or was negligent in the management and supervision of the Debtor's affairs causing or contributing to the Debtor's ultimate liquidation.

115. These assets are rightfully the property of the Estate, as they were transferred to the Debtor's insiders or entities controlled by the Debtor's insiders, who used the Debtor for their own convenience and benefit and disregarded the Debtor's public purpose as a non-profit organization and were outside of the ordinary course of business.

Case 1:24-ap-01055-MB Doc 1 Filed 10/12/24 Entered 10/12/24 21:30:43 Desc Main Document (part 2) Page 23 of 28

Moreover, to the extent that the subject transfers were made post-petition, they were not authorized by the Bankruptcy Code or the Bankruptcy Court.

116. Consequently, the recipients of these assets now wrongfully have control over the Debtor's assets, in an amount which shall be proven at trial, but currently estimated to be at least $2 million, which are rightfully Estate property.

117. Defendants' acts were undertaken for improper purposes as alleged above and were willful, wanton, deliberate, malicious, and in conscious disregard of the rights of the Estate's creditors, and were designed and intended to cause and did, in fact, cause the Estate's creditors to suffer actual damages and therefore justify the awarding of exemplary and punitive damages.

**TENTH SEVENTH CLAIM FOR RELIEF**

**(Recovery of Avoided Transfers 11 U.S.C. § 550 – against all Defendants)**

118. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

119. Plaintiff is informed and believes that the Preferential Transfers, the 2-Year Transfers, and the Post-Petition Transfers (collectively, the "Transfers") are avoidable, variously, pursuant to 11 U.S.C. §§ 547, 548, and/or 549.

120. Plaintiff is informed and believes that Defendants and Does 1-50, inclusive, were, variously, the initial transferee and/or was the entity for whose benefit the Transfers were made or the mediate or immediate transferee of the Transfers.

121. Plaintiff, therefore, is entitled to recover and preserve the Transfers from Defendants for the benefit of the Estate pursuant to 11 U.S.C. §§ 550(a) and 551, plus interest at the maximum legal rate from and after the date of each of the Transfers.

**ELEVENTH CLAIM FOR RELIEF**

**(Unjust Enrichment – against all Defendants)**

122. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

123. Plaintiff is informed and believes that Defendants engaged in wrongful and

inappropriate conduct as described above, without valid justification or excuse which resulted in harm to the Debtor. Such conduct includes, but is not limited to, breaching their fiduciary duties of loyalty, care and good faith.

124. Defendants' actions were targeted at Fontainebleau and almost certain to cause financial harm to its creditors and primarily Fontainebleau by intentionally depleting the Debtor's resources without just cause at a time when the Debtor faced substantial liability to Fontainebleau and was insolvent.

125. In many cases, Defendants received benefits from such conduct that were rightly due to the Debtor or its creditors. Defendants had actual knowledge or reasonable foreseeability that their conduct would result in injury and substantially harm the Debtor's creditors.

126. It would be unjust for Defendants to retain such benefits.

127. Plaintiff is entitled to restitution from the Defendants in an amount subject to proof at trial.

**TWELFTH CLAIM FOR RELIEF**

**(Disallowance of Claim - 11 U.S.C. § 502(d) – against all Defendants)**

128. Plaintiff realleges and incorporates herein by reference each and every allegation contained in all prior paragraphs of this Complaint.

129. Defendants are a transferee of property subject to avoidance pursuant to 11 U.S.C. §§ 547, 548, and/or 549.

130. Plaintiff may recover the property transferred by the Transfers, or the value thereof, from Defendants pursuant to 11 U.S.C. § 550(a).

131. Defendants have not paid the amount or turned over the property to the Estate for which they are liable pursuant to 11 U.S.C. § 550(a).

132. Plaintiff is entitled to disallowance of any claim against the Estate asserted by Defendants, pursuant to 11 U.S.C. § 502(d) and Rule 3001(c) of the Federal Rule of, because Defendants, and each of them are a transferee of property pursuant to 11 U.S.C. §§ 547, 548, and/or 549.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for a judgment hereon ordering the following relief.

**On the First and Second Claims for Relief:**

1. Compensatory, special and consequential damages, disgorgement of all sums received by Defendants for the period in which they were in breach of fiduciary duties or aiding and abetting that breach, and punitive damages from Defendants, the exact amount of which to be proved at trial, and presently alleged to be no less than $4 million;

**On the Third Claim for Relief**

2. Compensatory, special, and consequential damages, and punitive damages, all in an amount to be determined at trial;

**On the Fourth Claim for Relief**

3. Compensatory, special and consequential damages, the exact amount of which to be proved at trial, and presently alleged to be no less than $4 million;

**On the Fifth, Sixth, Seventh, Eighth and Tenth Claims for Relief:**

4. Avoiding, recovering, and preserving the subject Transfers, directing that the subject Transfers of the Debtor's money and property be set aside, and recovering the subject Transfers, or the value thereof, from the Defendants for the benefit of the Debtor's bankruptcy estate, all in an amount to be determined at trial, which sums are believed to be in excess of $2 million;

**On the Ninth Claim for Relief:**

5. Compensatory damages and punitive damages, the exact amount of which to be proved at trial, and presently alleged to be no less than $2 million;

**On the Eleventh Claim for Relief:**

6. Restitution and disgorgement of all amounts unjustly held by the Defendants, the exact amount of which to be proved at trial, and presently alleged to be no less than $1 million;

**On the Twelfth Claim for Relief:**

7. For disallowance of any claims asserted by Defendants, pursuant to 11

Case 1:24-ap-01055-MB Doc 51 Filed 10/11/24 Entered 10/11/24 Desc Main Document Page 26 of 28

U.S.C. § 502(d);

**On all Claims for Relief:**

8. For costs of suit and interest at the legal rate on all damages and sums awarded to Plaintiff, for the benefit of the Estate; and

9. For such other and further relief as this Court deems just and proper.

DATED: October 11, 2024

**MARGULIES FAITH, LLP**

By: [signature]
Meghann A. Triplett
Samuel M. Boyamian
Attorneys for Plaintiff, Jeremy W. Faith, Chapter 11 Plan Fiduciary

B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS** Jeremy W. Faith, Chapter 11 Plan Fiduciary | **DEFENDANTS** Jean Pierre Bommel, Arnold P. Peter d/b/a Peter Law Group |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) Meghann A. Triplett Phone: (818) 705-2777 Margulies Faith, LLP 16030 Ventura Blvd., Suite 470, Encino, CA 91436 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☑ Other ☐ Trustee | **PARTY** (Check One Box Only) ☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin ☐ Creditor ☑ Other ☐ Trustee |

FILED OCT 11 2024 CLERK U.S. BANKRUPTCY COURT CENTRAL DISTRICT OF CALIFORNIA BY: Deputy Clerk

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
(1) Breach of Fiduciary Duty; (2) Aiding and Abetting Breach of Fiduciary Duty; (3) Corporate Waste; (4) Negligence; (5) Avoidance of Fraudulent Actual Transfers; (6) Avoidance of Constructively Fraudulent Transfers; (7) Avoidance of Preferential Transfers; (8) Avoidance of Unauthorized Post-Petition Transfers; (9) Conversion; (10) Recovery of Avoided Transfers; (11) Unjust Enrichment; (12)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
[1] 12-Recovery of money/property - §547 preference
[2] 13-Recovery of money/property - §548 fraudulent transfer
[3] 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
[4] 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>National Association of Television Program Executives, Inc. | | BANKRUPTCY CASE NO.<br>1:22-bk-11181-MB |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>San Fernando Valley | NAME OF JUDGE<br>Martin R. Barash |

| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
|---|---|---|
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | |
|---|---|
| Samuel Boyamian | |
| DATE<br>10/11/24 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Samuel M. Boyamian |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

# EXHIBIT 3

MEGHANN A. TRIPLETT (SBN 268005)
*Meghann@MarguliesFaithLaw.com*
JONATHAN SERRANO (SBN 333225)
*Jonathan@MarguliesFaithLaw.com*
**MARGULIES FAITH, LLP**
16030 Ventura Blvd., Suite 470
Encino California 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777

Attorneys for Jeremy W. Faith,
Chapter 11 Plan Fiduciary

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re:

NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC.,

Debtor.

Case No.: 1:22-bk-11181-MB

Chapter: 11 (Subchapter V)

**CHAPTER 11 PLAN FIDUCIARY'S MOTION FOR TURNOVER OF RECORDED INFORMATION RELATING TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS IN THE POSSESSION OF ITS FORMER DIRECTORS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS IN SUPPORT THEREOF**

**Hearing**:
**Date:** July 17, 2025
**Time:** 2:30 p.m.
**Place:** Courtroom 303
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA 91367

Case 1:24-bk-11035-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 18:16:12 Desc Main Document Page 2 of 150

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........ 1
II. JURISDICTION ........ 5
III. BACKGROUND ........ 5
A. The Bankruptcy Case and the Plan Fiduciary's Appointment ........ 5
B. The Debtor's Former Directors ........ 6
C. The Pending Litigation ........ 8
D. Unsuccessful Efforts to Obtain Records from Mr. Bommel ........ 9
IV. LEGAL ANALYSIS ........ 14
A. Plan Fiduciary is Entitled to Turnover of the Records Pursuant to Section 542(e) ........ 14
B. The Plan Fiduciary is the successor to the Privileges of the Debtor ........ 16
C. The Relief Sought by the Plan Fiduciary Does Not Require an Adversary Proceedingn ........ 17
V. RESERVATION OF RIGHTS ........ 19
VI. CONCLUSION ........ 19
DECLARATION OF JEREMY W. FAITH ........ 20-27
DECLARATION OF MEGHANN A. TRIPLETT ........ 28-33

## TABLE OF AUTHORITIES

**CASES** **Page**

Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re Am. Metrocomm Corp.), 274 B.R. 641, 652 (Bankr. D. Del. 2002) ... 15

Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 354 (1985) ... 16

Foster v. Hill (In re Foster), 188 F.3d 1259, 1263 (10th Cir. 1999) ... 14

Gottlieb v. Fayerman (In re Ginzburg), 517 B.R. 175, 182 (Bankr. C.D. Cal. 2014) ... 16

Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.), 926 F.2d 912, 917 (9th Cir. 1991) ... 18

Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.), 145 B.R. 637, 643 (9th Cir. BAP 1992) ... 18

In re Auld, 561 B.R. at 521 ... 14, 15

In re Crescent Res., LLC, 457 B.R. 506, 511, 530 (Bankr. W.D. Tex. 2011) ... 15, 17

In re Hechinger Inv. Co. of Del., Inc., 285 B.R. at 605, 615 ... 16, 17

In re Lomas Financial Corp., 1999 WL 33495524 (Bankr. D. Del. 1999) ... 15

In re Old BPSUSH Inc., 2019 Bankr. LEXIS 1867, at *7-9 (Bankr. D. Del. June 20, 2019) ... 17

Keller v. Blinder (In re Blinder, Robinson & Co.), 140 B.R. 790, 793 (D. Colo. 1992) ... 15

Official Comm. of Unsecured Creditors of Hechinger Invest. Co. of Del. v. Fleet Retail Fin. Group (In re Hechinger Invest. Co. of Del.), 285 B.R. 601, 611–12 (D. Del. 2002) ... 16

Pollner v. Locke Purnell Rain Harrell (In re Lomas Financial Corp.), 1999 WL 33495524, at *4 (Bank. D. Del. 1999) ... 15

Rupp v. Auld (In re Auld), 561 B.R. 512, 515 (B.A.P. 10th Cir. 2017) ... 14

Successor Corp. v. The Feld Group (In re I Successor Corp.), 321 B.R. 640, 652 (Bankr. S.D.N.Y. 2005) ... 17

Whyte v. Williams, 152 B.R. 123 (Bankr. N.D. Tex. 1992) ... 17

Wolf v. Weinstein,
372 U.S. 633, 651 (1963) .......... 18

Case 1:24-bk-11085-MB Doc 53-1 Filed 01/22/25 Entered 01/22/25 21:06:43 Desc Main Document Page 5 of 150

**STATUTES** **Page**

11 U.S.C. § 105(a) .......... 1, 19

11 U.S.C. § 521(a)(4) .......... 14, 18

11 U.S.C. § 542 .......... 9, 15

11 U.S.C. § 542(a) .......... 15, 17, 19

11 U.S.C. § 542(e) .......... *Passim*

11 U.S.C. § 546(a) .......... *Passim*

11 U.S.C. § 1123(b)(3) .......... 1, 6

28 U.S.C. § 157 .......... 5

28 U.S.C. § 157(b) .......... 5

28 U.S.C. § 1334 .......... 5

28 U.S.C. § 1408 .......... 5

28 U.S.C. § 1409 .......... 5

**RULES** **Page**

Federal Rule of Bankruptcy Procedure 2002 .......... 1

Federal Rule of Bankruptcy Procedure 9014 .......... 1, 18

**TO THE HONORABLE MARTIN A. BARASH, UNITED STATES BANKRUPTCY JUDGE:**

Jeremy W. Faith, in his capacity as the Chapter 11 Plan Fiduciary (the “Plan Fiduciary” or “Mr. Faith”), for the bankruptcy Estate of National Association of Television Program Executives, Inc., (“NATPE” or “Debtor”) herby submits this motion (the “Turnover Motion”), pursuant to sections 105(a) and 542(e) of title 11 of the United States Code (the “Bankruptcy Code”), the *Second Amended Plan of Liquidation for Small Business Under Chapter 11* [Docket No. 251] (the “Plan”), the *Order Confirming Second Amended Subchapter V Chapter 11 Plan, with Modifications* [Docket No. 258] (the “Confirmation Order”), and Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the “Bankruptcy Rules”), and seeks entry of an order (the “Order”), substantially in the form attached as Exhibit 1 (the “Order”): (1) compelling certain former officers, directors, and/or agents of the Debtor, JP Bommel, Richard “Dick” Lippin, Andrew Kaplan, and Sarah Jessup (together, the “Former Directors”) to turn over and disclose to Plan Fiduciary all recorded information, including but not limited to all of the Debtor’s books, documents, records, papers, electronically stored information, and electronic mail relating to the Debtor (“Records”) in their possession, custody or control; and (2) directing cooperation with the Plan Fiduciary and his professionals because such Records are required to allow the Plan Fiduciary to carry out his duties under the Plan and Confirmation Order. In support of the Turnover Motion, the Plan Fiduciary respectfully states as follows:

## I.

## INTRODUCTION

Pursuant to the confirmed chapter 11 plan, the Plan Fiduciary is the authorized representative of the Debtor and has sole authority to investigate, prosecute, or otherwise take action with respect to the Estate’s claims, including the recovery of property which the Plan expressly reserves and vests in the Plan Fiduciary under § 1123(b)(3). (*See* Plan, Exh D at pg. 21 outlining the Plan Fiduciary’s duties; *see also*

Conf Order, at pgs. 3-4, ¶¶ B-D; and pgs. 6-7, ¶K, lines 25-28, 1-3). A true and correct copy of Exhibit "D" to the Plan and a copy of the Confirmation Order are attached to the Declaration of Jeremy W. Faith ("Faith Decl.") as <u>Exhibits 2 and 3</u>. In addition, under the Plan, the Plan Fiduciary has duties to "[c]ollect and retain Debtor's books and records" and "[p]repare and file tax returns."(*See* Plan, Exh D at pg. 21).

Since the occurrence of the Plan's Effective Date, the Plan Fiduciary has diligently sought to investigate the claims and causes of action that are pending and that the Estate may yet pursue, reconcile the claims register, and collect and retain the Debtor's books and records. These activities are ongoing.

Shortly after his appointment, the Plan Fiduciary requested the Debtor, the Former Directors, and its former general counsel Arnold Peter dba Peter Law Group (together, "PLG"), produce its books and records as contemplated by the Plan. In response, Sarah Jessup, an employee of Accounting 501, LLC, (the successor entity to Pery Consulting, LLC, an accounting firm formerly employed by NATPE) provided the Plan Fiduciary with a link to a Dropbox folder containing various documents and records of NATPE, and approximately 1,050 pages produced by PLG, that were previously produced to the Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach ("Fontainebleau") in the JAMS Arbitration proceeding between the Debtor and the Fontainebleau. More recently, on April 15, 2025, Mr. Bommel produced PDF copies of a small selection of records that he converted from their original format to PDF prior to production. Counsel for the Plan Fiduciary then emailed Mr. Bommel's counsel, Melissa Davis Lowe, Esq. (hereinafter referred to as "Bommel's Counsel" or "Ms. Lowe") of Shulman Bastian Friedman Bui & O'Dea, to clarify that the Plan Fiduciary's turnover request included all relevant electronically stored files in their original or "native" format without subsequent conversion of such files into another format (*e.g.*, from a Microsoft Word document into a PDF) and without any modification, alteration, or deletion of metadata.

/ / /

Case 1:24-ap-01035-MB Doc 33-1 Filed 06/26/25 Entered 06/26/25 11:19:12 Desc Main Document Page 8 of 150

Although the currently available books, records, and electronically stored information have been (and continue to be) thoroughly reviewed by the Plan Fiduciary and his professionals, the turnover of documents are substantially and materially incomplete. According to a declaration filed by Arnold Peter, the Debtor's former counsel, Fontainebleau's discovery request in 2022 generated "over 5,000 pages of electronically stored documents", of which approximately 1,500 of those pages were ultimately provided to Fontainebleau. (*See* Declaration of Arnold P. Peter in Support of Confirmation Memorandum [Dkt. No. 85, 2:15-17]). Until very recently, the Plan Fiduciary had only received approximately 2000-2250 pages of documents in the aggregate (at most) from the Debtor and its agents. On June 10, 2025, after considerable obfuscation and undue delay, Mr. Peter finally provided an additional batch of documents relating to its representation of NATPE (the "June 10 Documents"), which he represented as including "all documents in [PLG's] possession, custody, or control that you identified as falling within the scope of your request." However, the Plan Fiduciary has confirmed the June 10 Documents are only a partial production and intentionally exclude numerous documents from PLG's NATPE client file, including PLG's client communications, and the Plan Fiduciary is separately filing a motion to compel against PLG for the turnover of ***all*** files relating to PLG's representation of the Debtor.

Moreover, as alluded to above, many of the documents provided by Mr. Bommel were not provided in their "native" format, *e.g*. Microsoft Word or Excel. Rather, almost all such documents were converted to PDF after Mr. Bommel received the request from the Plan Fiduciary with Mr. Bommel then only turning over those reformatted versions of the documents. Converting the Word or Excel documents in his possession into PDFs had the effect of scrubbing their metadata (*e.g*., the date on which file was created and last modified).

The Plan Fiduciary's investigation has also been stymied by the failure of certain Former Directors to turnover various corporate governance documents (*e.g*., board

minutes, bylaws, charters, board resolutions, etc.) of NATPE, as expressly provided for in the Plan. Nor have any of the Former Directors, Debtor's counsel, or Mr. Peter provided a clear answer as to who was in possession of these records and what happened to them. Additionally, as further detailed in Section III, C below, the Plan Fiduciary's request for NATPE's Records has been a long slog, impeded by a multitude of specious objections. For example, Mr. Bommel's counsel objected to the Plan Fiduciary's informal requests for turnover on the basis that Mr. Bommel, the former CEO and Interim CEO of the Debtor who signed off on the Debtor's schedules and amended plan on behalf of the Debtor, is "a non-debtor third party [and does not have] any duty to the trustee or other estate representative under the Bankruptcy Code." A true and correct copy of Bommel's May 15, 2025 response letter to the Plan Fiduciary's turnover requests (the "5/15 Response") is attached to the Declaration of Meghann A. Triplett ("Triplett Decl.") as Exhibit 4.

The Plan Fiduciary must complete his investigation into the pre-petition and post-petition activities of the Debtor as required by the terms of the Plan and Confirmation Order. As a practical matter, the Plan Fiduciary must be able to promptly review the Records that relate to the property and financial affairs of the Debtor. These Records are undoubtedly on hard drives, in e-mail accounts, cloud storage devices (Dropbox and Google Drive), or other electronic devices, including hard drives, computers or cellular phones that the Bankruptcy Estate does not possess or control. These Records constitute board communications and business records subject to turnover under section 542(e). Attempts to obtain the Records on a consensual basis have not succeeded, thus necessitating the filing of this Turnover Motion.

Based on the foregoing, and for the reasons set forth below, the Plan Fiduciary requests that the Court compel the Former Directors to (1) immediately begin making rolling productions of all recorded information (which includes emails, texts, and instant messages) in its original or "native" format. Further that, or property of the Debtor in their possession not previously turned over to the Plan Fiduciary; and (2) complete their

production of the Records by no later than 5:00 p.m. (PST) on July 31, 2025 (the "Turnover Deadline"). The court should make clear that the Former Directors are not permitted to convert any electronically stored information to a different format that would make it more difficult for the Plan Fiduciary to use. All responsive electronically stored information must be produced in its original or "native" format, without the modification, alteration, or deletion of metadata (*e.g.*, the date the ".doc" file was created and the date of its most recent modification, if any).

**II.**

**JURISDICTION**

The Court has jurisdiction over this Turnover Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**III.**

**BACKGROUND**

**A. The Bankruptcy Case and the Plan Fiduciary's Appointment**

On October 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of chapter 11 of the Bankruptcy Code, initiating this case (the "Bankruptcy Case"). The Debtor is a "small business debtor" as that term is defined under Sections 101(51D) and 1182(1) of the Bankruptcy Code. The Debtor elected to proceed under Subchapter V of the Bankruptcy Code for the purpose of liquidating its assets.

The Debtor operated as a "debtor in possession," allowing it to exercise substantially all rights of a trustee in the Bankruptcy Case. This also allowed the Former Directors to control the Debtor's books, records, email systems, and other electronic data almost two years after the Petition Date. On or about September 17, 2024, the Court entered the Confirmation Order confirming the Plan and approving the appointment of Jeremy W. Faith as the Plan Fiduciary of the Estate.

/ / /

Confirmation of the Plan and the provision for the appointment of the Plan Fiduciary arose out of the mediated settlement between the Debtor and its largest creditor, the Fontainebleau, the terms of which were incorporated into the Plan. Fontainebleau's acceptance of the Plan was conditioned in part on the appointment of the Plan Fiduciary, *inter alia*, to investigate the Debtor's financial records, and to pursue the Estate's claims. Thus, the Plan retained and vested in the Plan Fiduciary all of the Debtor's claims and interests under 11 U.S.C. § 1123(b)(3), "including, without limitation" the recovery of property. (*See* Conf. Order at pgs. 6-7, ¶K, lines 25-28, 1-3).

The Confirmation Order expressly provides for, directs, and authorizes, "[t]he Plan Fiduciary, as Disbursing Agent, . . . to take all actions necessary or appropriate, . . .to implement, effectuate and consummate the Plan in accordance with its terms, and to carry out the transactions contemplated by the Plan." (Conf. Order at p. 4, ¶G, lines 21-25).[1]

The Plan's Effective Date occurred on September 18, 2024.

**B. The Debtor's Former Directors**

JP Bommel ("Bommel") is the former Chief Executive Officer and President of the Debtor and possesses certain records of the Debtor and property of the Estate, which he has failed to turn over to the Plan Fiduciary. From at least 2017, Bommel was ultimately responsible for overseeing the day-to-day business operations and financial performance of NATPE and involved in supervising all aspects of NATPE's financial affairs. Bommel also served as the authorized representative of the Debtor and received post-petition consulting fees during the Bankruptcy Case from October of 2022 through May of 2024 which totaled $92,312.50 for his role as "the Interim President and CEO" of the Debtor. In addition to his NATPE email, Bommel also used his personal email jp.bommel@outlook.com and bommeljp@gmail.com to conduct NATPE business and

[1] *See also*, Conf. Order at pg. 2, lines 17-19 ("The Plan Fiduciary's fees and expenses will be paid only from funds he collects through **the prosecution of estate claims** against third-parties to be **filed postconfirmation**[.]") (emphasis added).

Case 1:24-ap-01151-MB Doc 31-1 Filed 01/22/25 Entered 01/22/25 11:19:12 Desc
Main Document Page 12 of 150

maintained and utilized Google Drive and Dropbox for cloud storage of NATPE Records. As further specified in Exhibit 1, the Plan Fiduciary requests an Order requiring Bommel to turn over and disclose to the Plan Fiduciary all recorded information relating to the Debtor's property or financial affairs, including but not limited to books, documents, records, papers, electronically stored information, and electronic mail in the possession, custody or control of Bommel, including on his personal email accounts, Dropbox, and Google Drive pertaining to NATPE.

Andrew (Andy) Kaplan ("Kaplan") is the former Chairman of the Board and an officer of the Debtor. Kaplan routinely (maybe always) used a personal email andy@kaplanwright.com and andy.kaplan@kcglobalmedia.com to conduct NATPE business. The Plan Fiduciary requests an Order requiring Kaplan to turn over the requested password and all emails that are in his personal account that pertain to the Debtor's business. Such emails should include, for example, Kaplan's April 2022 emails exchanged with Bommel and former counsel for NATPE, Arnold Peter ("Peter") concerning Bommel's employment agreement and his August 2022 emails exchanged with Peter related to Fontainebleau discovery requests. (*See* attached to the Faith Decl. Exhibit 5 - May 2, 2022 Invoice; Exhibit 6 - Sept. 1, 2022 Invoice re Fontainebleau Litigation; Exhibit 7 - Sept. 1, 2022 Invoice re Business Matters, pp. 2-3).

Richard "Dick" Lippin ("Lippin") was a former board member and director of the Debtor. Mr. Lippin had substantial business dealings with NATPE and likely has relevant information critical to the Plan Fiduciary's administration of the Estate. The Plan Fiduciary has filed a complaint against Mr. Lippin seeking the avoidance and recovery of certain pre-petition transfers. Notably, during the one-year pre-petition period, Mr. Lippin's public relations company The Lippin Group, received at least $109,878.22 from NATPE and received an additional $5,000 post-petition on or about December 2, 2022 for "Consulting Fees."

/ / /

/ / /

Case 1:24-bk-11051-MB Doc 331 Filed 01/22/25 Entered 01/22/25 18:16:12 Desc Main Document Page 23 of 150

Sarah Jessup ("Jessup") was the chief accounting officer and principal of Pery Consulting Group, LLC ("PCG") (now Accounting 501, LLC), who served as NATPE's external Chief Financial Officer, Controller, and Accounting Manager and had substantial business dealings with NATPE both pre-and post-petition. In fact, PCG continued to receive post-petition consulting fees during the Bankruptcy Case from October of 2022 through May of 2022 which totaled $87,500. Jessup used an external and/or a personal email to conduct NATPE business as well as a personal (or not a NATPE) computer. Jessup was intimately involved in the business operations of NATPE, and exchanged numerous emails with Bommel, and other NATPE insiders, on various matters the Plan Fiduciary is tasked to investigate, including relating to the financial condition of NATPE, its accounting and record keeping, payroll, insurance, the litigation involving Fontainebleau, employment contracts, severance packages, and the executive "deferred compensation" scheme, among other things and is in possession of Records pertaining to NATPE's business and financial affairs.

**C. The Pending Litigation**

Due to the impending statute of limitations, shortly after his appointment, on October 11, 2024, the Plan Fiduciary commenced a number of adversary proceedings, *inter alia*, seeking to avoid and recover the Debtor's interest in property pursuant to Sections 544(b), 547, 548, 549, and 550 of the Bankruptcy Code, including filing complaints against Bommel and Lippin (Adv. Case No. 1:24-ap-23288-MB) (collectively referred to herein as the "Adversaries").[2] *See* Docket Nos. 273-279. In addition, the Adversaries also assert claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, corporate waste and negligence. Such claims for relief constitute property of the Estate, which, under the Plan, can only be brought by the Plan Fiduciary.

---

[2] Approximately 24 days after the Plan Fiduciary's appointment, the two-year statute under 11 U.S.C. § 546(a) for the commencement of avoidance actions which the Plan Fiduciary was expressly charged to investigate expired necessitating the filing of the adversaries on October 11, 2024.

As previously noted, Bommel has used the Adversaries as a pretext to withhold the Records, erroneously claiming that these emails and documents are subject to the limitations of discovery under Fed. R. Civ. P. 26. Bommel further maintains that because he is not the Debtor and is not a current officer or director of the Debtor, he does not owe a duty to the Plan Fiduciary under the Bankruptcy Code, the Plan, or otherwise. Further stating in pertinent part,

> [t]he terms of the Plan and Mr. Faith's appointment do not compel or require any turnover by Mr. Bommel absent following proper protocols under the Bankruptcy Code and the Bankruptcy Rules.
>
> Rather, Mr. Bommel should be treated like any other third party and Mr. Faith should proceed under Bankruptcy Rule 2004 for the production of documents. Alternatively, given that there is already an adversary action pending, amend the Complaint to include a claim for relief for turnover. Likewise, your assertion that the turnover request falls within Section 542 overlooks the fact that again, Mr. Bommel is not the Debtor. As a third party, Section 542 requires an adversary complaint and not just a motion for turnover as your May 5, 2025 letter suggests. *See*, Bankruptcy Rule 7001(a).

(5/15 Response, Exhibit 4 to Triplett Decl.).

The Plan Fiduciary has made good faith efforts to resolve this matter without the Court's intervention; however, given the prolonged delay and dispute between the parties regarding Bommel's obligation to turnover the Debtor's Records, and the prejudice to the Bankruptcy Estate that will be caused by further delay, Court intervention is required.

Based on the foregoing, the Plan Fiduciary, as successor in interest to the Debtor – only has copies of a small set of the Former Directors' Debtor-related communications if those communications happened to be copied to the selection of electronic records produced to the Plan Fiduciary on October 2nd necessitating this motion.

**D. Unsuccessful Efforts to Obtain Records from Mr. Bommel**

On or around April 3, 2025, counsel for the Plan Fiduciary sent a letter to Bommel's Counsel, Ms. Lowe (the "April 3 Letter") requesting various categories of information recorded between January 2017 through October 11, 2022. A true and correct copy of the April 3 Letter is attached to the Triplett Decl. as Exhibit 8. These

categories included, among other things, (i) all financial records; (ii) all of NATPE's corporate governance documents (*e.g*. board minutes, bylaws, charters, board resolutions, etc.) including, without limitation, NATPE's Second Amended and Restated Bylaws; (iii) all communications (*i.e*., emails and letters) between Jean Pierre Brommel; and anyone at PLG; (iv) all communications (*i.e*., emails and letters) between Bommel and PLG; and (v) all communications (*i.e*., letters and emails) and documents related to or referring to "Deferred Compensation." *Id*., pp. 1-2.

On or around April 15, 2025, counsel for Bommel responded by letter (the "April 15 Letter," attached to the Triplett Decl. as Exhibit 9), claiming that Bommel "unfortunately is not in possession of many of the documents requested" and that he has no access to financial records. *Id.,* pg. 1. Ms. Lowe also informed the Plan Fiduciary that, "[o]f particular note, we understand that there were over 5,000 pages of discovery produced in connection with the JAMS arbitration held in February 2024. If you do not yet have access to those documents, we suggest you obtain the file." *Id*. Counsel for Bommel proceeded to allege that the requests were overly broad and the Plan Fiduciary's ability to recorded information, including books and records, is limited by statute of limitations applicable to the claims for relief in the Adversary against Bommel. *Id*. at pp. 1-2.

Without making it clear the extent to which Bommel was withholding recorded information based on this alleged statute of limitation restriction on turnover, Ms. Lowe said Bommel provided via Dropbox the requested documents and that attached to her letter was a chart detailing each request and where Mr. Bommel believes the responsive documents to be located." *Id*. The chart attached to the April 15 Letter indicated that Bommel did not provide all emails or letters between him and PLG, and that such communications should be sought from Mr. Peter (who has also failed to turnover these communications). *Id*., pg. 3, row no. 9. The chart did, however, indicate that Bommel had turned over "[a]ll communications (*i.e*., letters and emails) and documents related to or referring to 'Deferred Compensation[.]'" *Id*., pg. 4, row no. 23.

Subsequently, Counsel for the Plan Fiduciary sent a follow up email requesting additional documents, information and property (the "April 15 Email", attached to Triplett Decl. as Exhibit 10). Among other things, the April 15 Email requested turnover of a Lenovo ThinkPad laptop and external hard drive Bommel purchased using NATPE's AMEX card one month prior to the Petition Date, various NATPE global administrative credentials (*i.e.*, username and password), including for Dropbox, the "location where NATPE's corporate governance documents are stored," "name(s) of any and all law firms and/or attorneys with whom NAPTE consulted on bankruptcy and/or insolvency issues" and "Records of all payments of deferred compensation, vacation, and bonuses by NATPE." *Id*., pp. 1-2.[3]

On April 28, 2025, Bommel's counsel replied by email (the "April 28 Email," attached to the Triplett Decl. as Exhibit 11) to the April 15 Email, representing that Bommel "does not have the laptop or the external hard drive . . . [nor] any additional documents to provide. He has already provided everything he has." *Id.*, pg. 1. The email attached a spreadsheet with another chart of alleged details related to each

[3] NATPE's September 2022 invoice from PLG reflects an expense of $6,084.00 incurred on August 25, 2022 for "[f]ees to Bankruptcy Counsel for initial consultation (not ultimately retained)" incurred on August 25, 2022 (the "September 2022 Invoice"). A true and correct copy of the September 2022 Invoice is attached as Exhibit 12. This payment was omitted from the Debtor's Statement of Financial Affairs (Dkt. 27, SOFA, Part 6, 11¶, *Payments related to bankruptcy* which requires the Debtor to disclose: "any payments of money or other transfers of property made by the debtor *or person acting on behalf of the debtor* within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case." (emphasis added). When asked by the Plan Fiduciary for the "name of any and all law firms with whom NAPTE consulted on bankruptcy and/or insolvency issues," Mr. Bommel named only Leslie Cohen. *See* Exhibit 11 - April 28 Email, pg. 4, row 37. However, the June 10 Documents includes an August 2022 retainer agreement drafted by the law firm Norton Rose Fulbright US, LLP ("Norton Rose"), that is addressed NATPE, entitled "*Financial Restructuring Options*," and signed by Mr. Peter on August 22, 2022 (the "Norton Rose Retention Agreement", attached as Exhibit 13). *See* Norton Rose Retention Agreement, pg. 1-8. The Norton Rose Retention Agreement indicates it was sent by email, although the Plan Fiduciary has yet to receive any such email from the Former Directors or Mr. Peter. Notably, the metadata of at least one previously provided document indicates that it was created by Norton Rose and subsequently edited by Bommel, strongly suggesting he was aware that Norton Rose was consulting NATPE on bankruptcy.

Case 1:24-ap-01011-MB Doc 53-1 Filed 06/26/25 Entered 06/26/25 21:06:43 Desc Main Document Page 27 of 150

particular request. In response to the inquiry about law firms or attorneys that NATPE consulted with regarding Bankruptcy issues, Bommel answered "Leslie Cohen - Leslie Cohen Law PC" and nothing else. *Id*., pg. 4, row 37. Concerning the request for records of all payments of deferred compensation, vacation, and bonuses by NATPE, Bommel responded "[a]lready answered." *Id*., pg. 4, row 36.

However, in reviewing the documents provided, it became apparent that Bommel had not provided "all" documents in his possession, and further that he intentionally converted each of these documents from their original format (i.e. Word, Excel, or PowerPoint) to a PDF format before producing them to the Plan Fiduciary, a task that raises serious credibility issues as to the completeness of the documents. The PDF files do not contain "metadata" that would be expected to be found in the original files and that would demonstrate important facts like who created the documents, when and how they were revised, and when they were printed, thereby preventing the Plan Fiduciary from accessing key recorded information. For example, many of the files provided by Bommel had their purported dates in the file name (*e.g.*, "11-20-20 CW_Memo"). However, the metadata (*e.g.*, the date the document was created, the date the document was last modified, the author of document) showed that Bommel had created almost all of the PDFs on April 7, 2025 by converting the original Word, Excel or PowerPoint documents into a .pdf file. *See e.g.*, attached to the Triplett Decl., as Exhibit 14 – Metadata for 2019 Code of Ethics Document (Word to PDF) (red boxes added); Exhibit 15 – Metadata for 1-18-20 Executive Committee Document (Word to PDF) (red boxes added); Exhibit 16 – Metadata for Deferred Executive Salary modeling 2021 – 2022 Document (Excel to PDF) (red boxes added).

On May 5, 2025, Counsel for the Plan Fiduciary sent Ms. Lowe a letter addressing certain representations in the prior letter (the "May 5 Letter," attached to Triplett Decl. as Exhibit 17). Among other things, May 5 Letter requested the location of the external hard drive and Lenovo ThinkPad laptop, the NATPE MacBook laptop computer in Mr. Bommel's possession, the name of the attorneys and the firm associated with the May

2022 Invoice and addressed Mr. Bommel's turnover of the documents he had converted from their original "native" formats to PDF and his failure to turnover the native versions of those documents. The Plan Fiduciary reiterated that his request included "all 'native' files and all other books, records, documents, emails, entire case files, computers, hard drives, communications, correspondence, invoices, photos, videos, and any other electronically stored information, without any modification whatsoever (e.g., alteration of metadata)." *Id*., pg. 2.

On or about May 15, 2025, Ms. Lowe responded to counsel for the Plan Fiduciary stating:

> <u>[t]o the best of his knowledge, Mr. Bommel turned over all documents which he has access to, or is in his custody and control.</u> **That being said, <u>he will provide the native files of such documents as soon as he can</u>** . . .**Mr. Bommel's [NATPE] Macbook is in storage; he will retrieve it and turn it over to your office. He also has in storage an external hard drive which may contain files from the company's former SharePoint data storage. He will retrieve it as well and turn it over.** This may take a few weeks to get to you but we will get it to you as soon as possible.

(Triplett Decl., 5/15 Response, <u>Exhibit 4</u>) (emphasis added).

Thereafter, Ms. Lowe and the Counsel for the Plan Fiduciary had further email and telephone communications regarding the native files and turnover requests, including but not limited to an email sent by Ms. Lowe on May 28, 2025 (the "May 28 Email") and a telephone conference on June 2, 2025. In the May 28 Email, Ms. Lowe told Counsel for the Plan Fiduciary that she would "speak to Mr. Bommel before [May 30, 2025]" about the native files." Notwithstanding Bommel's or his counsel's representations, to this date neither the native files, any other additional Records, nor the NATPE MacBook or External Hard drive have been received.

On information and belief, Mr. Bommel still possesses or has access to the Debtor's corporate records, books, accounting information, insurance records, emails (and access to emails), at least one laptop computer owned by Debtor that contains Debtor's company records. Additionally, Bommel maintained at least one Dropbox cloud

storage account paid for by the Debtor to conduct NATPE business. The Debtor's May 2024 Monthly Operating Report (the "May 2024 MOR") reflects a $413.50 payment to Dropbox from its AXOS Checking on May 30, 2024. (*See* May 2024 MOR, Dkt. No. 223 at pg. 11 - attached to the Triplett Decl. as Exhibit 18). This payment was booked as "5/1/2024 Consulting Fees" for Bommel. *Id*. The Debtor's bank statement annexed to the May 2024 MOR also reflect monthly installment payments to Dropbox of approximately $21.76 per month. Furthermore, the June 10 Documents produced by PLG, revealed that NATPE also utilized a Google Cloud Storage Drive (docs.google.com) to store and share documents and information, including but not limited to links to NATPE's insurance policies which was not disclosed. These Records have not been disclosed or turned over. Accordingly, the Plan Fiduciary requests an Order requiring Bommel to turn over the account email address(es) and password(s) for any Dropbox Account and/or docs.google.com account in the name of the Debtor, and to turn over all documents in his personal Dropbox account paid for by the Debtor, all documents in his or NATPE's Google Drive account and/or files shared with him from Google Drive related to NATPE, and all emails that are in his personal email account that pertain to NATPE. The Estate will be prejudiced if Bommel is permitted to continue to delay producing NATPE's Records as the Plan Fiduciary was appointed September 17, 2024.

**IV.**

**LEGAL ANALYSIS**

**A. Plan Fiduciary is Entitled to Turnover of the Records Pursuant to Section 542(e)**

Section 542(e) of the Bankruptcy Code provides that:

> Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.

11 U.S.C. § 542(e). "Anyone, including the debtor, who has recorded information about

Main Document Page 20 of 150

estate property or debtor's financial affairs can be ordered to turn it over." *Rupp v. Auld* (*In re Auld*), 561 B.R. 512, 515 (B.A.P. 10th Cir. 2017) (citing 11 U.S.C. § 542(e) and § 521(a)(4)); *see also Foster v. Hill (In re Foster)*, 188 F.3d 1259, 1263 (10th Cir. 1999)("[Section 542(e)] empowers a court to order anyone holding recorded information about property of a bankruptcy estate to turn over the information to the estate's trustee."). While subsection (a) of § 542 only authorizes turnover of "property of the estate," subsection (e) is "directed to persons holding recorded information that is not property of the estate but is otherwise relevant to the debtor's property or financial affairs." *Keller v. Blinder (In re Blinder, Robinson & Co.)*, 140 B.R. 790, 793 (D. Colo. 1992). "Therefore, whether the [Records] constitute property of the estate is irrelevant to the Court's determination of whether turnover is proper under § 542(e)." *Am. Metrocomm Corp. v. Duane Morris & Heckscher LLP (In re Am. Metrocomm Corp.)*, 274 B.R. 641, 652 (Bankr. D. Del. 2002); *In re Auld*, 561 B.R. at 521 ("In short, § 542(e) requires production or turnover of recorded information that relates to debtor's property or financial affairs, whether the recorded information is property of the estate or not."); *see also* 5 Collier on Bankruptcy ¶ P 542.07 (16th 2025) (Section 542(e) applies even "when the documents are not property of the estate."). Indeed, "[i]nsofar as the documents contain information which could lead to an increased recovery for creditors of the estate, such documents certainly would be relevant to the estate's administration" and are therefore recoverable pursuant to section 542(e). *Pollner v. Locke Purnell Rain Harrell (In re Lomas Financial Corp*.), 1999 WL 33495524, at *4 (Bank. D. Del. 1999).

The Debtor's confirmed chapter 11 Plan authorizes the Plan Fiduciary to seek recovery of estate property and "collect and retain Debtor's books and records." (*See* Plan, Exh D at pg. 21 outlining the Plan Fiduciary's duties; *see also* Conf Order, at pgs. 3-4, ¶¶ B-D; and pgs. 6-7, ¶K, lines 25-28, 1-3); *see generally In re Crescent Res., LLC*, 457 B.R. 506, 511, 530 (Bankr. W.D. Tex. 2011) (compelling turnover of property to trustee of litigation trust under § 542(e)); *In re Lomas Fin*ancial *Corp.*, 1999 WL 33495524 (Bankr. D. Del. 1999) (requiring turnover of documents to a litigation trust

Case 1:24-bk-11151-MB Doc 33-9 Filed 01/22/25 Entered 01/22/25 11:06:13 Desc Main Document Page 21 of 150

because the documents were property of the estate under §§ 542(a), (e) of the Bankruptcy Code). The Plan Fiduciary requires turnover of the Records, in order to investigate and prosecute claims (including those filed against the Former Directors for fraudulent transfers, conversion, corporate waste and negligence, among others), and administer the assets of the Estate as contemplated and ordered by the Plan.

Therefore, pursuant to § 542(e), the Court should order the Former Directors to turn over all Records in their possession relating to the Debtor's property of financial affairs to the Plan Fiduciary.

**B. The Plan Fiduciary is the successor to the Privileges of the Debtor**

It is well settled under federal law that the Plan Fiduciary owns and controls any privileges held by NATPE, including but not limited to all communications between the Former Directors, and NATPE's former attorneys relating to the Debtor's property or financial affairs.[4] Thus, the specification in Section 542(e) providing for turnover "subject to any applicable privilege," is not appliable here.

In the seminal case, *Commodity Futures Trading Commission v. Weintraub*, the United States Supreme Court made clear that the trustee of a corporation in bankruptcy holds the debtor's pre-bankruptcy privileges, including the attorney-client and work product privileges. 471 U.S. 343, 354 (1985) ("we conclude that vesting in the trustee control of the corporation's attorney-client privilege most closely comports with the allocation of the waiver power to management outside of bankruptcy without in any way obstructing the careful design of the Bankruptcy Code"). Further noting that the trustee's control of the privilege serves bankruptcy policy; and advances the goal of "uncovering insider fraud" by helping trustees develop claims against corporate managers, while preventing the managers from "using the privilege as a shield . . . [to] thwart an investigation into their own conduct." *Id.* at 353-54. The same rule applies in Chapter 11

---

[4] The question of privilege asserted in bankruptcy court is a procedural question and existing federal law is to be used." *Gottlieb v. Fayerman (In re Ginzburg)*, 517 B.R. 175, 182 (Bankr. C.D. Cal. 2014) (internal citations omitted).

liquidation.  *See, e.g.*, *Official Comm. of Unsecured Creditors of Hechinger Invest. Co. of Del. v. Fleet Retail Fin. Group (In re Hechinger Invest. Co. of Del.)*, 285 B.R. 601, 611–12 (D. Del. 2002) (the trustee of a corporate chapter 11 liquidating trust held the attorney-client privilege); *Post-Confirmation Comm. of Unsecured Creditors of I Successor Corp. v. The Feld Group (In re I Successor Corp.),* 321 B.R. 640, 652 (Bankr. S.D.N.Y. 2005) (finding *Weintraub*, applies in chapter 11); *Whyte v. Williams*, 152 B.R. 123 (Bankr. N.D. Tex. 1992) (debtor-in-possession privilege passed to liquidating trust).

Accordingly, the Plan Fiduciary may waive any privilege rights NATPE held and the Court should order turnover of all Records in the Former Directors possession relating to the Debtor, including any "privileged" documents.

**C. The Relief Sought by the Plan Fiduciary Does Not Require an Adversary Proceeding**

The Plan Fiduciary requires the Records in order to investigate and prosecute claims and administer the assets of the Estate as contemplated and ordered by the Plan. The fact that such administration requires a full picture of the Debtor's pre-petition activities is unremarkable and does not convert the requested relief from the ambit of Section 542(e) into a Rule 2004 motion or require an adversary proceeding under Bankruptcy Rule 7001.

Relief under 11 U.S.C. § 542(e) is separate and in addition to the relief available under § 542(a).  Section 542(e) expressly provides that the Court can order the turnover of recorded information "after notice and a hearing" – no adversary proceeding is necessary.  *See e.g.*, *In re Old BPSUSH Inc*., 2019 Bankr. LEXIS 1867, at *7-9 (Bankr. D. Del. June 20, 2019) (granting turnover motion under § 542(e)); *In re Crescent Res., LLC*, 457 B.R. at 530 (same); *In Re Hechinger Inv. Co. of Del., Inc*., 285 B.R. at 605, 615 (same).  It specifically provides that, the order can reach "an attorney, accountant, or *other person*." 11 U.S.C. § 542(e) (emphasis added).  The United States Supreme Court, in examining § 542(e), concluded that "the legislative history establishes that § 542(e) was intended to restrict, not expand, the ability of accountants and attorneys to withhold

Case 1:24-bk-11031-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 18:19:13 Desc
Main Document Page 23 of 150

information from the trustee." *Weintraub*, 471 U.S. at 351. The language of § 542(e) suggests that for the category of documents relating to the property or financial affairs of the debtor, Congress intended debtor to secure access through the streamlined procedure of "notice and hearing" rather than an adversary. In addition, pursuant to Rule 9014, in a contested matter not otherwise governed by the bankruptcy rules, a party may request relief by motion.

Additionally, the Debtor has a separate, independent duty to turn over all estate property and information relating to estate property pursuant to 11 U.S.C. § 521(a)(4). Here, because the Debtor is a corporation, it is an inanimate entity that can act only through its agents. When the debtor is a corporation, the debtor in possession's fiduciary obligations to the corporation, its creditors and shareholders, fall upon the officers and directors. *See Weintraub*, 471 U.S. at 355 (stating that "the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"). The Ninth Circuit holds the debtor in possession's corporate officers to the standards of "officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties." *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.)*, 926 F.2d 912, 917 (9th Cir. 1991). "Indeed, the willingness of courts to leave debtors in possession 'is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee.'" *Weintraub*, 471 U.S. at 355-56 (quoting *Wolf v. Weinstein*, 372 U.S. 633, 651 (1963)); *see, e.g., Holta v. Zerbetz (In re Anchorage Nautical Tours, Inc.)*, 145 B.R. 637, 643 (9th Cir. BAP 1992) ("When the debtor is a corporation, corporate officers and directors are considered to be fiduciaries both to the corporate debtor in possession and to the creditors."). The Former Directors were charged with and did manage and direct the business and affairs of NATPE and that is the information being sought by the Turnover Motion. The existence of pending litigation against some of the Former Directors does not change this obligation or limit the Plan Fiduciary's ability to seek an order compelling

the Former Directors to promptly turn over all Records that "relat[e] . . . to the debtor's property or financial affairs," as the requested relief is independent. 11 U.S.C. § 542(e).

Based on the foregoing, the Plan Fiduciary seeks the Court's intervention and an Order in furtherance of implementation of the Plan. Turnover relief pursuant to Bankruptcy Code §§ 105(a) and 542(e) is necessary, appropriate and warranted under the totality of the circumstances.

## V.

## RESERVATION OF RIGHTS

The Plan Fiduciary does not concede or allege that the Records do not constitute property of the Estate or that Plan Fiduciary would not be entitled to turnover of the Records under Section 542(a) if it chose to pursue that relief, and Plan Fiduciary reserves all rights with respect to the same.

## VI.

## CONCLUSION

For the reasons set forth above, Plan Fiduciary respectfully requests that the Court enter the Order, substantially in the form attached hereto as Exhibit 1, granting the relief requested herein and granting such other relief as is just and proper.

DATED: June 26, 2025

**MARGULIES FAITH, LLP**

By: */s/ Meghann A. Triplett* .
Meghann A. Triplett
Jonathan Serrano
Attorneys for Jeremy W. Faith,
Chapter 11 Plan Fiduciary

Case 1:24-bk-01151-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 18:19:12 Desc
Main Document Page 25 of 150

**DECLARATION OF JEREMY W. FAITH**

I, Jeremy W. Faith, declare as follows:

1. I am the Chapter 11 Plan Fiduciary for the bankruptcy estate of the reorganized debtor National Association of Television Program Executives, Inc. (the "Debtor" or "NATPE").

2. I make this declaration in support of the "Chapter 11 Plan Fiduciary's Motion for Turnover of Recorded Information Relating to the Debtor's Property or Financial Affairs in the Possession of Its Former Directors" (the "Turnover Motion"), to which this declaration is affixed. Unless otherwise defined, all capitalized terms herein have the same meaning as in the Turnover Motion.

3. I seek entry of an order (the "Order"), substantially in the form attached hereto as Exhibit 1 (the "Order(1) compelling certain former officers, directors, and/or agents of the Debtor, JP Bommel, Richard "Dick" Lippin, Andrew Kaplan, and Sarah Jessup (together, the "Former Directors") to turn over and disclose to Plan Fiduciary all recorded information, including but not limited to all of the Debtor's books, documents, records, papers, electronically stored information, and electronic mail relating to the Debtor ("Records") in their possession, custody or control; and (2) directing cooperation with me and my professionals because such Records are required to allow me to carry out my duties under the Plan and Confirmation Order.

4. I require the Records in order to investigate and prosecute claims and administer the assets of the Estate as contemplated and ordered by the Plan. As the Plan Fiduciary and sole authorized representative of NATPE, I now control and waive any privilege rights NATPE held with respect to the Records, and request that the Court order turnover of all Records in the Former Directors possession relating to the Debtor, including any "privileged" documents.

5. As reflected on the Bankruptcy Court Docket, on October 11, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Subchapter V of chapter 11 of the Bankruptcy Code, initiating this case (the "Bankruptcy Case"). The

Case 1:24-bk-11031-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 21:09:42 Desc
Main Document Page 26 of 150

Debtor is a “small business debtor” as that term is defined under Sections 101(51D) and 1182(1) of the Bankruptcy Code. The Debtor elected to proceed under Subchapter V of the Bankruptcy Code for the purpose of liquidating its assets.

6. The Debtor operated as a “debtor in possession,” allowing it to exercise substantially all rights of a trustee in the Bankruptcy Case. This also allowed the Former Directors to control the Debtor’s books, records, email systems, and other electronic data for almost two years after the Petition Date.

7. I was appointed as the Plan Fiduciary pursuant to the Debtor’s Plan, which was confirmed by court order entered on September 17, 2024. A true and correct copy of Exhibit “D” to the Plan and a copy of the Confirmation Order are attached hereto as Exhibits 2 and 3.

8. Confirmation of the Plan and the provision for my appointment as Plan Fiduciary arose out of the mediated settlement between the Debtor and its largest creditor, the Fontainebleau, the terms of which were incorporated into the Plan. Fontainebleau’s acceptance of the Plan was conditioned in part on the appointment of the Plan Fiduciary, *inter alia*, to investigate the Debtor’s financial records, and to pursue the Estate’s claims.

9. Under the Plan, and pursuant to this Court’s Confirmation Order, all of the Debtor’s claims and interests, including causes of action, recovery of property, were expressly reserved under 11 U.S.C. § 1123(b)(3) and vested in me in my capacity as the Plan Fiduciary. (See Conf. Order at pgs. 6-7, ¶K, lines 25-28, 1-3). The Plan expressly authorizes me, in my capacity as Plan Fiduciary with the sole authority to “investigate and prosecute” claims held by the Bankruptcy Estate, and to “[c]ollect and retain Debtor’s books and records” and “[p]repare and file tax returns.” (*See* Plan, Exh D at pg. 21).

10. The Effective Date of the Plan occurred on September 18, 2024.

11. Since the occurrence of the Plan’s Effective Date, my professionals and I have diligently sought to investigate the claims and causes of action that are pending

Case 1:24-ap-01051-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 21:19:12 Desc
Main Document Page 27 of 150

and that the Estate may yet pursue, reconcile the claims register, and collect and retain the Debtor's books and records. These activities are ongoing.

12. Shortly after my appointment, I requested the Debtor, the Former Directors, and its former general counsel Arnold Peter dba Peter Law Group (together, "PLG"), produce its books and records as contemplated by the Plan.

13. In response, Sarah Jessup, an employee of Accounting 501, LLC, (the successor entity to Pery Consulting, LLC, an accounting firm formerly employed by NATPE) provided me with a link to a Dropbox folder containing various documents and records of NATPE, and approximately 1,050 pages produced by PLG, that were previously produced to the Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach ("Fontainebleau") in the JAMS Arbitration proceeding between the Debtor and the Fontainebleau.

14. Although the currently available books, records, and electronically stored information have been (and continue to be) thoroughly reviewed by me and my professionals, the turnover of documents are substantially and materially incomplete.

15. According to a declaration filed by Arnold Peter, the Debtor's former counsel, Fontainebleau's discovery request in 2022 generated "over 5,000 pages of electronically stored documents", of which approximately 1,500 of those pages were ultimately provided to Fontainebleau. (*See* Declaration of Arnold P. Peter in Support of Confirmation Memorandum [Dkt. No. 85, 2:15-17]).

16. Until very recently, I had only received approximately 2000-2250 pages of documents in the aggregate (at most) from the Debtor and its agents.

17. On June 10, 2025, after considerable obfuscation and undue delay, Mr. Peter finally provided an additional batch of documents relating to its representation of NATPE (the "June 10 Documents"), which he represented as including "all documents in [PLG's] possession, custody, or control that you identified as falling within the scope of your request." However, after review with my professionals and further communications between my counsel and Mr. Peter, I have confirmed the June 10 Documents are only a

partial production and intentionally exclude numerous documents from PLG's NATPE client file, including PLG's client communications, and the Plan Fiduciary is separately filing a motion to compel against PLG for the turnover of ***all*** files relating to PLG's representation of the Debtor.

18. Moreover, as detailed in the Turnover Motion, many of the documents provided by Mr. Bommel were not provided in their "native" format, *e.g*. Microsoft Word or Excel. Rather, almost all such documents were converted to PDF after Mr. Bommel received my request (through counsel), with Mr. Bommel then only turning over those reformatted versions of the documents. Converting the Word or Excel documents in his possession into PDFs had the effect of scrubbing their metadata (*e.g*., the date on which file was created and last modified).

19. My investigation has also been stymied by the failure of certain Former Directors to turnover various corporate governance documents (*e.g*., board minutes, bylaws, charters, board resolutions, etc.) of NATPE, as expressly provided for in the Plan. Nor have any of the Former Directors, Debtor's counsel, or Mr. Peter provided a clear answer as to who was in possession of these records and what happened to them.

20. After conferring with my counsel and Estate professionals, and reviewing certain pleadings and records of the Debtor, including tax returns and bank statements, the record establishes the following regarding the Former Directors:

- JP Bommel ("Bommel") is the former Chief Executive Officer and President of the Debtor and possesses certain records of the Debtor and property of the Estate, which he has failed to turn over to me. From at least 2017, Bommel was ultimately responsible for overseeing the day-to-day business operations and financial performance of NATPE and involved in supervising all aspects of NATPE's financial affairs. Bommel also served as the authorized representative of the Debtor and received post-petition consulting fees during the Bankruptcy Case from October of 2022 through May of 2024 which totaled $92,312.50 for his role as "the Interim President and CEO" of the Debtor. In

Case 1:24-bk-11035-MB Doc 31-1 Filed 01/26/25 Entered 01/26/25 18:19:12 Desc Main Document Page 29 of 150

addition to his NATPE email, Bommel also used his personal email jp.bommel@outlook.com and bommeljp@gmail.com to conduct NATPE business and maintained and utilized Google Drive and Dropbox for cloud storage of NATPE Records.

- Andrew (Andy) Kaplan ("Kaplan") is the former Chairman of the Board and an officer of the Debtor. Kaplan routinely (maybe always) used a personal email andy@kaplanwright.com and andy.kaplan@kcglobalmedia.com to conduct NATPE business. I am requesting an Order requiring Kaplan to turn over the requested password and all emails that are in his personal account that pertain to the Debtor's business. Such emails should include, for example, Kaplan's April 2022 emails exchanged with Bommel and former counsel for NATPE, Arnold Peter ("Peter") concerning Bommel's employment agreement and his August 2022 emails exchanged with Peter related to Fontainebleau discovery requests. *See* attached as Exhibit 5 - May 2, 2022 Invoice; Exhibit 6 - Sept. 1, 2022 Invoice re Fontainebleau Litigation; Exhibit 7 - Sept. 1, 2022 Invoice re Business Matters, pp. 2-3).

- Richard "Dick" Lippin ("Lippin") was a former board member and director of the Debtor. Mr. Lippin had substantial business dealings with NATPE and likely has relevant information critical to the Plan Fiduciary's administration of the Estate. The Plan Fiduciary has filed a complaint against Mr. Lippin seeking the avoidance and recovery of certain pre-petition transfers. Notably, during the one-year pre-petition period, Mr. Lippin's public relations company The Lippin Group, received at least $109,878.22 from NATPE and received an additional $5,000 post-petition on or about December 2, 2022 for "Consulting Fees."

Case 1:24-bk-11035-MB Doc 31-9 Filed 06/26/25 Entered 06/26/25 21:09:12 Desc Main Document Page 2 of 20

- Sarah Jessup ("Jessup") was the chief accounting officer and principal of Pery Consulting Group, LLC ("PCG") (now Accounting 501, LLC), who served as NATPE's external Chief Financial Officer, Controller, and Accounting Manager and had substantial business dealings with NATPE both pre-and post-petition. In fact, PCG continued to receive post-petition consulting fees during the Bankruptcy Case from October of 2022 through May of 2022 which totaled $87,500. Jessup used an external and/or a personal email to conduct NATPE business as well as a personal (or not a NATPE) computer. Jessup was intimately involved in the business operations of NATPE, and exchanged numerous emails with Bommel, and other NATPE insiders, on various matters the Plan Fiduciary is tasked to investigate, including relating to the financial condition of NATPE, its accounting and record keeping, payroll, insurance, the litigation involving Fontainebleau, employment contracts, severance packages, and the executive "deferred compensation" scheme, among other things and is in possession of Records pertaining to NATPE's business and financial affairs.

21. I must complete my investigation into the pre-petition and post-petition activities of the Debtor as required by the terms of the Plan and Confirmation Order. As a practical matter, I must be able to promptly review the Records that relate to the property and financial affairs of the Debtor. These Records are undoubtedly on hard drives, in e-mail accounts, cloud storage devices (Dropbox and Google Drive), or other electronic devices, including hard drives, computers or cellular phones that the Bankruptcy Estate does not possess or control. These Records constitute board communications and business records subject to turnover under section 542(e). Attempts to obtain the Records on a consensual basis have not succeeded, thus necessitating the filing of this Turnover Motion.

/ / /

/ / /

Case 1:24-ap-01153-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 21:09:13 Desc
Main Document Page 21 of

22. Approximately 24 days after my appointment, the two-year statute under 11 U.S.C. § 546(a) for the commencement of avoidance actions which I was expressly charged to investigate expired. Due to the impending statute of limitations, shortly after my appointment, on October 11, 2024, I commenced a number of adversary proceedings, *inter alia*, seeking to avoid and recover the Debtor's interest in property pursuant to Sections 544(b), 547, 548, 549, and 550 of the Bankruptcy Code, including filing complaints against Bommel and Lippin (Adv. Case No. 1:24-ap-23288-MB) (collectively referred to herein as the "Adversaries"). *See* Docket Nos. 273-279.

23. In addition, the Adversaries also assert claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, corporate waste and negligence. Such claims for relief constitute property of the Estate, which, under the Plan, can only be brought by the Plan Fiduciary.

24. Bommel has used the Adversaries as a pretext to withhold the Records, erroneously claiming that these emails and documents are subject to the limitations of discovery under Fed. R. Civ. P. 26. Bommel further maintains that because he is not the Debtor and is not a current officer or director of the Debtor, he does not owe a duty to the Plan Fiduciary under the Bankruptcy Code, the Plan, or otherwise.

25. I have made good faith efforts to resolve this matter without the Court's intervention; however, given the prolonged delay and dispute between the parties regarding Bommel's obligation to turnover the Debtor's Records, and the prejudice to the Bankruptcy Estate that will be caused by further delay, Court intervention is required.

26. I require turnover of the Records, in order to investigate and prosecute claims (including those filed against the Former Directors for fraudulent transfers, conversion, corporate waste and negligence, among others), and administer the assets of the Estate as contemplated and ordered by the Plan.

/ / /

/ / /

/ / /

Case 1:24-bk-11031-MB Doc 53-1 Filed 06/26/25 Entered 06/26/25 21:06:43 Desc Main Document Page 32 of 150

27. Based on the foregoing, and for the reasons set forth in the Turnover Motion, I request that the Court compel the Former Directors to (1) immediately begin making rolling productions of all recorded information (which includes emails, texts, and instant messages) in its original or "native" format. Further that, or property of the Debtor in their possession not previously turned over to me; and (2) complete their production of the Records by no later than 5:00 p.m. (PST) on July 31, 2025 (the "Turnover Deadline").

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed June 26, 2025 at Kona, HI.

Jeremy W. Faith

**DECLARATION OF MEGHANN A. TRIPLETT**

I, Meghann A. Triplett, declare as follows:

1. I am an attorney at law, duly qualified to practice before all courts of the State of California and before the United District Court for the Central District of California. I am a partner with the law firm of Margulies Faith, LLP ("MF"), counsel to Jeremy W. Faith, the Chapter 11 Plan Fiduciary ("Plan Fiduciary") for the bankruptcy estate of the reorganized debtor National Association of Television Program Executives, Inc. (the "Debtor" or "NATPE") in the above-captioned bankruptcy case. I am one of the attorneys at MF with responsibility for representation of the Plan Fiduciary. I have personal knowledge of the facts stated herein, except where stated upon information and belief, and as to such statements, I believe them to be true.

2. I make this Declaration in support of the "Chapter 11 Plan Fiduciary's Motion for Turnover of Recorded Information Relating to the Debtor's Property or Financial Affairs in the Possession of Its Former Directors" (the "Turnover Motion"), to which this declaration is affixed. Unless otherwise defined, all capitalized terms herein have the same meaning as in the Turnover Motion.

3. I am assisting the Plan Fiduciary in obtaining the records necessary for him to understand and investigate the pre and post-petition financial affairs of the Debtor. I am also assisting the Plan Fiduciary in pursuing certain avoidance actions on behalf of the Estate, including the pending Adversaries.

4. At my direction, on or about April 3, 2025, MF associate attorney Jonathan Serrano, sent a letter to Bommel's counsel requesting various categories of information recorded between January 2017 through October 11, 2022. A true and correct copy of the April 3 Letter is attached hereto as Exhibit 8.

5. On or around April 15, 2025, counsel for Bommel responded by letter (the "April 15 Letter") and produced via a Dropbox link sent by Bommel, PDF copies of a small selection of records that he converted from their original format to PDF prior to Production. A true and correct copy of the April 15 Letter is attached as Exhibit 9.

6. The April 15 Letter also attaches a chart which indicated that Bommel did not provide all emails or letters between him and PLG, and that such communications should be sought from Mr. Peter (who has also failed to turnover these communications). *Id*., pg. 3, row no. 9. The chart did, however, indicate that Bommel had turned over "[a]ll communications (*i.e*., letters and emails) and documents related to or referring to 'Deferred Compensation[.]'" *Id*., pg. 4, row no. 23.

7. My colleague Jonothan Serrano, Esq. ("Mr. Serrano") sent a follow up email to Bommel's Counsel requesting additional documents, information and property (the "April 15 Email"). A true and correct copy of the April 15 Email is attached as Exhibit 10. Among other things, the April 15 Email requested turnover of a Lenovo ThinkPad laptop and external hard drive Bommel purchased using NATPE's AMEX card one month prior to the Petition Date, various NATPE global administrative credentials (*i.e*., username and password), including for Dropbox, the "location where NATPE's corporate governance documents are stored," "name(s) of any and all law firms and/or attorneys with whom NAPTE consulted on bankruptcy and/or insolvency issues" and "Records of all payments of deferred compensation, vacation, and bonuses by NATPE." *Id*., pp. 1-2.

8. On April 28, 2025, Bommel's counsel replied by email (the "April 28 Email"). A true and correct copy of the April 28 Email is attached as Exhibit 11.

9. In response to the inquiry about law firms or attorneys that NATPE consulted with regarding Bankruptcy issues, Bommel answered "Leslie Cohen - Leslie Cohen Law PC" and nothing else. *Id*., pg. 4, row 37. Concerning the request for records of all payments of deferred compensation, vacation, and bonuses by NATPE, Bommel responded "[a]lready answered." *Id*., pg. 4, row 36. However, in reviewing the documents provided, it became apparent that Bommel had not provided "all" documents in his possession, and further that he intentionally converted each of these documents from their original format (i.e. Word, Excel, or PowerPoint) to a PDF format before producing them to the Plan Fiduciary.

/ / /

10. I have reviewed the PDF files produced by Mr. Bommel, and they do not contain "metadata" that would be expected to be found in the original files and that would demonstrate important facts like who created the documents, when and how they were revised, and when they were printed, thereby preventing the Plan Fiduciary from accessing key recorded information. For example, many of the files provided by Bommel had their purported dates in the file name (*e.g.*, "11-20-20 CW_Memo"). However, the metadata (*e.g.*, the date the document was created, the date the document was last modified, the author of document) showed that Bommel had created almost all of the PDFs on April 7, 2025 by converting the original Word, Excel or PowerPoint documents into a .pdf file. *See e.g.*, attached as Exhibit 14 – Metadata for 2019 Code of Ethics Document (Word to PDF) (red boxes added); Exhibit 15 – Metadata for 1-18-20 Executive Committee Document (Word to PDF) (red boxes added); Exhibit 16 – Metadata for Deferred Executive Salary modeling 2021 – 2022 Document (Excel to PDF) (red boxes added).

11. NATPE's September 2022 invoice from reflects an expense of $6,084.00 incurred on August 25, 2022 for "[f]ees to Bankruptcy Counsel for initial consultation (not ultimately retained)" incurred on August 25, 2022 (the "September 2022 Invoice"). A true and correct copy of the September 2022 Invoice is attached as Exhibit 12.

12. As reflected on the Bankruptcy Court Docket, this payment was omitted from the Debtor's Statement of Financial Affairs. (Dkt. 27, SOFA, Part 6, 11¶, *Payments related to bankruptcy* which requires the Debtor to disclose: "any payments of money or other transfers of property made by the debtor ***or person acting on behalf of the debtor*** within 1 year before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or restructuring, seeking bankruptcy relief, or filing a bankruptcy case." (emphasis added). When asked by the Plan Fiduciary for the "name of any and all law firms with whom NAPTE consulted on bankruptcy and/or insolvency issues," in the April 28 Email, Mr. Bommel named only Leslie Cohen. (*See* Exhibit 11 - April 28 Email, pg. 4, row 37).

Case 1:24-ap-01058-MB Doc 31-1 Filed 01/22/25 Entered 01/22/25 21:19:13 Desc
Main Document Page 2 of 150

13. The June 10 Documents include a copy of an August 2022 retainer agreement drafted by the law firm Norton Rose Fulbright US, LLP ("Norton Rose"), that is addressed NATPE, entitled "*Financial Restructuring Options*," and signed by Mr. Peter on August 22, 2022 (the "Norton Rose Retention Agreement"). A true and correct copy of the Norton Rose Retention Agreement produced in the June 10 Documents is attached as Exhibit 13.

14. The Norton Rose Retention Agreement indicates it was sent by email, although the Plan Fiduciary has yet to receive any such email from the Former Directors or Mr. Peter. Notably, the metadata of at least one previously provided document indicates that it was created by Norton Rose and subsequently edited by Bommel, strongly suggesting he was aware that Norton Rose was consulting

15. On May 5, 2025, I sent Ms. Lowe a letter addressing certain representations in the prior letter (the "May 5 Letter"). A true and correct copy of the May 5 Letter is attached as Exhibit 17.

16. Among other things, May 5 Letter requested the location of the external hard drive and Lenovo ThinkPad laptop, the NATPE MacBook laptop computer in Mr. Bommel's possession, the name of the attorneys and the firm associated with the May 2022 Invoice and addressed Mr. Bommel's turnover of the documents he had converted from their original "native" formats to PDF and his failure to turnover the native versions of those documents. The May 5 Letter reiterated that his request included "all 'native' files and all other books, records, documents, emails, entire case files, computers, hard drives, communications, correspondence, invoices, photos, videos, and any other electronically stored information, without any modification whatsoever (e.g., alteration of metadata)." *Id*., pg. 2.

17. On or about May 15, 2025, Ms. Lowe responded to the May 5 Letter and turnover requests (the "5/15 Response"). A true and correct copy of the 5/15 Response is attached as Exhibit 4.

/ / /

18. Thereafter, Ms. Lowe and I had further email and telephone communications regarding the native files and turnover requests, including but not limited to an email sent by Ms. Lowe on May 28, 2025 (the “May 28 Email”) and a telephone conference on June 2, 2025. In the May 28 Email, Ms. Lowe stated that she would “speak to Mr. Bommel before [May 30, 2025]” about the native files.” Notwithstanding Bommel’s or his counsel’s representations, to this date neither the native files, any other additional Records, nor the NATPE MacBook or External Hard drive have been received.

19. Based on the forgoing, and as further detailed in the Turnover Motion, it is my understanding and belief that Mr. Bommel still possesses or has access to the Debtor’s corporate records, books, accounting information, insurance records, emails (and access to emails), at least one laptop computer owned by Debtor that contains Debtor’s company records.

20. The Debtor’s records reflect that Bommel maintained at least one Dropbox cloud storage account paid for by the Debtor to conduct NATPE business. The Debtor’s May 2024 Monthly Operating Report reflects a $413.50 payment to Dropbox from its AXOS Checking on May 30, 2024. A true and correct copy of the May 2024 MOR is attached as Exhibit 18. This payment was booked as “5/1/2024 Consulting Fees” for Bommel. The Debtor’s bank statement also reflects monthly installment payments to Dropbox of approximately $21.76 per month.

21. Furthermore, my review of the June 10 Documents produced by PLG, revealed that NATPE also utilized a Google Cloud Storage Drive (docs.google.com) to store and share documents and information, including but not limited to links to NATPE’s insurance policies which was not disclosed. These Records have not been disclosed or turned over.

22. Based on my review and investigation of the available records of the Debtor and pleadings on file in the Bankruptcy Case, it is my understanding that the Former Directors were charged with and did manage and direct the business and affairs

of NATPE and that is the information being sought by the Turnover Motion.

23. Based on the foregoing, and as set forth in the Turnover Motion, the Plan Fiduciary seeks the Court's intervention and an Order requiring the Former Directors to turn over all Records in their possession relating to the Debtor's property of financial affairs to the Plan Fiduciary in furtherance of implementation of the Plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on June 26, 2025, at Encino, California.

*/s/ Meghann A. Triplett*
Meghann A. Triplett

Case 1:24-bk-11031-MB Doc 51-9 Filed 06/26/25 Entered 06/26/25 18:19:12 Desc
Main Document Page 2 of 150

# EXHIBIT 1

Case 1:22-bk-11181-MB Doc 53-1 Filed 01/26/25 Entered 01/26/25 21:06:12 Desc
Main Document Page 2 of 10

MEGHANN A. TRIPLETT (SBN 268005)
*Meghann@MarguliesFaithLaw.com*
JONATHAN SERRANO (SBN 333225)
*Jonathan@MarguliesFaithLaw.com*
**MARGULIES FAITH LLP**
16030 Ventura Blvd., Suite 470
Encino, California 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777

Attorneys for Jeremy W. Faith,
Chapter 11 Plan Fiduciary

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re:

NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC.,

Debtor.

Case No.: 1:22-bk-11181-MB

Chapter: 11 (Subchapter V)

**ORDER GRANTING CHAPTER 11 PLAN FIDUCIARY'S MOTION FOR TURNOVER OF RECORDED INFORMATION RELATING TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS IN THE POSSESSION OF ITS FORMER DIRECTORS**

**Hearing**:
**Date:** July 17, 2025
**Time:** 2:30 p.m.
**Place:** Courtroom 303
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills. CA 91367

At the above-listed date and time, the Court held a hearing on the "Chapter 11 Plan Fiduciary's Motion for Turnover of Recorded Information Relating to the Debtor's Property or Financial Affairs in the Possession of its Former Directors" (the "Turnover Motion"), pursuant to Bankruptcy Code sections 105(a) and 542(e), the *Second Amended Plan of Liquidation for Small Business Under Chapter 11* [Docket No. 251] (the "Plan"), the *Order Confirming Second Amended Subchapter V Chapter 11 Plan, with Modifications* [Docket No. 258] (the "Confirmation Order"), and Rules 2002 and 9014 of

the Federal Rules of Bankruptcy Procedure compelling turnover of recorded information relating to National Association of Television Program Executives, Inc.'s, ("Debtor" or "NATPE") property or financial affairs in the possession, custody or control of JP Bommel, Richard "Dick" Lippin, Andrew Kaplan, and Sarah Jessup (the "Former Directors"), all as more fully set forth in the Turnover Motion; and this Court having found that the notice of the Turnover Motion was appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Turnover Motion and having heard the statements in support of the relief requested therein at a hearing before this Court; and this Court having determined that the legal and factual bases set forth in the Turnover Motion and at the hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Turnover Motion is GRANTED;

2. In accordance with section 542(e) of the Bankruptcy Code and in aid of implementation of the Plan, JP Bommel, Richard "Dick" Lippin, Andrew Kaplan, and Sarah Jessup shall turn over and disclose to the Plan Fiduciary all recorded information relating to the Debtor's property or financial affairs, including but not limited to books, documents, records, papers, electronically stored information, and electronic mail in the possession, custody or control of the Former Directors ("Turnover Records");

3. The Turnover Records shall be produced to Movant on or before 5:00 p.m. (PDT) on July 31, 2025 (the "Turnover Deadline") pursuant to reasonable protocols for the secure transfer of electronic records to be agreed upon by and between counsel for the Plan Fiduciary and the Former Directors before the Turnover Deadline;

4. Counsel for the Plan Fiduciary shall effectuate service of this Order no later than the first business day after entry of this Order upon (i) the Former Directors at their last known address by email and regular mail and (ii) counsel for the Former Directors by overnight mail or electronic mail;

Case 1:22-bk-11085-MB Doc 31-1 Filed 06/26/25 Entered 06/26/25 21:19:12 Desc Main Document Page 42 of 150

5. The Former Directors' failure to comply with the terms of this Order by the Turnover Deadline may result in the issuance of an order to show cause why the non-compliant Former Director(s) should not be held in contempt for failure to turn over the Turnover Records to the Plan Fiduciary, including but not limited to attorneys' fees and the costs associated with the preparation of any motion and the enforcement of this Order;

6. The Plan Fiduciary is authorized and empowered to take any and all necessary actions to effectuate the relief granted in this Order in accordance with the Turnover Motion; and

7. The Bankruptcy Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

###

# EXHIBIT 2

Motion to Amend Complaint (part 2) Page 54 of 187
Case 1:22-ap-01155-MB Doc 35-1 Filed 05/26/25 Entered 05/26/25 21:06:18 Desc
Main Document Page 40 of 150

# EXHIBIT D

EXHIBIT 2 Page 37



AUGUST 7, 2024
Jeremy@MarguliesFaithLaw.com

Leslie A. Cohen, Esq. – leslie@lesliecohenlaw.com
Michael B. Lubic, Esq.- Michael.lubic@klgates.com
Mark Shinderman, Esq. – mshinderman@milbank.com

**RE:** **<u>Draft Proposal for Plan Fiduciary – In re: National Association of Television Program Executives, Inc.</u>; Case No. 1:22-bk-11181-MB**

Dear Counselors,

At the request of the parties involved in the above-referenced matter (the "Case"), below is my proposed outline and compensation structure for the provision of services in the Case as a plan fiduciary.

- Plan Fiduciary Services:
  - Expected Duties
    - Disbursing Agent
      - Distribute payments to allowed claims
      - Pay allowed administrative expenses
    - Filed claims review/objections
      - How are late claims treated?
    - Tax Work
      - Prepare and file tax returns
      - Collect and distribute tax information to beneficiaries and estate professionals as required
      - Retain tax professionals
    - Review Fee Applications
      - Review fee applications filed by estate professionals
      - Object to fees of estate professionals if appropriate
    - Investigate/Liquidate Estate Claims
      - Investigate and prosecute affirmative estate claims for relief
      - Collect and retain Debtor's books and records
      - Conduct pre-litigation discovery as needed
      - Retain professionals to assist with the investigation and prosecution of estate claims – including but not limited to attorneys and forensic accountants
    - Post Confirmation Reporting/Filing
      - Prepare and file post-confirmation status reports
      - Prepare and file motion for entry of final decree

- Compensation
  - Plan Fiduciary
    - Fees - Calculated at the lower amount of the prevailing hourly rates of the Plan Fiduciary and administrative support staff or fees calculated pursuant to 11 U.S.C. § 326(a)
      - The prevailing hourly rates for the Plan Fiduciary and support staff shall be the rates charged for similar services performed as a liquidating trustee or equity receiver – which hourly rates are currently:
        - Jeremy W. Faith - $550.00
        - Fiduciary Administrator - $280.00
        - Administrative - $ 80.00
        - Field Agents - $ 80.00
    - Expenses – reimbursement for expenses consistent with the types and rates authorized by the U.S. Trustee guidelines
    - Source of Payment For Plan Fiduciary
      - Fees payable to Plan Fiduciary shall be paid only from funds collected by the Plan Fiduciary through prosecution of estate claims. Expenses may be paid from funds turned over to the Plan Fiduciary.
      -
      - Plan Fiduciary agrees to perform all 'Plan Fiduciary Services' regardless of whether sufficient funds are recovered to cover the associated feesPlan Fiduciary as well as any agents, professionals or others he employs shall be limited to those funds he recovers through any third-party actions. Plan Fiduciary shall receive no payment from any funds in NATPE bank accounts on the date of appointment("Initial Funds")
      -
  - Tax Preparation Professionals
    - Fees - Paid at the tax professionals prevailing hourly rates at the time services are performed
    - Expenses – reimbursement for expenses consistent with the types and rates authorized by the U.S. Trustee guidelines
    - Fees and expenses paid from all funds collected and administered by the Plan Fiduciary
  - Forensic Accounting Professionals – fees and costs shall be paid only
    - from funds collected by the Plan Fiduciary through prosecution of estate claims,
  - Attorneys
    - Plan Fiduciary may retain his law firm Margulies Faith LLP to assist with the investigation and prosecution of the estate claims
      - Fees for Affirmative Recoveries – Paid at 35% of the "Amount Recovered". The term "Amount Recovered" means the gross amount of any recovery from prosecution of estate claims, before deduction of any unreimbursed or unpaid costs, whether such sums are established by settlement or by entry of judgment, and including any award of attorney's fees.
      - Fees for Reduction in Claims – Paid 35% of the value to the estate of any reduction in claims or administrative expenses for work performed by counsel to the Plan Fiduciary, payable exclusively from monies recovered through Affirmative Recoveries and not from any funds turned over to the Plan Fiduciary or received post confirmation through means other than his services in attempting to recover funds for the estate.

- Expenses - reimbursement for expenses consistent with the types and rates authorized by the U.S. Trustee guidelines, paid only from recoveries on the estate claims, except that postage shall be payable from any funds on hand in the estate from whatever source.
- The Plan Fiduciary may investigate and pursue any and all claims, subject only to the following limitations:
    - Recovery on claims against directors and officers relating to the breach of their duties as directors and officers shall be limited to the D&O insurance policy. This limitation shall not apply to claims related to any funds paid by NATPE to directors and/or officers.
    - No claims shall be brought against The Lippin Group related to services it performed for NATPE or to payments it received from NATPE.
    - No claims shall be brought against JP Bommel relating to the value of services performed by him; provided, however, that claims may be brought against him related to the avoidance of deferred compensation, severance, and preferential payments.
    - No claims shall be brought against Arnold Peter or Peter Law Group relating to the value of services performed by them prepetition
    - Arnold P. Peter, Peter Law Group, JP Bommel, and NATPE's directors & officers and the D&O insurance carrier reserve all defenses and counterclaims (to be used as offsets only) to any claims alleged or brought by the Plan Fiduciary.
    - 
- Plan Fiduciary may retain other outside attorneys to assist with the investigation and prosecution of the estate claims with compensation of such professionals in the same manner as that of the Plan Fiduciary's firm as set forth above.

Thank you for your consideration and please feel free to contact me if you have any questions or need further information.

Very truly yours,

Jeremy W. Faith

Case 1:24-bk-11051-MB Doc 31-1 Filed 06/26/25 Entered 06/26/25 21:16:12 Desc
Main Document Page 48 of 150

# EXHIBIT 3



Case 1:24-ap-01015-MB Doc 35-1 Filed 01/26/25 Entered 01/26/25 21:06:28 Desc
Motion to Amend Complaint (part 2) Page 59 of 187

Leslie A. Cohen, Esq. (SBN 93698)
leslie@lesliecohenlaw.com
J'aime Williams Kerper, Esq. (SBN 261148)
jaime@lesliecohenlaw.com
Leslie Cohen Law, P.C.
1615-A Montana Avenue
Santa Monica, CA 90403
Telephone: 310.394-5900
Facsimile: 310.394-9280

Attorneys for Debtor in Possession

FILED & ENTERED

SEP 17 2024

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Cetulio DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| *In re*<br><br>National Association of Television Program Executives, Inc.,<br><br>Debtor and Debtor in Possession | Case No. 1:22-bk-11181-MB<br><br>Chapter 11<br><br>**ORDER CONFIRMING SECOND AMENDED SUBCHAPTER V CHAPTER 11 PLAN, WITH MODIFICATIONS**<br>**[CASE DKT. 251]**<br><br>Date: August 23, 2024<br>Time: 2:30 p.m.<br>Via ZoomGov |

A hearing was held at the above time and place on confirmation of the "Second Amended Plan of Liquidation" (the "**Plan**," Docket No. 251) filed by National Association of Television Program Executives, Inc. (the "**Debtor**"). Appearances were noted on the record. The court has reviewed and considered the Plan, the record in this case, and the statements of counsel on the record at the hearing. For the reasons stated on the record,

IT IS HEREBY ORDERED THAT:

**A. Plan Modifications**

The Plan is deemed modified as follows:

Plan p. 1

The following portion of Section A.1. is stricken:
*This would result in a subordination of distributions to FB of all of its allowed claim in excess of $2,553,981.97. From the standpoint of other general unsecured creditors, this is an effective reduction in FB's claim of approximately 45%.*

Plan p. 2

The following sentence from Section C. is revised from :
*The Plan Fiduciary's fees and expenses will be paid only from funds he collects through the prosecution of estate claims against third-parties to be filed postconfirmation.*

To:
*The Plan Fiduciary's fees and expenses will be paid only from funds he collects through the prosecution of estate claims against third-parties to be filed postconfirmation, other than reasonable postage expenses which may be paid from current estate funds.*

Plan p. 3.

The following portion of Article 2, 2.03, Class 3 is stricken:
*Class 3 creditors will receive their pro rata share of the funds remaining in the estate after payment of administrative, sub V trustee and priority unsecured claims, estimated to be $19,874.27, resulting in payment of 0.51% of their claims.*

Plan p. 5.

The following is added as the first sentence regarding the treatment of Class 3 in Article 4, 4.01:

*Treatment of Class3 is subject to the settlement terms described in Section A.1 above.*

The following portion of Article 4, 4.01,Class 3 is stricken:
*estimated to be $19,874.27, resulting in payment of 0.51% of their claims.*

And the following language added in its place:
*and the reasonable postage expenses of the Plan Fiduciary.*

Plan p. 6.

The following portion of Article 7 is stricken:
*Allowed general unsecured claims will be paid their pro-rata share of the funds remaining on hand on the Effective Date, estimated to be $19,874.27. Additionally, the Plan Fiduciary will make additional pro rata payments to allowed general unsecured creditors under the Plan as funds warranted from his recoveries for the estate.*

**B. Plan Confirmed.**

This Court finds that the Plan, as modified in Part A above, satisfies the requirements of 11 USC § 1129(a) made applicable by virtue of §1191. The Court finds that the amendments and modifications to the Plan do not necessitate resolicitation of ballots. The Court notes that Fontainebleau Florida Hotel, LLC ("**Fontainebleau**") requested permission to alter its previously submitted ballot and grants permission to do so. Fontainebleau's resubmitted ballot is filed Docket No. 252, and as a result, it is clear that that Class 3 of the Plan overwhelmingly accepts Plan as a result. The Court further finds that notice of the Plan modification and hearings has been reasonable and adequate under the circumstances.

Accordingly, the Plan is hereby CONFIRMED under §1191(a).

**C. Settlement Approved**

The Court finds that the settlement between the Debtor and Fontainbleau which is embodied in the Plan is reasonable and appropriate and is approved.

**D. Agreement with Plan Fiduciary Approved**

The Court finds that the Proposal for Plan Fiduciary, attached to the Plan as Exhibit D, *as modified on the record at the hearing to provide for the payment of the Plan*

*Fiduciary's reasonable postage expenses from the estate funds on hand at confirmation,* is reasonable and appropriate and is approved.

**E. Confirmed Plan Binding.**

Pursuant to section 1141 of the Bankruptcy Code, upon the Effective Date, the provisions of the Plan shall bind the Debtor, any entity acquiring property under the Plan, and any Creditor or Interest holder or party in interest, whether or not such Creditor or Interest holder has filed a proof of Claim or Interest in this Chapter 11 Case, whether or not the Claim of such Creditor or the Interest of such Interest holder is impaired under the Plan, whether or not such Creditor or Interest holder has accepted or rejected the Plan and whether or not notice was received. Upon the Effective Date, all Claims against and debts of the Debtor shall be deemed fixed and adjusted pursuant to the Plan, and the Debtor shall have no further liability on account of any Claims except as set forth in the Plan and this Order. All payments and all distributions made under the Plan, which are made pursuant to the terms of the Plan, shall be in full and final satisfaction, settlement and release of all Claims.

**F. Effective Date; Waiver of 14-day Stay**

Notwithstanding anything to the contrary in the Plan, the Effective Date shall be the first business day after entry of this Order. The 14-day stay provided by the Federal Rules of Bankruptcy Procedure is hereby waived.

**G. Means of Implementation Approved.**

The Plan Fiduciary, as Disbursing Agent, is authorized and directed to take all actions necessary or appropriate, including payment to creditors, the execution, delivery, filing and recordation of any document, to implement, effectuate and consummate the Plan in accordance with its terms, and to carry out the transactions contemplated by the Plan.

**H.    Management of the Debtor; Disbursing Agent**

Plan Fiduciary is appointed the Disbursing Agent under the Plan upon entry of this Order. Following entry of this Order, the reorganized debtor may act only through the Plan Fiduciary and shall not have any officers or directors.

**I.    Notice of Entry of Confirmation Order.**

Within 72 hours following entry of this Order, the Plan Fiduciary shall mail notice of the entry of this Order to all parties entitled to notice pursuant to Bankruptcy Rules 2002(f) and 3020(c).

**J.    Retention of Jurisdiction.**

After confirmation of the Plan and occurrence of the Effective Date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes:

a.   To resolve any and all disputes regarding the operation and interpretation of the Plan and the Confirmation Order;

b.   To determine the allowability, classification, or priority of claims and interests upon objection by the Debtor, Plan Fiduciary, or by other parties in interest with standing to bring such objection or proceeding;

c.   To determine (to the extent necessary) the extent, validity and priority of any lien asserted against property of the Debtors or property of the Debtors' estate.

d.   To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and all matters referred to in the Plan, the Confirmation Order, and to determine all matters that may be pending before the Court in this case on or before the Effective Date with respect to any person or entity related thereto, including without limitation motions to dismiss or convert;

e. To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

f. To determine any request for payment of administrative expenses, if not previously resolved;

g. To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of this case whether before, on, or after the Effective Date;

h. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

i. To modify the Plan under Section 1193 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose;

j. Except as otherwise provided in the Plan or the Confirmation Order, to issue injunctions to take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or the Confirmation Order, or the execution or implementation by any person or entity of the Plan or the Confirmation Order;

k. To issue such orders in aid of consummation of the Plan or the Confirmation Order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Bankruptcy Rules; and

l. To enter a final decree and order closing this Case.

**K.    Retention and Enforcement of Claims; Rights**

Pursuant to Bankruptcy Code § 1123(b)(3), the Plan Fiduciary will succeed to any and all claims, defenses, powers and interests held by the Debtor (to the extent not transferred, waived, released, settled, or compromised on or before the Effective Date), and the Plan expressly reserves all such claims, defenses, powers and interests to the

Plan Fiduciary, including, without limitation, rights to object to the allowance of claims, request the subordination of claims, avoid transfers of property or interests in property of the Debtor, and seek recovery of property, damages, or equitable relief.

**L. Discharge**

On the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

**M. Post-Confirmation Status Report**

The Court shall conduct a post-confirmation status conference on December 10, 2024 at 1:30 p.m. Two weeks prior to the Status Conference, the Plan Fiduciary shall file a post-confirmation status report with supporting declaration explaining what progress has been made toward consummation of the Plan. The initial post-confirmation status report shall be served on the United States trustee, the Subchapter V Trustee, the 20 largest unsecured creditors, and those parties who have requested special notice. Further post-confirmation status reports shall be filed 14 days prior to any subsequent post-confirmation status conference, unless otherwise ordered by the Court.

The post-confirmation status report shall include at least the following information:

(1) A schedule listing for each debt and each class of claims: the total amount required to be paid under the Plan; the amount required to be paid as of the date of the post-confirmation status report; the amount actually paid as of the date of the post-confirmation status report; and the deficiency, if any, in required payments;

(2) An estimate of the date for Plan consummation and application for final decree; and

(3) Any other pertinent information needed to explain the progress toward consummation of the confirmed Plan.

In addition to the foregoing, the Plan Ficuciary shall file and serve post-confirmation quarterly reports in accordance with LBR 3020-1(b) and (c).

**Q. Substantial Consummation Report**. Not later than 14 days after the Effective Date, the Plan Fiduciary must file a report stating whether the plan has been substantially consummated and, if not, providing a projected date when substantial consummation is expected to occur and the steps necessary for substantial consummation to occur.

**R. Extensions of Projected Date of Substantial Consummation**. If the projected date for substantial consummation must be extended, the Plan Fiduciary must file a supplemental report specifying the new projected date, the progress made toward consummation of the plan, the steps necessary for substantial consummation to occur, and the reasons for the delay. The supplemental report must be filed and served as soon as possible, but at least not later than 14 days after the previously projected date of substantial consummation.

**S. Notice of Substantial Consummation.** Not later than 14 days after the Plan has been substantially consummated, the Plan Fiduciary must file a notice of substantial consummation and serve this notice on the subchapter V trustee, the United States trustee, and the 20 largest unsecured creditors.

**T. Termination of the Subchapter V Trustee's Services.** Upon substantial consummation of a consensual plan, the subchapter V trustee's services will terminate automatically pursuant to 11 U.S.C. § 1183(c)(1).

**U. Subchapter V Final Report and Account**. Within 60 days after the final distribution to creditors under a consensual plan, the Plan Fiduciary must file with the

Court, and serve upon all parties upon whom the plan was served, a subchapter V final report and account of administration of the estate (UST Form 101-11(V)-FR) ("Subchapter V Final Report and Account"), whereupon the Plan Fiduciary must seek entry of a final decree closing the case. After the Plan Fiduciary has filed its Subchapter V Final Report and Account, the Plan Fiduciary must file a motion for final decree pursuant to LBR 3022-1(a) supported by a declaration under penalty of perjury showing that: (A) the services of the subchapter V trustee have terminated, (B) the estate has been fully administered, (C) all adversary proceedings, contested matters and other disputes, including appeals, have been resolved by a final, non-appealable order or dismissed, and (D) there are no remaining matters for which the Court must continue to exercise jurisdiction. The Plan Fiduciary must also lodge a proposed final decree. Nothing herein is intended to prevent the Plan Fiduciary from seeking an earlier or interim closure of the case.

**V. Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the Case under § 1112(b) after the Plan is confirmed if there is an uncured default in performing the Plan. If the Court orders the Case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that the Court did not previously authorize relief from stay during the Case. The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of this order.

**W. Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, the Plan Fiduciary, nor any of their employees, agents, representatives, or retained professionals, whether or

not by Bankruptcy Court Order (each, an "**Indemnified Person**"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein. Each Indemnified Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

**X. Injunctions.**

Entry of this Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or this Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability, or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan, are permanently enjoined from taking any of the following actions against the Debtor, the Estate, the Plan Fiduciary, or their property on account of any such claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, including adversary proceedings in this bankruptcy case.

By accepting distributions under the Plan, and except as otherwise provided in the Plan and this Order, each holder of an allowed claim or allowed interest receiving

distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this Section.

**Y. Construction of Order.**

Any undefined capitalized terms in this Order shall have the same definition as set forth in the Plan. The failure to reference a particular provision of the Plan in this Order shall not affect the validity or enforceability of such provision. Each provision of the Plan shall be deemed authorized and approved by this Order and shall have the same binding effect of every other provision of the Plan, whether or not mentioned in this Order.

# # #

Date: September 17, 2024

Martin R Barash
United States Bankruptcy Judge

# EXHIBIT 4



Melissa Davis Lowe
Attorney at Law
MLowe@shulmanbastian.com

Please reply to Irvine

James C. Bastian, Jr.
Shane M. Biornstad*
Lynda T. Bui
Bryan W. Cabrera
Max Casal
Franklin J. Contreras, Jr.
Melissa Davis Lowe
Alan J. Friedman**
J. Ronald Ignatuk
Rika M. Kido
Mimi Lin
Timothy K. McMahon Jr.
Ryan D. O'Dea
Holly M. Ratzlaff
Leonard M. Shulman
Brooke S. Thompson

Of Counsel to the Firm
Eric D. Dean
Joseph M. Galosic
Omeed Mahrouyan

*Also admitted to practice in Nevada

**Also admitted to practice in Texas

May 15, 2025

Via E-Mail
meghann@marguliesfaithlaw.com

Meghann Triplett, Esq.
Margulies Faith LLP
16030 Ventura Blvd., Suite 470
Encino, CA 91436

Re: In re National Association of Television Program Executives, Inc.
Case No. 1:22-bk-11181-MB

Faith v. Bommel, et al.
Adv. Case No. 1:24-ap-01055-MB

Dear Meghann,

I am sending you this correspondence for the following reasons: (1) to discuss certain discovery issues and request we convene a conference call with Judge Barash on such issues; (2) to respond to your May 5, 2025 letter; and (3) to request dismissal or other disposition of all claims for relief (other than avoidance claims) filed against defendant Jean Pierre Bommel ("Mr. Bommel") in the Complaint filed in the above-referenced adversary case.

Discovery Issues

We are quite frankly surprised by the tone and progression of "discovery" in the adversary case. Instead of following proper protocols for discovery under the Federal Rules, your office instead sent informal letters requesting the turnover of documents by Mr. Bommel. As you know, Mr. Bommel is not the Debtor and is not a current officer or director of the Debtor. As such, we know of no duty Mr. Bommel owes to Mr. Faith under the Bankruptcy Code, the Plan, or otherwise. If you believe we are incorrect, please provide your authority that a non-debtor third party has any duty to the trustee or other estate representative under the Bankruptcy Code. The Plan, as you reference, merely sets forth Mr. Faith's duties as the Plan Fiduciary and does not permit him to skirt the requirements of the Bankruptcy Code and Bankruptcy Rules. The terms of the Plan and Mr. Faith's appointment also do not compel or require any turnover by Mr. Bommel absent following proper protocols under the Bankruptcy Code and the Bankruptcy Rules.

100 Spectrum Center Drive, Suite 600, Irvine, CA 92618 • Tel: 949.340.3400 • Fax: 949.340.3000
3550 Vine Street, Suite 210, Riverside, CA 92507 • Tel: 951.275.9300 • Fax: 951.275.9303
www.shulmanbastian.com

Main Document Page 2 of 150

Meghann Triplett, Esq.
May 15, 2025
Page 2

Rather, Mr. Bommel should be treated like any other third party and Mr. Faith should proceed under Bankruptcy Rule 2004 for the production of documents. Alternatively, given that there is already an adversary action pending, amend the Complaint to include a claim for relief for turnover.

Likewise, your assertion that the turnover request falls within Section 542 overlooks the fact that again, Mr. Bommel is not the Debtor. As a third party, Section 542 requires an adversary complaint and not just a motion for turnover as your May 5, 2025 letter suggests. See, Bankruptcy Rule 7001(a). If you have contrary authority, please provide it.

Despite the above, Mr. Bommel has thus far complied with the requests in the spirit of cooperation and in the hope that this matter can be resolved quickly. We are very troubled that the spirit of the settlement reached at arbitration is not being borne out here. The parties made it clear at arbitration, as reflected in the terms of Mr. Faith's appointment, that Mr. Bommel would not be burdened or bothered in pursuit of claims against insurance. Mr. Bommel has thus far tried to be accommodating, but he is now having to engage in extensive fact finding and litigation costs for counsel to respond to these disguised discovery attempts. He is understandably frustrated.

All that being said, rather than continuing to incur time and fees arguing over Mr. Faith's turnover rights, we believe a conference call with Judge Barash is in order. Please advise as to your availability over the next few weeks for a discovery conference.

Answers to Questions in May 5, 2025 Letter

To the best of his knowledge, Mr. Bommel turned over all documents which he has access to, or is in his custody and control. That being said, he will provide the native files of such documents as soon as he can. As to the 5,000 pages of documents in connection with arbitration, Mr. Bommel does not have access to such documents, and is not in possession of such documents. If such documents were given by NATPE to Peter Law Group, then Peter Law Group would be the correct party to direct your turnover request. Alternatively, we believe Fontainebleau is also in possession of such documents and you can obtain the documents from it.

Mr. Bommel believes the ThinkPad was last used by Charles Weiss, former head of sales. Mr. Bommel does not know whether Mr. Weiss is still in possession of the ThinkPad or where it is otherwise located. Mr. Bommel's Macbook is in storage; he will retrieve it and turn it over to your office. He also has in storage an external hard drive which may contain files from the company's former SharePoint

data storage. He will retrieve it as well and turn it over. This may take a few weeks to get to you but we will get it to you as soon as possible.

Finally, as to the $6,084 in fees for a bankruptcy consultation, Mr. Bommel does not recall for certain what attorney was consulted. As noted in our last communication, Mr. Bommel did consult with Jeffrey Liebenson around such time, but Mr. Liebenson is not a bankruptcy attorney, so Mr. Bommel is not certain the expense on the billing statement refers to such consultation. As the reference is in Mr. Peter's billing statement, Mr. Peter should be the one to provide you such information.

Request for Disposition of Certain Claims for Relief

Mr. Bommel is anxious to get this matter resolved and cannot continue to wait for Mr. Faith to finalize the insurance issues before discussing a resolution. The terms of Mr. Faith's appointment are made very clear in his August 7, 2024 letter included as Exhibit D to the Plan. Specifically, it states:

"No claims shall be brought against JP Bommel relating to the value of services performed by him; provided, however, that claims may be brought against him related to the avoidance of deferred compensation, severance, and preferential payments."

Despite this language, the Complaint names claims for relief against Mr. Bommel not just for avoidance, but also for breach of fiduciary duty; corporate waste; unjust enrichment; and conversion. Based on the above language, these claims for relief that are not avoidance claims must be dismissed immediately. And once they are dismissed, the only remaining claims are those for avoidance, which we should be able to settle relatively quickly.

If such claims for relief must be asserted in order to make a claim on the insurance policy, then at the very least, the Complaint should be amended to specifically note that Mr. Bommel is being named on the non-avoidance claims nominally only as required in order to pursue claims on the insurance and that in no event will the Plaintiff seek to execute any recovery of such claims as against Mr. Bommel, his property, agents, etc.

Summary

We are hopeful that Mr. Bommel's further responses and documents are sufficient to conclude these discovery issues but if not, please advise when you are available for a discovery conference with Judge Barash. Please also respond by no later than May 23, 2025 as to how you intend to address the scope of Mr. Faith's appointment, specifically that no claims shall be brought against Mr. Bommel other than those for avoidance.

Very truly yours,

**SHULMAN BASTIAN FRIEDMAN BUI & O'DEA LLP**

***Melissa Davis Lowe***
***[Electronic Signature]***

Melissa Davis Lowe

MDL/amv

Case 1:24-bk-11035-MB Doc 31-9 Filed 01/22/25 Entered 01/22/25 18:19:13 Desc Main Document Page 2 of 5 of 150

# EXHIBIT 5

PETER
LAW
GROUP

**PETER LAW GROUP**
270 Coral Circle
El Segundo CA 90245
Email: akingbilling@socal.rr.com
Email: apeter@peterlawgroup.com

Bill to:

**National Association of Television Program Executives**

jpbommel@natpe.org

**Business Matters 0158**

# INVOICE

To April 30, 2022

| | |
|---|---|
| Invoice Date | May 02, 2022 |
| Invoice Number | 377 |
| Due Date | Due Upon Receipt |

## Account Summary

| | |
|---|---|
| Previous Balance | $18,105.00 |
| Payments Received | ($18,105.00) |
| Outstanding Balance | $0.00 |
| Current Invoice | $10,615.00 |
| **Total Due** | **$10,615.00** |

## Payment Transactions

| Date | Type | Invoice # | Description | Amount |
|---|---|---|---|---|
| 4/11/2022 | Payment | 357 | | $18,105.00 |

## Fee Detail

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 4/3/2022 | AP | Attend to email exchanges with Messrs. Kaplan and Bommel re status and Mr. Bommel employment agreement. and Exec Comm insuarnce issues; reaerach re latter issue and attend to email exchange. | 2.50 | $550.00/hr | $1,375.00 |
| 4/4/2022 | AP | Draft JP Bommel Employment Agreement | 2.80 | $550.00/hr | $1,540.00 |

# EXHIBIT 6



**PETER LAW GROUP**
270 Coral Circle
El Segundo CA 90245
Email: akingbilling@socal.rr.com
Email: apeter@peterlawgroup.com

Bill to:

**National Association of Television Program Executives**

jpbommel@natpe.org

# INVOICE

To August 31, 2022

| | |
|---|---|
| Invoice Date | September 01, 2022 |
| Invoice Number | 457 |
| Due Date | Due Upon Receipt |

**Fontainebleau Litigation 0266**

Thank for you for placing your trust in Peter Law Group. Attached is our current invoice. If you have any questions or concerns, please contact Arnold Peter directly apeter@peterlawgroup.Com ( 310.432.0500)

For your convenience, you can pay your invoice by credit card using the following link:

https://secure.Lawpay.Com/pages/arnold-p-peter-apc/operating

## Account Summary

| | |
|---|---|
| Previous Balance | $33,190.00 |
| Payments Received | ($33,190.00) |
| Outstanding Balance | $0.00 |
| Current Invoice | $48,675.00 |
| **Total Due** | **$48,675.00** |

## Payment Transactions

| Date | Type | Invoice # | Description | Amount |
|---|---|---|---|---|
| 8/9/2022 | Payment | 433 | | $33,190.00 |

## Fee Detail

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/1/2022 | AP | Review correspondence re deposition schedule; attend to opposing counsel re same; conferences and email communications with NATPE tecxhnology vendor. | 2.50 | $550.00/hr | $1,375.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/2/2022 | AP | Draft interrogatory responses; review Conference Direct agreement; attend to conference and email exchange with Mr. Harbeson re same. | 6.00 | $550.00/hr | $3,300.00 |
| 8/2/2022 | AR | Review email chain regarding deposition dates. | 0.50 | $150.00/hr | $75.00 |
| 8/3/2022 | AB | Reviewed and proofread the First Set of Interrogatories. | 4.50 | $250.00/hr | $1,125.00 |
| 8/3/2022 | AP | Separate conversations Messr. Bommel and Kaplan re cancellation of the 2021 and 2022 Events; revisions to interrogatories re same. | 4.00 | $550.00/hr | $2,200.00 |
| 8/3/2022 | AR | Attend status conference for further handling of case. | 1.50 | $150.00/hr | $225.00 |
| 8/7/2022 | AR | Review email regarding topic areas for NATPE's Corporate Representative's deposition, download and save. | 1.00 | $150.00/hr | $150.00 |
| 8/8/2022 | AB | California Secretary of State business search for Statement of Information. | 1.00 | $250.00/hr | $250.00 |
| 8/8/2022 | AP | Research and draft memorandum re personal liability | 3.50 | $550.00/hr | $1,925.00 |
| 8/9/2022 | AB | Reviewed and proofread First Set of Interrogatories | 4.00 | $250.00/hr | $1,000.00 |
| 8/9/2022 | AP | Review and revise response to First SEt of Interrogatories. | 4.50 | $550.00/hr | $2,475.00 |
| 8/9/2022 | AR | Review NATPE documents/emails for ESI discovery response. | 3.00 | $150.00/hr | $450.00 |
| 8/9/2022 | EF | Review documents on temp mailbox generated from ESI search | 2.50 | $300.00/hr | $750.00 |
| 8/10/2022 | AP | Finalize responses to the first set of interrogatories; draft correspondence to Arbitrator; Conversation with Clkaims ADjuster re coverage, | 4.00 | $550.00/hr | $2,200.00 |
| 8/10/2022 | AR | Prepare correspondence to Judge Thornton and responses to interrogatories for filing and service. | 1.00 | $150.00/hr | $150.00 |
| 8/10/2022 | EF | Review letter from AP to arbitrator | 0.80 | $300.00/hr | $240.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/11/2022 | AR | Review emails regarding depositions and pending deadlines/event dates. | 0.50 | $150.00/hr | $75.00 |
| 8/14/2022 | AP | Draft correspondence to Arbitartor re Mr. Kaplan's deposition and other related issues. | 4.50 | $550.00/hr | $2,475.00 |
| 8/14/2022 | AR | Review case folders and clean up same | 1.40 | $150.00/hr | $210.00 |
| 8/14/2022 | AR | Review email exchange between Hon. Thornton, Mr. Peter and Ms. Paul regarding discovery dispute. | 1.00 | $150.00/hr | $150.00 |
| 8/14/2022 | AR | Prepare Mr. Peter's letter to Hon. Thornton regarding pending discovery dispute. | 1.30 | $150.00/hr | $195.00 |
| 8/15/2022 | AP | Review PMQ deposition notice; attend to email exchanges with Messers. Bommrel., Kaplan and Harbesoin re same. | 1.50 | $550.00/hr | $825.00 |
| 8/15/2022 | AR | Review emails and calendar dial-in information for discovery conference. | 1.00 | $150.00/hr | $150.00 |
| 8/15/2022 | AR | Review emails regarding witness depositions and ESI search terms. | 0.50 | $150.00/hr | $75.00 |
| 8/15/2022 | EF | Review prior emails between AP and OPC; check schedule for deposition availability; read letters exchanged between AP, OPC, and JAMS | 3.00 | $300.00/hr | $900.00 |
| 8/16/2022 | AP | Attend to email exchanges with counsel for Fontainebleau re upcoming discovery conference with Arbitrator; conference re same. | 4.50 | $550.00/hr | $2,475.00 |
| 8/16/2022 | AR | Review email regarding conference call to discuss pending discovery issues and calendar. | 0.20 | $150.00/hr | $30.00 |
| 8/16/2022 | AR | Review emails regarding conflict of deposition dates | 0.10 | $150.00/hr | $15.00 |
| 8/16/2022 | EF | Review prior emails between AP and OPC; check schedule for deposition availability; read letters exchanged between AP, OPC, and JAMS | 2.40 | $300.00/hr | $720.00 |
| 8/17/2022 | AB | Arbitration discovery conference | 1.00 | $250.00/hr | $250.00 |
| 8/17/2022 | AB | Reviewed letters to judge Thornton to familiarize myself with the facts in preparation for the arbitration discovery conference. | 1.00 | $250.00/hr | $250.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/17/2022 | AP | Prepare for and participate in hearing Andy Kaplan deposition | 3.00 | $550.00/hr | $1,650.00 |
| 8/17/2022 | AP | Email communications with Messers. Kaplan, Bommel, and Harbeson re discovery; review documents produced. | 2.60 | $550.00/hr | $1,430.00 |
| 8/17/2022 | EF | Review emails related to 2021 cancellation event | 0.80 | $300.00/hr | $240.00 |
| 8/18/2022 | AB | Saved documents in "share folders" provided by Kaplan, Bommel, and Harbeson; looked for documents on FC mentioned in "Correspondance 8-16-22." | 3.00 | $250.00/hr | $750.00 |
| 8/19/2022 | AP | Review extensive email communications and discovery documents for privilege review. | 3.50 | $550.00/hr | $1,925.00 |
| 8/20/2022 | AR | Clean up discovery files. | 0.20 | $150.00/hr | $30.00 |
| 8/20/2022 | AR | Review document production and bates number. | 1.50 | $150.00/hr | $225.00 |
| 8/20/2022 | AR | Order and send deposition prep video to clients. | 0.50 | $150.00/hr | $75.00 |
| 8/21/2022 | AB | Worked on a privilege log; searched and added documents. | 6.00 | $250.00/hr | $1,500.00 |
| 8/22/2022 | AB | Drafted "Cease and Desist Ltr" for an unauthorized use of NATPES's logo on a website. | 2.50 | $250.00/hr | $625.00 |
| 8/22/2022 | AR | Review privilege document, redact and add to document production. | 1.50 | $150.00/hr | $225.00 |
| 8/22/2022 | AR | Review document production and privilege log, prepare proof of service, serve and file. | 2.00 | $150.00/hr | $300.00 |
| 8/22/2022 | AR | Conference call with Mr. Peter and Ms. Balinsky to discuss document production and privilege log. | 0.40 | $150.00/hr | $60.00 |
| 8/22/2022 | EF | Inform AP of deposition availability | 0.30 | $300.00/hr | $90.00 |
| 8/23/2022 | AR | Review email chain regarding Brunico Due Diligence. | 0.10 | $150.00/hr | $15.00 |
| 8/23/2022 | AR | Review email from Mr. Wolf regarding insufficient document production and calendar date to supplement. | 0.20 | $150.00/hr | $30.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/23/2022 | AR | Review most recent document production for any attachments to emails. | 1.00 | $150.00/hr | $150.00 |
| 8/23/2022 | AR | Review email from Mr. Peter regarding insurance coverage and deadlines, and calendar. | 0.20 | $150.00/hr | $30.00 |
| 8/23/2022 | EF | Review emails from OPC re deficient document production; speak with AP re OPC's request for call with judge | 0.80 | $300.00/hr | $240.00 |
| 8/24/2022 | AP | Review documents for production; communication with counsel for the Fontainebleau same; communication with arbitration agency re same; communications with insurance carrier; conferences with Messers. Bommel and Kaplan re same. | 4.00 | $550.00/hr | $2,200.00 |
| 8/24/2022 | AR | Conference call with Mr. Peter regarding progress with reviewing emails. | 0.20 | $150.00/hr | $30.00 |
| 8/24/2022 | AR | Review PDF regarding emails and conference call with Mr. Peter regarding next steps. | 0.30 | $150.00/hr | $45.00 |
| 8/24/2022 | AR | Calendar details for conference with the Arbitrator to discuss discovery issues. | 0.10 | $150.00/hr | $15.00 |
| 8/24/2022 | AR | Review emails/attachments compare PDF document production with emails provided by NATPE. | 4.20 | $150.00/hr | $630.00 |
| 8/24/2022 | AR | Review emails regarding discovery disputes between the parties. | 0.10 | $150.00/hr | $15.00 |
| 8/24/2022 | EF | Call with AP; Research and begin drafting complaint vs. D&O insurance carrier; review prior correspondences between AP and insurance carrier | 1.80 | $300.00/hr | $540.00 |
| 8/24/2022 | EF | Review correspondences between AP, OPC, and JAMS | 0.60 | $300.00/hr | $180.00 |
| 8/25/2022 | AP | Prepare for and participate in conference with arbitrator re discovery disputes, | 2.00 | $550.00/hr | $1,100.00 |
| 8/25/2022 | AP | Draft request for en camera review. | 3.00 | $550.00/hr | $1,650.00 |
| 8/25/2022 | AR | Prepare correspondence/exhibits and email to Judge Thornton and counsel (without exhibits) | 0.20 | $150.00/hr | $30.00 |
| 8/25/2022 | AR | Telephone call with Mr. Peter regarding clarification of privilege emails | 0.10 | $150.00/hr | $15.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/25/2022 | AR | Review emails regarding privilege logs. | 0.20 | $150.00/hr | $30.00 |
| 8/25/2022 | AR | Review privilege log, organize PDF and add exhibit tabs. | 2.00 | $150.00/hr | $300.00 |
| 8/25/2022 | AR | Continue to review emails with attachment and download. | 1.60 | $150.00/hr | $240.00 |
| 8/25/2022 | EF | Review emails from OPC re deficient document production; speak with AP re OPC's request for call with judge | 0.20 | $300.00/hr | $60.00 |
| 8/25/2022 | EF | Call with AP; Research and begin drafting complaint vs. D&O insurance carrier; review prior correspondences between AP and insurance carrier | 1.90 | $300.00/hr | $570.00 |
| 8/25/2022 | EF | Review correspondences between AP, OPC, and JAMS | 0.50 | $300.00/hr | $150.00 |
| 8/26/2022 | AP | Review and revise, finalize settlement proposal; attend to email exchanges re same; conferences with counsel re same. | 1.50 | $550.00/hr | $825.00 |
| 8/26/2022 | EF | Call with AP; Research and begin drafting complaint vs. D&O insurance carrier; review prior correspondences between AP and insurance carrier | 1.60 | $300.00/hr | $480.00 |
| 8/26/2022 | EF | Review correspondences between AP, OPC, and JAMS | 0.40 | $300.00/hr | $120.00 |
| 8/28/2022 | AR | Review privilege log and document production for email of January 4, 2022. | 0.60 | $150.00/hr | $90.00 |
| 8/29/2022 | AB | Looked for item #29 in the privilege log; marked needed pages. | 1.00 | $250.00/hr | $250.00 |
| 8/29/2022 | AR | Review email and order from Judge Thornton regarding discovery conference; download and save order. | 0.20 | $150.00/hr | $30.00 |
| 8/29/2022 | AR | Calendar deposition of Messrs. Bommel, Harbeson, and Kaplan. | 0.10 | $150.00/hr | $15.00 |
| 8/29/2022 | AR | Review case docket regarding emails with a January 4, 2022 date with specific authors. | 0.50 | $150.00/hr | $75.00 |
| 8/30/2022 | AR | Covert June 23, 2022 document production to PDF, save, and extract pages as separate documents. | 0.40 | $150.00/hr | $60.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/30/2022 | AR | Review email chains to conform which documents are required to be produced to the arbitrator for in camera review. | 0.70 | $150.00/hr | $105.00 |
| 8/31/2022 | AP | Further review of electronic documents; conference with ESI consultant re same. | 4.50 | $550.00/hr | $2,475.00 |
| 8/31/2022 | AR | Draft correspondent to Judge Thornton regarding documents for an in camera review. | 0.50 | $150.00/hr | $75.00 |
| | | **Hours Total** | **133.30** | **Fee Total** | **$48,675.00** |

## Expense Detail

| Date | Description | Quantity | Rate | Total |
|---|---|---|---|---|
| *No expenses have been charged for this invoice.* | | | | |
| | | | **Expenses Total** | **$0.00** |

| | |
|---|---|
| Fees | $48,675.00 |
| Expense | $0.00 |
| **Current Due** | **$48,675.00** |
| Outstanding Balance | $0.00 |
| **Total Due** | **$48,675.00** |

## Timekeeper Summary

| Timekeeper | Hours |
|---|---|
| Alexandra Balinsky | 24.00 |
| Andrea Ramirez | 32.60 |
| Arnold Peter | 59.10 |
| Eyal Farahan | 17.60 |
| **Total Hours** | **133.30** |

# EXHIBIT 7



**PETER LAW GROUP**
270 Coral Circle
El Segundo CA 90245
Email: akingbilling@socal.rr.com
Email: apeter@peterlawgroup.com

Bill to:

**National Association of Television Program Executives**

jpbommel@natpe.org

# INVOICE

To August 31, 2022

| | |
|---|---|
| Invoice Date | September 01, 2022 |
| Invoice Number | 458 |
| Due Date | Due Upon Receipt |

**Business Matters 0158**

Thank for you for placing your trust in Peter Law Group. Attached is our current invoice. If you have any questions or concerns, please contact Arnold Peter directly apeter@peterlawgroup.Com ( 310.432.0500)

For your convenience, you can pay your invoice by credit card using the following link:

https://secure.Lawpay.Com/pages/arnold-p-peter-apc/operating

## Account Summary

| | |
|---|---|
| Previous Balance | $13,940.00 |
| Payments Received | ($13,940.00) |
| Outstanding Balance | $0.00 |
| Current Invoice | $28,175.00 |
| **Total Due** | **$28,175.00** |

## Payment Transactions

| Date | Type | Invoice # | Description | Amount |
|---|---|---|---|---|
| 8/16/2022 | Payment | 423 | | $13,940.00 |

## Fee Detail

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/1/2022 | AP | Review and update Independent Contractor Agreement; email exchange with Mr. Bommel re same; attend to email exchange with Mr. Harbeson re Conference Direct Agreement. | 1.00 | $550.00/hr | $550.00 |
| 8/5/2022 | AP | Draft non-disclosure and confidentiality agreement; conference with Mr. Bommel re same. | 1.50 | $550.00/hr | $825.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/8/2022 | AP | Research and draft communication to Mr. Kaplan re Board meeting notice and quroum requirements. | 3.00 | $550.00/hr | $1,650.00 |
| 8/8/2022 | AP | Revisions to and follow-up with Mr. Weiss re Streaming Event agreement. | 1.00 | $550.00/hr | $550.00 |
| 8/9/2022 | AP | Review and comment on Board Meeting materials.. | 2.50 | $550.00/hr | $1,375.00 |
| 8/10/2022 | AP | Further email exchanges re Board meeting and materials. | 1.00 | $550.00/hr | $550.00 |
| 8/10/2022 | AP | Review and revise LA Streaming event agreement. | 2.00 | $550.00/hr | $1,100.00 |
| 8/11/2022 | AP | Review Mr. Bommel Board script; conference with Mr. Bommel re same; prepare for and participate in Special Board meeting; attend to email exchanges re various issues related to Board meeting. | 4.50 | $550.00/hr | $2,475.00 |
| 8/11/2022 | AP | Attend to conference with Mr. Perth re personal liability on Fountainbleu threatened claims. | 1.00 | $550.00/hr | $550.00 |
| 8/12/2022 | AP | Review template for special events; follow-up and email exchange re same re same. | 1.00 | $550.00/hr | $550.00 |
| 8/12/2022 | AP | Review Board Minute notes; draft minutes; attend to email exchange re same; conference with Mr. Bommel re M&A discussions re same. | 1.50 | $550.00/hr | $825.00 |
| 8/14/2022 | AP | Review various emails and documentation from Mr. Bommel re corporate restructuring and liquidation. | 2.50 | $550.00/hr | $1,375.00 |
| 8/15/2022 | AP | Review Scott Rowe ProMax announcement and agreement; attend to email exchange with Mr. Bommel re same. | 1.50 | $550.00/hr | $825.00 |
| 8/15/2022 | AR | Calendar information regarding NATPE Board meeting | 0.10 | $150.00/hr | $15.00 |
| 8/16/2022 | AR | Calendar NATPE Fall Board meeting date/ time. | 0.10 | $150.00/hr | $15.00 |
| 8/16/2022 | AR | Review email regarding Executive Committee proposed dates and calendar. | 0.20 | $150.00/hr | $30.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/17/2022 | AP | Review Brunico due diligence; review documents re same. | 2.00 | $550.00/hr | $1,100.00 |
| 8/17/2022 | AR | Review email regarding the due diligence requirements from Brunico. | 0.20 | $150.00/hr | $30.00 |
| 8/18/2022 | AB | Proofread NATPE's registration policy. | 2.00 | $250.00/hr | $500.00 |
| 8/18/2022 | AP | Review and revise global registration policies.. | 1.00 | $550.00/hr | $550.00 |
| 8/18/2022 | AR | Review emails regarding vendor agreement chart and calendar deadline. | 0.20 | $150.00/hr | $30.00 |
| 8/18/2022 | EF | Look into all NATPE trademarks/copyrights and compile list of status for AP | 1.10 | $300.00/hr | $330.00 |
| 8/19/2022 | AP | Review and revise Steaming+ and Baha Mar Sales Force template; email exchange re same; extensive email communications re payment systens and contract templates.. | 2.50 | $550.00/hr | $1,375.00 |
| 8/19/2022 | AR | Review email regarding Contract for Beha Mar and save documents. | 0.10 | $150.00/hr | $15.00 |
| 8/19/2022 | EF | Look into all NATPE trademarks/copyrights and compile list of status for AP | 0.40 | $300.00/hr | $120.00 |
| 8/21/2022 | AP | Review and finalize set two of document production. | 3.00 | $550.00/hr | $1,650.00 |
| 8/22/2022 | AB | Drafted "Cease and Desist Ltr" for unauthorized use of NATPES's logo on a website. | 2.50 | $250.00/hr | $625.00 |
| 8/22/2022 | AP | Follow-up with insurance coverage re D&O insurance claim; review plan documents re same. | 1.50 | $550.00/hr | $825.00 |
| 8/22/2022 | AP | Review documents for disclosure; draft correspondence to opposing counsel re discovery; attend to email exchanges re same. | 2.00 | $550.00/hr | $1,100.00 |
| 8/22/2022 | EF | Send AP list of trademarks and copyrights for NATPE; call with AP to discuss | 1.10 | $300.00/hr | $330.00 |
| 8/23/2022 | AP | Draft and revise Brinco due diligence; attend to email exchanges with messers Kaplan and Bommel re same; conferences with Mr. Bommel re same | 4.50 | $550.00/hr | $2,475.00 |

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 8/23/2022 | EF | Send AP list of trademarks and copyrights for NATPE; call with AP to discuss | 0.90 | $300.00/hr | $270.00 |
| 8/24/2022 | AP | Review current trademarks; attend to email exchange with Mr. Bommel re same. | 1.00 | $550.00/hr | $550.00 |
| 8/24/2022 | AP | Draft settlement offer to Fontainebleau; communication with Messrs.. Bommel and Kaplan re same. | 1.50 | $550.00/hr | $825.00 |
| 8/26/2022 | AB | Follow up with Mr. Faragan regarding the review of "Cease and Desist Letter"; converted into Pdf and emailed. | 0.50 | $250.00/hr | $125.00 |
| 8/31/2022 | AP | discussions with Messers Bommel and Kaplan re Board meeting and actions regarding amendment of by-laws; Prepare draft communication for Board acation. | 3.80 | $550.00/hr | $2,090.00 |
| | | **Hours Total** | **56.20** | **Fee Total** | **$28,175.00** |

## Expense Detail

| Date | Description | Quantity | Rate | Total |
|---|---|---|---|---|
| *No expenses have been charged for this invoice.* | | | | |
| | | | **Expenses Total** | **$0.00** |

| | |
|---|---|
| Fees | $28,175.00 |
| Expense | $0.00 |
| **Current Due** | **$28,175.00** |
| Outstanding Balance | $0.00 |
| **Total Due** | **$28,175.00** |

## Timekeeper Summary

| Timekeeper | Hours |
|---|---|
| Alexandra Balinsky | 5.00 |
| Andrea Ramirez | 0.90 |
| Arnold Peter | 46.80 |

# EXHIBIT 8



APRIL 3, 2025
jonathan@marguliesfaithlaw.com

***Via Email & U.S. Mail***

Jean Pierre Bommel
c/o Melissa Davis Lowe, Esq.
Shulman Bastian Friedman Bui & O'Dea LLP
100 Spectrum Center Drive, Suite 600
Irvine, CA 92618
Email: mlowe@shulmanbastian.com

**Re:** **<u>In re National Association of Television Program Executives, Inc.</u>**
**Bankruptcy Case No. 1:22-bk-11181-MB**

Dear Ms. Lowe:

As you are aware, this firm represents Jeremy W. Faith (the "Plan Fiduciary"), Chapter 11 Plan Fiduciary for the bankruptcy estate of National Association of Television Program Executives, Inc. ("NATPE"). This letter is a formal demand for turnover of the following documents and information of NATPE, covering the period from January 1, 2017 through October 11, 2022:

- All of NATPE's corporate governance documents (e.g. board minutes, bylaws, charters, board resolutions, etc.) including, without limitation, NATPE's Second Amended and Restated Bylaws;
- All drafts of the Third Amended and Restated Bylaws, signed on August 10, 2020;
- All drafts of NATPE's Conflict of Interest Policy;
- All of NATPE's payroll records;
- All of NATPE's financial records;
- Access to the NATPE's old cloud-based accounting software;
- All documents withheld from production to Fontainebleau Florida Hotel, LLC ("Fontainebleau") based on privilege;
- Unredacted versions of all redacted documents produced to Fontainebleau;
- All communications (*i.e.*, emails and letters) between Jean Pierre Brommel ("Brommel") and anyone at Peter Law Group;
- All communications (*i.e.*, emails and letters) related to NATPE and involving Arnold Peter or Peter Law Group;
- All communications (*i.e.*, emails and letters) between Peter Law Group and the managers, directors, and officers of NATPE;
- All communication (*i.e.*, emails and letters) related to NATPE's requested increase of liability insurance coverage from Navigators Insurance Company ("Navigators");
- A copy of the complete application for NATPE's requested increase of liability insurance coverage from Navigators;

- All communications (*i.e*., emails and letters) related to Navigators, including, without limitation, communications related to the insurance policy from Navigators covering the period from October 2021 to October 2022;
- All D&O insurance contracts between NATPE and Navigators;
- All communications (*i.e*., letters and emails) and documents relating to or referring to the partnership deal with China International Television Corporation;
- All communications (*i.e*., letters and emails) with China International Television Corporation, the China Media Group, and the Film & Television Programs Exchanging Center, or their agents;
- All communications (*i.e*., letters and emails) and documents relating to or referring to the September 30, 2022 Termination of Employment Letter sent to Bommel;
- All communications (*i.e*., letters and emails) and documents relating to or referring to the “Separation Agreement and Release” between Bommel and NATPE, signed on September 30, 2022;
- All communications (*i.e*., letters and emails) and documents relating to or referring to Third Amended and Restated Bylaws, signed on August 10, 2020;
- All communications (*i.e*., letters and emails) and documents relating to or referring to NATPE’s Conflict of Interest Policy;
- All communications (*i.e*., letters and emails) and documents related to the “Covid Restructuring” or “retention program” in 2020;
- All communications (*i.e*., letters and emails) and documents related to or referring to “Deferred Compensation;”
- Administrative access to email server including login instructions, username, and password; and
- Administrative access to cloud server including login instructions, username, and password.

These documents and information of NATPE constitute property of the bankruptcy estate, and the Plan Fiduciary requests turnover of these documents from Mr. Bommel in his capacity as the former President and Chief Executive Officer of NATPE. The Plan Fiduciary has the authority to demand these documents pursuant to the *Order Confirming Second Amended Subchapter V Chapter 11 Plan, with Modifications [Case Dkt. 251]* [Docket No. 258] (the “Confirmation Order”). The Confirmation Order provides for the approval of the Proposal for Plan Fiduciary, which empowers the Plan Fiduciary with the duty to collect and retain NATPE’s books and records.

Please provide the requested documents and information by April 30, 2025. Thank you for your attention to this matter.

Best regards,

**MARGULIES FAITH LLP**

*Jonathan Serrano*

Jonathan Serrano, Esq.
Counsel for Jeremy W. Faith, Chapter 11 Plan Fiduciary

cc. Jeremy W. Faith, Chapter 11 Plan Fiduciary (via email)

# EXHIBIT 9



Melissa Davis Lowe
Attorney at Law
MLowe@shulmanbastian.com

Please reply to Irvine

James C. Bastian, Jr.
Shane M. Biornstad*
Lynda T. Bui
Bryan W. Cabrera
Max Casal
Franklin J. Contreras, Jr.
Melissa Davis Lowe
Alan J. Friedman**
J. Ronald Ignatuk
Rika M. Kido
Mimi Lin
Ryan D. O'Dea
Holly M. Ratzlaff
Leonard M. Shulman
Brooke S. Thompson

Of Counsel to the Firm
Eric D. Dean
Joseph M. Galosic
Omeed Mahrouyan

*Also admitted to practice in Nevada

**Also admitted to practice in Texas

April 15, 2025

Via E-Mail Only
meghann@marguliesfaithlaw.com
jonathan@marguliesfaithlaw.com

Meghann Triplett, Esq.
Jonathan Serrano, Esq.
Margules Faith LLP
16030 Ventura Blvd., Suite 470
Encino, CA 91436

Re: In re National Association of Television Program Executives, Inc.
Case No. 1:22-bk-11181-MB

Faith v. Bommel, et al.
Adv. Case No. 1:24-ap-01055-MB

Dear Counsel:

As you know, this office is local counsel to Jean Pierre Bommel, one of the defendants named in the adversary proceeding referenced above. We are sending this correspondence in response to your letter dated April 3, 2025, which appears to be a runaround discovery attempt for Mr. Bommel to produce documents without a formal discovery request under the Federal Rules of Bankruptcy Procedure.

While Mr. Bommel is willing to cooperate and produce the documents requested on such an informal basis, he unfortunately is not in possession of many of the documents requested in your April 3, 2025 correspondence. For example, he has no access to any payroll or financial records. He does, however, have copies of certain corporate governance documents and various communications included in your requests. Of particular note, we understand that there were over 5,000 pages of discovery produced in connection with the JAMS arbitration held in February 2024. If you do not yet have access to those documents, we suggest you obtain the file.

We do want to mention that we believe many of the requests are overly broad and burdensome, with no time limit or other restriction deadline attached. We believe the absolute outer limits of what the Trustee would need are records dating four (4) years before the petition date. This is consistent with the maximum statute of limitations on many of the claims asserted in the action against Mr. Bommel. Anything before that

would not be relevant and would go beyond relevant statutes of limitation, and on that basis, we will not endeavor to find responsive documents for any time during the period before four (4) years prior to the petition date.

With all of the above in mind, enclosed herewith you will find a chart detailing each request and where Mr. Bommel believes the responsive documents to be located. The documents he was able to locate have been placed in a Dropbox folder with a link to such Dropbox folder in the body of the email accompanying this letter. By providing these documents, Mr. Bommel is not waiving any objection or other rights, and specifically reserves the right to update this list as additional documents and information are produced by the parties, and as discovery continues in the adversary case.

If you have any questions, please contact me directly.

Very truly yours,

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

***Melissa Davis Lowe***
***[Electronic Signature]***

Melissa Davis Lowe

MDL/AMV

Enclosures

cc: Brian Caplan, Esq. (Via Email)

| | Documents requested - April 4,2025 | Source | Contact | Notes |
|---|---|---|---|---|
| 1 | All of NATPE's corporate governance documents (e.g. board minutes, bylaws, charters, board resolutions, etc.) including, without limitation, NATPE's Second Amended and Restated Bylaws | | Jean Pierre Bommel ("JPB") | Completed In Governance folder |
| 2 | All drafts of the Third Amended and Restated Bylaws, signed on August 10, 2020 | | JPB | Completed In Governance folder |
| 3 | All drafts of NATPE's Conflict of Interest Policy | | JPB | Completed In Governance folder |
| 4 | All of NATPE's payroll records | TriNet | N/A | HR provider no longer under contract. |
| 5 | All of NATPE's financial records | Fiduciary Plan | Jeremy Faith | Access to bill.com (accounts payable and receivable), Axos (bank) and dropbox files was given to Mr. Faith. |
| 6 | Access to the NATPE's old cloud-based accounting software | Accounting501 Sarah Jessup | Jeremy Faith | The Debtor stopped using Sage, so Mr. Faith will need to contact Sage to get the data because the Debtor no longer has access to it. |
| 7 | All documents withheld from production to Fontainebleau Florida Hotel, LLC ("Fontainebleau") based on privilege | Jams discovery | Arnold Peter ("AP") | |
| 8 | Unredacted versions of all redacted documents produced to Fontainebleau | Peter Law LLC | AP | |
| 9 | All communications (i.e., emails and letters) between Jean Pierre Brommel ("Brommel") and anyone at Peter Law Group | Peter Law LLC | AP | |
| 10 | All communications (i.e., emails and letters) related to NATPE and involving Arnold Peter or Peter Law Group | Peter Law LLC | AP | |
| 11 | All communications (i.e., emails and letters) between Peter Law Group and the managers, directors, and officers of NATPE | Peter Law LLC | AP | |
| 12 | All communication (i.e., emails and letters) related to NATPE's requested increase of liability insurance coverage from Navigators Insurance Company ("Navigators") | Peter Law LLC | AP | |
| 13 | A copy of the complete application for NATPE's requested increase of liability insurance coverage from Navigators | Peter Law LLC | AP | Our understanding is that the policy was renewed but coverage was not increased because it was cost-prohibitive at the time. |
| 14 | All communications (i.e., emails and letters) related to Navigators, including, without limitation, communications related to the insurance policy from Navigators covering the period from October 2021 to October 2022 | Peter Law LLC | AP | |
| 15 | All D&O insurance contracts between NATPE and Navigators | Peter Law LLC | AP | |
| 16 | All communications (i.e., letters and emails) and documents relating to or referring to the partnership deal with China International Television Corporation | NATPE emails and sale contracts | No longer available | |

Case 1:24-bk-11051-MB Doc 51-1 Filed 01/22/25 Entered 01/22/25 11:09:12 Desc
Main Document Page 27 of 150

| | | | | |
|---|---|---|---|---|
| 17 | All communications (i.e., letters and emails) with China International Television Corporation, the China Media Group, and the Film & Television Programs Exchanging Center, or their agents | NATPE emails and sale contracts | No longer available | |
| 18 | All communications (i.e., letters and emails) and documents relating to or referring to the September 30, 2022 Termination of Employment Letter sent to Bommel | | JPB | Completed<br>In Employment folder |
| 19 | All communications (i.e., letters and emails) and documents relating to or referring to the “Separation Agreement and Release” between Bommel and NATPE, signed on September 30, 2022 | | JPB | Completed<br>In Employment folder |
| 20 | All communications (i.e., letters and emails) and documents relating to or referring to Third Amended and Restated Bylaws, signed on August 10, 2020 | | JPB | Completed<br>In Governance folder |
| 21 | All communications (i.e., letters and emails) and documents relating to or referring to NATPE’s Conflict of Interest Policy | | JPB | Completed<br>In Governance folder |
| 22 | All communications (i.e., letters and emails) and documents related to the “Covid Restructuring” or “retention program” in 2020 | Peter Law LLC | AP/ JPB | Same as Deferred Compensation<br>See below |
| 23 | All communications (i.e., letters and emails) and documents related to or referring to “Deferred Compensation" | Peter Law LLC | AP/ JPB | Completed<br>In Deferred Compensation folder |
| 24 | Administrative access to email server including login instructions, username, and password | New Owner | Brunico | No access |
| 25 | Administrative access to cloud server including login instructions, username, and password. | New Owner | Brunico | No access |

# EXHIBIT 10

**From:** Melissa Davis Lowe
**To:** Jonathan Serrano; Anne Marie Vernon
**Cc:** Meghann Triplett; Andrew Hennigan; Caplan Brian D.
**Subject:** RE: NATPE (Faith v. Bommel, et al.) POD Request Response Ltr
**Date:** Monday, April 28, 2025 9:23:30 AM
**Attachments:** 04-16-25 Additional Info req J Faith.pdf

Hi Jonathan,

Please see attached responses to your additional document requests.

Of note, Mr. Bommel does not have the laptop or the external hard drive. Moreover, he does not have any additional documents to provide. He has already provided everything he has.

If you have questions, let me know.
Melissa

Melissa Davis Lowe
*Partner*
mlowe@shulmanbastian.com
http://www.shulmanbastian.com

**From:** Jonathan Serrano <jonathan@marguliesfaithlaw.com>
**Sent:** Tuesday, April 15, 2025 3:08 PM
**To:** Anne Marie Vernon <AVernon@shulmanbastian.com>; Melissa Davis Lowe <mlowe@shulmanbastian.com>
**Cc:** Meghann Triplett <meghann@marguliesfaithlaw.com>; Andrew Hennigan <drew@marguliesfaithlaw.com>
**Subject:** RE: NATPE (Faith v. Bommel, et al.) POD Request Response Ltr

Good afternoon,

Thank you for sending. We will review the documents sent via DropBox.

In addition to the documents previously requested in the letter dated March 31, 2025, we have identified the following documents, information, and things that need to be turned over to the Plan Fiduciary:

- ThinkPad laptop purchased by NATPE from Lenovo on August 31, 2022;
- Global admin credentials (i.e., username and password) for NATPE's ThinkPad laptop;
- External hard drive purchased from Amazon on September 28, 2021;
- Global admin credentials (i.e., username and password) for NATPE Microsoft 365;
- Global admin credentials (i.e., username and password) for Sage (cloud server);
- Global admin credentials (i.e., username and password) for Integritek (email server);

- Global admin credentials (i.e., username and password) for DropBox account;
- Name of person responsible for maintaining NATPE's corporate governance documents;
- Location where NATPE's corporate governance documents are stored;
- Payroll records from October 2020 through October 2022 for all employees of NATPE;
- Records of all payments of deferred compensation, vacation, and bonuses by NATPE;
- The name(s) of any and all law firms and/or attorneys with whom NAPTE consulted on bankruptcy and/or insolvency issues;
- The name(s) of any and all law firms and attorneys that represented Mr. Bommel personally and advised him on NATPE matters;
- The name(s) of any and all law firms and/or attorneys that Mr. Bommel is aware of that represented or advised NATPE's board of directors or any member(s) of NATPE's board of directors concerning NATPE from January 2020 to October 2022.

Please upload the documents and information in individual files to your DropBox link or, if more convenient, to the following DropBox folder:
Plan Fiduciary DropBox Link

For the ThinkPad laptop and external hard drive, please mail them to our office using the attached FedEx labels.

Thanks again,
Jonathan

Jonathan Serrano
*Associate*

MARGULIES FAITH LLP
16030 Ventura Blvd., Ste. 470
Encino, California 91436

Tel: 818.705.2777
Fax: 818.705.3777
Email: Jonathan@MarguliesFaithLaw.com

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it.

IRS Circular 230 Disclosure: To ensure compliance with Treasury Department Regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

**From:** Anne Marie Vernon <AVernon@shulmanbastian.com>
**Sent:** Tuesday, April 15, 2025 2:23 PM
**To:** Meghann Triplett <meghann@marguliesfaithlaw.com>; Jonathan Serrano <jonathan@marguliesfaithlaw.com>
**Cc:** Melissa Davis Lowe <mlowe@shulmanbastian.com>
**Subject:** NATPE (Faith v. Bommel, et al.) POD Request Response Ltr

Good afternoon. Attached please find correspondence of today's date from Melisssa Lowe for your review. Please let us know if you have any trouble accessing the Dropbox Link below. Thank you.

Dropbox Link

Anne Marie Vernon
*Legal Assistant*
avernon@shulmanbastian.com
http://www.shulmanbastian.com

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

# EXHIBIT 11

Case 1:24-ap-01015-MB Doc 53-1 Filed 06/26/25 Entered 06/26/25 21:06:43 Desc
Main Document Page 93 of 150

**From:** Melissa Davis Lowe
**To:** Jonathan Serrano; Anne Marie Vernon
**Cc:** Meghann Triplett; Andrew Hennigan; Caplan Brian D.
**Subject:** RE: NATPE (Faith v. Bommel, et al.) POD Request Response Ltr
**Date:** Monday, April 28, 2025 9:23:30 AM
**Attachments:** 04-16-25 Additional Info req J Faith.pdf

---

Hi Jonathan,

Please see attached responses to your additional document requests.

Of note, Mr. Bommel does not have the laptop or the external hard drive. Moreover, he does not have any additional documents to provide. He has already provided everything he has.

If you have questions, let me know.
Melissa

Melissa Davis Lowe
*Partner*
mlowe@shulmanbastian.com
http://www.shulmanbastian.com

---

**From:** Jonathan Serrano <jonathan@marguliesfaithlaw.com>
**Sent:** Tuesday, April 15, 2025 3:08 PM
**To:** Anne Marie Vernon <AVernon@shulmanbastian.com>; Melissa Davis Lowe <mlowe@shulmanbastian.com>
**Cc:** Meghann Triplett <meghann@marguliesfaithlaw.com>; Andrew Hennigan <drew@marguliesfaithlaw.com>
**Subject:** RE: NATPE (Faith v. Bommel, et al.) POD Request Response Ltr

Good afternoon,

Thank you for sending. We will review the documents sent via DropBox.

In addition to the documents previously requested in the letter dated March 31, 2025, we have identified the following documents, information, and things that need to be turned over to the Plan Fiduciary:

- ThinkPad laptop purchased by NATPE from Lenovo on August 31, 2022;
- Global admin credentials (i.e., username and password) for NATPE's ThinkPad laptop;
- External hard drive purchased from Amazon on September 28, 2021;
- Global admin credentials (i.e., username and password) for NATPE Microsoft 365;
- Global admin credentials (i.e., username and password) for Sage (cloud server);
- Global admin credentials (i.e., username and password) for Integritek (email server);

Case 1:24-ap-01151-MB Doc 33-9 Filed 01/26/25 Entered 01/26/25 18:18:13 Desc
Main Document Page 94 of 150

- Global admin credentials (i.e., username and password) for DropBox account;
- Name of person responsible for maintaining NATPE's corporate governance documents;
- Location where NATPE's corporate governance documents are stored;
- Payroll records from October 2020 through October 2022 for all employees of NATPE;
- Records of all payments of deferred compensation, vacation, and bonuses by NATPE;
- The name(s) of any and all law firms and/or attorneys with whom NAPTE consulted on bankruptcy and/or insolvency issues;
- The name(s) of any and all law firms and attorneys that represented Mr. Bommel personally and advised him on NATPE matters;
- The name(s) of any and all law firms and/or attorneys that Mr. Bommel is aware of that represented or advised NATPE's board of directors or any member(s) of NATPE's board of directors concerning NATPE from January 2020 to October 2022.

Please upload the documents and information in individual files to your DropBox link or, if more convenient, to the following DropBox folder:
Plan Fiduciary DropBox Link

For the ThinkPad laptop and external hard drive, please mail them to our office using the attached FedEx labels.

Thanks again,
Jonathan

Jonathan Serrano
*Associate*

MARGULIES FAITH LLP
16030 Ventura Blvd., Ste. 470
Encino, California 91436

Tel: 818.705.2777
Fax: 818.705.3777
Email: Jonathan@MarguliesFaithLaw.com

Privileged/Confidential Information may be contained in this message. If you are not the addressee indicated in this message (or responsible for delivery of the message to such person), you may not copy or deliver this message to anyone. In such case, you should destroy this message and kindly notify the sender by reply email. Please advise immediately if you or your employer does not consent to Internet email for messages of this kind. Opinions, conclusions and other information in this message that do not relate to the official business of my firm shall be understood as neither given nor endorsed by it.

IRS Circular 230 Disclosure: To ensure compliance with Treasury Department Regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this communication was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matter addressed herein.

---

**From:** Anne Marie Vernon <AVernon@shulmanbastian.com>
**Sent:** Tuesday, April 15, 2025 2:23 PM
**To:** Meghann Triplett <meghann@marguliesfaithlaw.com>; Jonathan Serrano <jonathan@marguliesfaithlaw.com>
**Cc:** Melissa Davis Lowe <mlowe@shulmanbastian.com>
**Subject:** NATPE (Faith v. Bommel, et al.) POD Request Response Ltr

Good afternoon. Attached please find correspondence of today's date from Melisssa Lowe for your review. Please let us know if you have any trouble accessing the Dropbox Link below. Thank you.

Dropbox Link

Anne Marie Vernon
*Legal Assistant*
avernon@shulmanbastian.com
http://www.shulmanbastian.com

**Orange County -** 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618, Phone: 949-340-3400 Fax: 949-340-3000
**Inland Empire –** 3550 Vine Street, Suite 210, Riverside, CA 92507, Phone: 951-275-9300 Fax: 951-275-9303

**Confidentiality Notice:** The information contained in this electronic e-mail and any accompanying attachment(s) is intended only for the use of the intended recipient and may be confidential and/or privileged. If any reader of this communication is not the intended recipient, unauthorized use, disclosure or copying is strictly prohibited, and may be unlawful. If you have received this communication in error, please immediately notify the sender by return e-mail, and delete the original message and all copies from your system. Thank you.

| Additional request for information_4-15-25 | | |
|---|---|---|
| 26 | ThinkPad laptop purchased by NATPE from Lenovo on August 31, 2022; | Sales laptop but not sure where located |
| 27 | Global admin credentials (i.e., username and password) for NATPE's ThinkPad laptop; | Do not have this information |
| 28 | External hard drive purchased from Amazon on September 28, 2021; | Do not know where this is located - We used external drives for production of our conferences |
| 29 | Global admin credentials (i.e., username and password) for NATPE Microsoft 365; | Already answered |
| 30 | Global admin credentials (i.e., username and password) for Sage (cloud server); | Already answered |
| 31 | Global admin credentials (i.e., username and password) for Integritek (email server); | Email server was transferred to new owner |
| 32 | Global admin credentials (i.e., username and password) for DropBox account; | Do not recall - Dropbox was used primarily for conference production purposes |
| 33 | Name of person responsible for maintaining NATPE's corporate governance documents; | John Dobkin, CFO until his termination. Then Mr. Bommel. We previously provided all governance docs in Mr. Bommel's possession. |
| 34 | Location where NATPE's corporate governance documents are stored; | Sharepoint server that has been transferred to the new owner |
| 35 | Payroll records from October 2020 through October 2022 for all employees of NATPE; | Already answered |
| 36 | Records of all payments of deferred compensation, vacation, and bonuses by NATPE; | Already answerd |
| 37 | The name(s) of any and all law firms and/or attorneys with whom NAPTE consulted on bankruptcy and/or insolvency issues; | Leslie Cohen - Leslie Cohen Law PC |
| 38 | The name(s) of any and all law firms and attorneys that represented Mr. Bommel personally and advised him on NATPE matters; | Jeffrey Liebenson - Liebenson Law for scope limited to last contract negotiations. |
| 39 | The name(s) of any and all law firms and/or attorneys that Mr. Bommel is aware of that represented or advised NATPE's board of directors or any member(s) of NATPE's board of directors concerning NATPE from January 2020 to October 2022. | Barbara Dunn. Barnes and Thornburg<br>Arnold Peter, Arnold Peter Law Group<br>Leslie Cohen, Leslie Cohen Law PC |

# EXHIBIT 12

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 9/27/2022 | AP | Various matters related to bankruptcy filing including conferences and email exchanges with Mr. Bommel; review financial documents and conferences and email exchanges with team consisting of Mr. Bommel, Ms. Jessup, Mr. Harbeson, and retained bankruptcy counsel. | 6.00 | $550.00/hr | $3,300.00 |
| 9/28/2022 | AP | Various matters related to bankruptcy filing including conferences and email exchanges with Mr. Bommel; review financial documents and conferences and email exchanges with team consisting of Mr. Bommel, Ms. Jessup, Mr. Harbeson, and retained bankruptcy counsel. | 8.50 | $550.00/hr | $4,675.00 |
| | | **Hours Total** | **63.50** | **Fee Total** | **$34,925.00** |

## Expense Detail

| Date | | Description | Quantity | Rate | Total |
|---|---|---|---|---|---|
| 8/25/2022 | AP | Fees to Bankruptcy Counsel for initial consultation (not ultimately retained). | 1 | $6,084.00 | $6,084.00 |
| | | | | **Expenses Total** | **$6,084.00** |

| | |
|---|---|
| Fees | $34,925.00 |
| Expense | $6,084.00 |
| **Current Due** | **$41,009.00** |
| Outstanding Balance | $0.00 |
| **Total Due** | **$41,009.00** |

## Timekeeper Summary

| Timekeeper | Hours |
|---|---|
| Arnold Peter | 63.50 |
| **Total Hours** | **63.50** |

# EXHIBIT 13

NORTON ROSE FULBRIGHT

Norton Rose Fulbright US LLP
555 South Flower Street
Forty-First Floor
Los Angeles, California 90071
United States of America

Direct line +1 213 892 9346
rebecca.winthrop@nortonrosefulbright.com

Tel +1 213 892 9200

**Via Email**

August 14, 2022

National Association of Television Programming Executives
c/o Arnold P. Peter, Esq.
Peter Law Group
270 Coral Circle
El Segundo, CA 90245

Re: Financial Restructuring Options

Dear Arnold:

This letter confirms that Norton Rose Fulbright US LLP will represent you and the Peter Law Group in connection with your work as legal counsel to the National Association of Television Programming Executives (**NATPE**).

**Terms of engagement**

This Letter of Engagement and the attached Norton Rose Fulbright Standard Terms of Engagement (**Standard Terms**) set out the terms that govern the relationship between you and the Peter Law Group (**you**), and Norton Rose Fulbright US LLP (**we** or **us** or **firm**), in connection with the Matter as defined below.

Norton Rose Fulbright US LLP has made no promises or guarantees to you about the outcome of the representation or the Matter, and nothing in these terms of engagement shall be construed as such a promise or guarantee. Any expressions on our part concerning the outcome of the Matter, or any other legal matters, are based on our professional judgment and are not guarantees. Such expressions, even when described as opinions, are necessarily limited by our knowledge of the facts and are based on our views of the state of the law at the time they are expressed.

We recognize our obligation to preserve the confidentiality of attorney-client communications as well as client confidences, as required by the governing rules of professional responsibility. If the Matter involves transactions, litigation or administrative proceedings or like proceedings in which we appear as counsel of record for you in publicly available records, we reserve the right to inform others of the fact of our representation of you in the Matter and (if likewise reflected of record in publicly available records) the results obtained, unless you specifically direct otherwise.

**Client**

We have been retained by you. Unless we agree otherwise in writing, and subject to satisfactory conflict clearances, we are not representing any other related entities or individuals, such as

Norton Rose Fulbright US LLP, Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP and Norton Rose Fulbright South Africa Inc are separate legal entities and all of them are members of Norton Rose Fulbright Verein, a Swiss verein. Norton Rose Fulbright Verein helps coordinate the activities of the members but does not itself provide legal services to clients. Details of each entity, with certain regulatory information, are available at nortonrosefulbright.com.

NATPE's shareholders, directors and officers, employees, partners, members, or any of NATPE's parent, affiliated, or subsidiary corporations or other entities.

It is further agreed that the attorney-client relationship terminates upon our completion of the services for which we have been retained in connection with the Matter.

**Scope of engagement**

We confirm that we have been retained by you to assist you in your representation of NATPE in connection with financial restructuring alternatives that may be available to NATPE (**Matter**). Except as expressly stated otherwise, we will advise and act at all times in accordance with and in respect of federal and/or appropriate state law only and are not responsible for advising you as to the effect or enforceability of any documents or matters which may be subject to or governed by the laws of any other jurisdiction.

Our representation is limited as described above. To the extent you require additional legal services, we will need to execute a separate engagement letter after determining that we are able to undertake the additional representation.

**Personnel**

I will be the primary person working on the Matter, and you are welcome to call, write, or email me whenever you have any questions about the Representation. However, other firm personnel, including lawyers and paralegals, may participate in the engagement as required.

**Fees and other charges**

Unless otherwise agreed, our fees will be based on the time spent on the Matter at our hourly rates of:

| Partners | $655 to $1680 |
|---|---|
| Senior Associates | $550 to $1010 |
| Senior Counsel | $525 to $1345 |
| Counsel | $265 to $1010 |
| Associates | $450 to $985 |
| Patent Agents | $410 to $655 |
| Of Counsel | $730 to $1375 |
| Paralegals | $150 to $525 |
| Practice Support | $85 to $435 |

Specifically, my time is billed at $780 per hour. Periods of less than 1 hour will be charged in increments of tenths of one hour. Our billing rates are generally revised annually, effective November 1.

In addition to payment of fees, as set out in the Standard Terms, you will be required to pay or reimburse to us disbursements and service charges, including the costs of counsel, experts, or others we may retain on your behalf. The basis for charging disbursements and service charges

Case 1:24-ap-01085-MB Doc 53-1 Filed 06/26/25 Entered 06/26/25 18:06:13 Desc
Main Document Page 112 of 187

is set out in the attached schedule of disbursements and service charges. In situations where we can readily determine the exact amount of expenses for products and services provided by third parties to be charged to you or NATPE's account, our invoices will reflect the cost to us of the products and services. In many situations, however, the precise total cost of providing a product or service is difficult to establish, in which case we will use our professional judgment on the charges to be made for such product or service, which charges may vary from or exceed our direct cost of such product or service.

**Invoicing and reporting**

We will bill you at monthly intervals.

You will pay our bills within 30 days of receipt.

**Conflicts of interest**

Before accepting the Engagement, we have undertaken reasonable and customary efforts to determine whether there are any potential conflicts of interest that would prevent us from representing you or NATPE in the Matter. We reviewed that issue in accordance with the rules of professional responsibility adopted in California. You agree to the applicability of those rules in regard to all matters relating to this engagement and that, in future matters involving you or NATPE, potential conflicts of interest will be evaluated under the local rules of professional responsibility applicable to the Norton Rose Fulbright office handling that future matter. Based on the information available to us, we are not aware of any conflicts.

In addition to our representation of other companies and individuals, we also regularly represent lawyers and law firms. As a result, opposing counsel in the Matter may be a lawyer or law firm that we may represent now or in the future. Likewise, opposing counsel in the Matter may represent our firm now or in the future. Further, we have professional and personal relationships with many other attorneys, often because of our participation in bar associations and other professional organizations. It is our professional judgment that such relationships with other attorneys do not adversely affect our ability to represent any client. The acceptance of these terms of engagement represents an unqualified consent to any such relationships between our firm and other lawyers or law firms, even counsel who is representing a party that is adverse to you or NATPE in the Matter that is the subject of this engagement or in some other matter.

During the course of the firm's representation of you, we may need to analyze or address matters relating to our professional duties or responsibilities, and to consult with lawyers of the firm who have been identified internally to serve as the firm's in-house counsel about such matters. To the extent that any conflict of interest might be deemed to exist as between the firm and you or NATPE because of these consultations, you hereby waive any such conflict, consent to such consultations, and agree that we have no obligation to disclose information relating to such consultations to you. You also agree that these consultations are protected from disclosure by the firm's attorney-client privilege and, as appropriate, the firm's work product protection and that you will not seek to discover or inquire into them. Nothing in the foregoing shall otherwise diminish or affect our obligation to keep you informed of material developments in your representation.

**Applicable law**

The laws of California (exclusive of its conflict of laws principles) govern these terms of engagement, and the parties submit to the exclusive jurisdiction of the courts sitting in the City and County of Los Angeles, California in any matter arising from or relating to this engagement or anything contained in this engagement letter including the attached Standard Terms, and consent to venue in such court and waive any objection of inconvenient forum as to such court. You agree that any legal process relating to this engagement may be served upon you by us by first-class mail addressed to the mailing address set forth on the first page of this letter and/or by e-mail to the e-mail address set forth on the first page of this letter, or to such additional or alternative addresses as you may provide for such purposes. Each professional is subject to the ethical and professional conduct rules applicable to the jurisdiction in which that lawyer is authorized to practice.

**Right to Arbitration**

We advise you that, pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of the State of New York, you and NATPE have the right to resolve through arbitration a possible future dispute with us concerning our fees in connection with our representation of you if the amount in dispute is at least $1,000 but not more than $50,000. This notice is not an agreement by us to arbitrate all disputes that may arise between us. Our obligation to arbitrate exists only to the extent required by said Part 137.

**Termination**

At any time, you may, with or without cause, terminate the representation by notifying us of you or NATPE's intention to do so.

We are subject to the codes or rules of professional responsibility for the jurisdictions in which we practice. There are several types of conduct or circumstances that could result in our withdrawing from representing a client, including, for example, the following: nonpayment of fees or charges; misrepresentation of or failure to disclose material facts; fraudulent or criminal conduct; action contrary to our advice; and conflict of interest with another client. The right of Norton Rose Fulbright US LLP to withdraw in such circumstances is in addition to any rights created by statute or recognized by the governing rules of professional conduct. Further, a failure by you to meet any obligations under these terms of engagement shall entitle us to terminate the representation. We try to identify in advance and discuss with our clients any situation that may lead to our withdrawal.

Termination of the representation will not affect your and NATPE's obligation to pay for legal services rendered and expenses and charges incurred before termination, as well as additional services and charges incurred in connection with an orderly transition of the Matter. Further, in the event of termination of the representation, you and NATPE will take all steps necessary to release Norton Rose Fulbright US LLP of any further obligations in the representation in the Matter, including, without limitation, the execution of any documents necessary to effectuate our withdrawal from the representation in the Matter.

After termination or completion of the representation, changes may occur in the applicable laws or regulations that could affect your or NATPE's future rights and liabilities in regard to the Matter. Unless we are actually engaged after termination or completion of the representation to provide additional advice on such issues, the firm has no continuing obligation to give advice with respect to any future legal developments that may pertain to the Matter.

**California Consumer Privacy Notice**

Please review the attached California Consumer Privacy Notice regarding our personal data collection, use, and disclosure practices.]

**Confidential Firm Information**

You recognize(s) that, in forming the attorney-client relationship or otherwise, we may provide or may have provided you or NATPE with information marked "Confidential." You agree(s) to maintain the confidential nature of that information and not to disclose it to third parties.

**Conclusion and acceptance**

You can accept this agreement by signing and returning to us the enclosed copy of this letter ,together with the retainer, or by continuing to retain us, although we may not continue the representation if you do not deposit the required retainer.

This letter and the attached Standard Terms constitute the entire terms of the engagement of Norton Rose Fulbright US LLP in connection with the Matter. These written terms of engagement are not subject to any oral agreements or understandings, and they can be modified only by further written agreement signed both by you and Norton Rose Fulbright US LLP. Unless expressly stated in these terms of engagement, no obligation or undertaking shall be implied on the part of either you or Norton Rose Fulbright US LLP.

Very truly yours,

*/s/ Rebecca J. Winthrop*

Rebecca J. Winthrop

RJW/emr

Motion to Amend Complaint (part 2) Page 115 of 187

Arnold P. Peter
August 14, 2022
Page 6

NORTON ROSE FULBRIGHT

You acknowledge and accept the terms of engagement set out in this letter and its attachments.

[signature] | Managing Partner
Signed | Title

ARNOLD P. PETER | Peter Law Group
Name | Company

Date: 8/22/22

118921987.3

EXHIBIT 13 Page 87

## NORTON ROSE FULBRIGHT
## STANDARD TERMS OF ENGAGEMENT

Norton Rose Fulbright Verein (the **Verein**) is a Swiss verein which does not itself engage in the practice of law or other business. The member firms in the Verein are Norton Rose Fulbright LLP, Norton Rose Fulbright Australia, Norton Rose Fulbright Canada LLP, Norton Rose Fulbright South Africa Inc and Norton Rose Fulbright US LLP (the **Members** or, individually, a **Member**), who, with their subsidiaries or associated entities, engage in a coordinated international legal practice, even though they are separate law firms each of which, absent specific contractual agreement with a client on an individual matter, is solely responsible for its own work and not for the work of any other of them.

Each of the Members is committed to providing its clients with the highest quality legal services and to building a lasting relationship with its clients as a trusted adviser.

To that end, these Standard Terms of Engagement will apply to all engagements between a Member or its subsidiary or associated entity and a client unless otherwise agreed in writing by the client and an authorized representative of such Member, subsidiary or associated entity. These Standard Terms of Engagement are supplemented by additional standard provisions and/or a letter or contract of engagement relevant to the jurisdiction of the Contracting Party (as below defined).

### 1 Defined Terms

1.1 The following documents will constitute the entire agreement relating to the engagement of a Contracting Party by a client: (i) any letter or contract of engagement, (ii) any additional standard provisions referred to above, (iii) these Standard Terms, (iv) any other terms and conditions agreed between the Contracting Party and the client, and (v) any amendments or supplements to any of the foregoing agreed from time to time. In the event of any conflict between the terms of the foregoing, the documents shall be construed in the order of priority in which they are referred to above, but subject to any amendments as referred to in (v).

1.2 In the above-mentioned documents:

(a) Any individual entity that is a Member or subsidiary or associated entity of a Member is referred to as a Norton Rose Fulbright Entity. The Norton Rose Fulbright Entity with which a client engages at any time is referred to as the Contracting Party.

(b) We, our and us refer to the Contracting Party together with any other Norton Rose Fulbright Entity to which part or all of your instructions have been referred pursuant to paragraph 2.1(h) of these Terms; you and your refer to the client (jointly, if more than one, and not individually) with which the Contracting Party engages. Unless otherwise specifically agreed, you and your do not refer to and no attorney/client or solicitor/client relationship will exist as to persons or entities related to the client such as parent companies, subsidiaries, affiliates, employees, officers, directors, shareholders, partners, members, commonly owned corporations or partnerships, or other such persons, entities or affiliates.

### 2 Your relationship with us

2.1 When you instruct us on an individual matter, we will write to you to set out:

Case 1:24-ap-01155-MB Doc 53-1 Filed 06/26/25 Entered 06/26/25 21:09:43 Desc Main Document Page 117 of 187

(a) which Norton Rose Fulbright Entity is the Contracting Party;

(b) the scope of the work we have agreed to undertake and any assumptions on which it is based;

(c) who will be the responsible partner or director and other key team members whom we will try not to replace, although unforeseen circumstances may require that;

(d) the fees and invoicing arrangements;

(e) any applicable limitation of liability; and

(f) the governing law applicable to the contractual relationship with you and the choice of jurisdiction for resolving any issues.

(g) Your contractual relationship for individual matters is between you and the Contracting Party, not any other Norton Rose Fulbright Entity nor any individual. You understand that we do not make any promises or warranties as to the outcome of the representation.

(h) If, with your agreement, the Contracting Party has referred all or part of your instructions on any individual matter to one or more other Norton Rose Fulbright Entities, legal services provided by other Norton Rose Fulbright Entities will be governed by the terms of our engagement, which will apply as between you and such Norton Rose Fulbright Entity or Entities, to the fullest extent permitted by the laws and professional regulations applicable in the jurisdictions in which such other Norton Rose Fulbright Entity or Entities operate as regards such other Norton Rose Fulbright Entity's or Entities' representation of you, as well as by, if any are issued, additional standard provisions and any letter or contract of engagement relevant to the other Norton Rose Fulbright Entity or Entities.

## 3 Our fees

3.1 Our bills are payable on receipt and in the currency in which they are submitted. If you ask us to provide bills using an e-billing solution you understand that: (i) we will send your information to our and your third party supplier(s) to enable us to comply with your request and the transfer is at your risk; (ii) any costs arising out of use of your third party supplier shall be borne by you; and (iii) our compliance with your request shall not reduce the fee otherwise chargeable by us.

3.2 If you are required by law to deduct any amount when paying a bill, you will pay to us an additional amount so as to ensure that we receive a net sum equal to the amount of the bill.

3.3 We need to approve in advance any proposal for any part of one of our bills to be paid by a third party. Notwithstanding our approval, you agree that you will remain responsible for paying the whole bill and any interest accrued on it.

3.4 Unless otherwise agreed, any other Norton Rose Fulbright Entity or Entities to whom the Contracting Party has referred instructions under paragraph 2.1(h) may provide statements of their fees and charges to the Contracting Party, who will include such fees and charges in its statements to you, which you will be obligated to pay in order that it can remit payment to such other Norton Rose Fulbright Entity or Entities.

3.5 If a bill remains unpaid 30 days after delivery:

(a) you agree that we may be entitled to charge interest, if any, on it at such rate and under such arrangements allowable under the laws and professional regulations applicable to us or as may be provided for in applicable additional standard provisions or an agreement between us and you, and

(b) on giving written notice to you, we may cease work on the matter to which the bill relates and any of your other matters. You agree that we are not responsible for any loss resulting from such inactivity. If the matter is litigious, we may also remove ourselves from the Court or tribunal record.

3.6 You agree that we may exercise a lien over your files and documents until all bills due to us from you have been paid in full, subject to the laws and professional regulations applicable to us.

3.7 If we are required by any governmental or regulatory body, or by a service provider appointed by you, to submit one of our bills to audit, to produce documents or provide information on any individual matter on which you have instructed us, we shall be entitled to bill you for the work involved (and any disbursements incurred) at the rates agreed for the relevant matter. If legal privilege attaches to any such documents, you will either waive privilege or instruct us to review them in your interests.

3.8 We advise and you acknowledge that the Members of the Verein have an arrangement between them that where a matter is referred by one Member to another, the referring Member and one or more of its partners or directors may be financially rewarded for having so referred the matter. This is an entirely internal arrangement as between the Members of the Verein, and their respective partners and directors, and it does not require you to pay any amount in addition to the fees, disbursements and other charges which apply under the agreed terms of your engagement of us and, if applicable, any other Norton Rose Fulbright Entity.

**4 Disbursements and other charges**

4.1 We may consider it to be in your interests to instruct counsel or engage correspondent lawyers, experts or others on your behalf and at your expense. We will consult you before doing so if such instructions or engagements will result in significant fees becoming payable.

4.2 We may also charge for photocopying, telephone calls, travel, searches, court fees, hosting on-line data or deal rooms and for other services at our or their standard rates from time to time and for other expenses. These charges will be included in our bills and will not include any mark-up of expenses for which the precise cost can be readily determined but may vary from or exceed our or their direct cost for services for which the precise cost cannot be readily determined.

**5 Money held on account for you**

5.1 We will deposit any money we hold on your behalf with a regulated financial institution and manage it in accordance with the laws and professional regulations applicable to us. You agree that we are not responsible for any loss of funds so deposited and managed.

5.2 If you deposit money with us on account of our fees, the principal and interest accrued, if any, will be applied to your final bill, rendered when we complete your instructions. Unless you and we have agreed otherwise, we may also apply any part of the money in settlement of any outstanding interim bills we submit to you.

**6 Communicating with us**

6.1 When you seek and receive legal advice from us on your rights and obligations, legal advice or attorney-client privilege will attach to our communications related to that advice. If we act for you in contemplated or actual legal proceedings, litigation or attorney-client privilege will attach to our communications related to those proceedings.

6.2 You agree that we may communicate with you using electronic means, knowing that certain risks (including, for example, interception, unauthorized access and risk of viruses) are associated with such means.

**7 Confidentiality, conflict of interests, and our relationships with other clients**

7.1 We will keep all information obtained from you, which is not in the public domain, confidential, and will only otherwise disclose it with your authority or if required to do so by the laws and professional regulations applicable to us or if permitted under paragraph 9.3. Nevertheless, you agree that we may disclose any relevant information in order to protect and/or defend ourselves in any actual or threatened legal, civil or regulatory proceeding and may also disclose any relevant information in confidence to our insurers, insurance brokers, auditors, bankers and other advisers if and to the extent such disclosure may occur without waiving or losing any applicable legal privilege.

7.2 You will provide us, and will instruct your other advisers and any co-venturer or other co-participants to provide us, on any matter on which we are instructed, with all relevant information and documents, all of which will have been properly obtained and on which we may rely without verification. You agree that, unless you instruct us otherwise, we may disclose any relevant information to your other professional advisers.

7.3 Norton Rose Fulbright is a large coordinated international legal practice with multiple offices around the world. Because of the size, geographic scope, breadth and diversity of the practice, it is inevitable that current and future clients of ours will come into contact with you, and it is important that we agree with you on certain matters in relation to conflicts of interests to preserve our ability to represent both you and other clients. You agree that we may represent current or future clients (including any parties adverse to you in this Matter) in any other matter (including in litigation, arbitration, or other dispute resolution proceedings) that is not substantially related to your Matter, even if their interests are directly adverse to you or your interests in that other matter. We agree, however, that we will not represent another client in a matter if we have obtained non-public proprietary or other confidential information from you that could be used by that other client to your material disadvantage in that matter. You agree and accept that you have access to independent advice on the effect of this paragraph 7.3 and that your signature by way of acceptance of the provisions of the engagement letter to which these Terms apply is confirmation that you understand the scope and application of this paragraph and that you have no questions or concerns in that respect.

7.4 You agree that we or any other Norton Rose Fulbright Entity may act for other clients in transactions or disputes in which you or any affiliated entity of yours has an interest

provided that we or such other Norton Rose Fulbright Entity do not thereby breach our or their duty of confidentiality to you.

7.5 You agree that we are under no duty to disclose to you or use on your behalf any information in respect of which we or any other Norton Rose Fulbright Entity owe a duty of confidentiality to another client or any other person.

7.6 You agree that we may disclose our role as legal advisers in any matter on which we are instructed following its completion, for the purposes of publicity, unless you instruct us otherwise. You also agree that, unless you instruct us otherwise, we may publicize the fact that we have a relationship with you.

## 8 Complaints

8.1 Any concerns or complaint about our work should be directed initially to the partner/director responsible for carrying out your instructions or, if you prefer, to the relationship partner/director. We maintain internal procedures that can be employed should a concern require escalation beyond the responsible partner/ director. The laws and professional regulations applicable to us may also provide formal complaint procedures.

8.2 In particular, you should raise any queries regarding any of our bills with the partner or director responsible for the matter as soon as possible. If any part of one of our bills is queried by you or the relevant payer, you agree to immediately pay, or procure payment of, those parts not subject to query.

## 9 Data protection, exchange of information and storage of documents

9.1 We act as a data controller in the provision of our legal services. We will process personal data provided to us by you or your employees or agents in relation to any instruction in accordance with data protection standards required by applicable law and will implement appropriate technical and organizational security measures to protect against unauthorized or unlawful processing of that personal data and against accidental loss of, or damage to, that personal data. Please see our Privacy notice for further information on our processing of personal data: http://www.nortonrosefulbright.com/privacy-notice/

9.2 Each party (you and we) will assist the other party in complying with its respective obligations under applicable data protection law and will ensure that the provision of personal data to the other party is fair and lawful. You agree that you will make our Privacy notice available to your employees or other individuals whose personal data you share with us where this provision of information is required by applicable data protection law. We in turn agree that we will promptly notify you either: (i) upon receipt of a request or complaint from a regulatory authority or an individual exercising a data subject right; or (ii) in the event of loss, disclosure or unauthorized or unlawful processing of personal data that you have provided to us or that we have obtained on your behalf. We will cooperate with you and provide all reasonable assistance as may be required in either case.

9.3 In the course of providing our services to you, personal data (if any) with respect to persons in the European Economic Area (EEA) may be accessible to and used by other Norton Rose Fulbright Entities and their contractors and/or agents, including those located outside the EEA where data protection laws may not be as comprehensive as in the EEA, but as to such personal data we will ensure compliance with the data protection standards

of the EU General Data Protection Regulation 2016 or higher standards under other laws applicable to such personal data.

9.4 We will also share your contact details, and those of your staff with whom we have contact, with other Norton Rose Fulbright Entities in order to provide you with information relevant to your business, and to ensure your continuous access to publications, events and news in areas of interest to you. Where your employees supply their contact details to us, we will only use that personal data in accordance with our Privacy notice referenced above or as otherwise consented to by them.

9.5 We will not exchange information that will result in waiver or loss of any client privilege with other Norton Rose Fulbright Entities. Otherwise, you agree that the Contracting Party may exchange your information (including personal data) with other Norton Rose Fulbright Entities, including for the purposes of conflict checking, compliance, financial planning, billing, business development and matter management. Arrangements are in place among all Norton Rose Fulbright Entities to protect the confidentiality of the information exchanged.

9.6 We may outsource certain functions associated with servicing clients to a service center dedicated to Norton Rose Fulbright located outside of the EEA or to other third party providers. For example, we may outsource information and document management, office support, technology and IT services, word processing, photocopying, and translation services.

9.7 Some of your data may be stored using cloud technology managed by a third party service provider. We have agreements in place with the third party service providers referred to in paragraphs 9.6 and 9.7 where applicable and also employ technical and organizational measures to protect the confidentiality and security of any information shared with them.

9.8 We do not undertake to store or retain your files (whether paper or electronic) for any particular period of time, but will do so for at least the minimum number of years required by applicable laws and professional regulations or local business custom. Files may be destroyed at any time after the expiry of such period, without notice, except those files you ask be delivered to you.

**10 Copyright and intellectual property**

10.1 We retain all copyright and other intellectual property rights in all material developed, designed and created by us in the course of a matter. You may only use and copy material created by us for you, or which we have developed independently of our work for you and used in the course of your matter, in accordance with our advice or specific license terms. All material must be kept confidential by you unless we agree otherwise.

10.2 We may use all material created and/or modified by us in the course of any matter for legal training, forms, service development (including in the training of artificial intelligence technologies in which event the materials may be hosted on a third party system) and research purposes, without reference to you.

**11 Our compliance with certain laws and regulations**

11.1 We may require you to provide identifying documents and information concerning yourself and individuals and/or entities associated with you in order to comply with anti-money laundering laws and regulations, and to keep those documents and information up to date.

We may be unable to carry out your instructions if we are unable to verify your identity or, in some instances, the identities of your directors, shareholders and eventual beneficial owners. We shall only process such identifying documents and information for the purposes of preventing money laundering or terrorist financing and to fulfil any other legal and regulatory obligation and shall retain it for the period necessary in accordance with permitted or required retention and limitation periods and in accordance with our data protection obligations as set out at paragraph 9 above.

11.2      We may be required by law or regulation to report to a governmental or regulatory authority our knowledge and/or suspicion that certain criminal offences have been committed, regardless of whether such an offence has been committed by a client of ours or by a third party. We may not be able to discuss such reports with you because of restrictions imposed by those laws and regulations, and we may have to cease acting for you in those circumstances. You agree that we are not responsible for any adverse consequences you may suffer as a result of our compliance with such laws and regulations.

## 12      Force majeure

Neither you nor we will be responsible for failure to perform our respective obligations concerning your instructions (save for your responsibility to pay our bills in full) if the failures are due to causes outside, respectively, your or our control.

## 13      Amendments

From time to time, we may need to amend these terms of engagement. If this occurs, we will notify you of the changes by means of a notice in the Legal Notices section of our website but they will not affect any matter on which we are then currently instructed.

## 14      Limitations

If the validity or enforceability of any of these terms of engagement is in any way limited by the laws and professional regulations applicable to us, those laws and professional regulations will take precedence over these terms of engagement but they will be valid and enforceable to the fullest extent permitted by such laws and professional regulations, and such limitation shall not affect the validity or enforceability of any other term.

## 15      Integrity and ethics

Our policy is to act at all times in accordance with the highest professional, ethical and business standards, and we expect you to act in like manner in all your dealings with us and your business counter-parties. We do not countenance bribery or corruption in any form and you agree (i) not to expect or request any conduct from us that might bring our name into disrepute or compromise our integrity, (ii) that you and your employees and agents will refrain from any practices involving bribery or any other corrupt activities, and (iii) that you have taken or will take internal steps or procedures designed to ensure that the risk of corruption and bribery during the course of our relationship is eliminated.

## 16      Termination

16.1      Either you or we may terminate our engagement at any time by giving reasonable prior notice in writing, subject, in our case, to any applicable laws or regulations. We will only stop acting for you if we believe we have a good reason to do so, including in the

Case 1:24-bk-11051-MB Doc 33-9 Filed 06/22/25 Entered 06/22/25 18:19:12 Desc
Main Document Page 123 of 187

circumstances contemplated by paragraph 3.5 (b), but we retain sole discretion regarding any such decision.

16.2 If our engagement is terminated for any reason, you agree to pay in full our bills representing fees, costs, disbursements and other charges up to the time of the engagement's termination.

16.3 A solicitor/client or attorney/client relationship exists between you and us only if, at the relevant point in time, we are working under instructions from you; we shall have no duty to provide you advice at any other time concerning changes in laws, rules or regulations that might affect your rights. Further, if we are not under instructions from you at a given point in time, you agree that, unless prohibited by applicable laws or regulations, we are entitled to accept at that time other instructions to act in respect of the subject matter of your previous instructions although we will not disclose to, or use to the benefit of, another client any information or documents in respect of which we owe you a duty of confidentiality.

We and other Norton Rose Fulbright Entities may send you general information on legal developments without charge, or may include you in general mailings, after our or their engagement with you has been terminated. This will not change the fact that our or their engagement has been terminated.

# California Consumer Privacy Notice

Norton Rose Fulbright US LLP ("NRFUS") takes data privacy seriously. We recognize and value the trust that individuals place in us when providing us with personal data and we are committed to safeguarding the privacy and security of personal data we may collect from visitors to our websites and/or the clients to whom we provide legal and other services. Because most of our clients are corporations and other organizations, the California Consumer Privacy Act typically will not apply, but our general Privacy Policy https://www.nortonrosefulbright.com/en-us/global-statements/privacy-notice will apply. In those rare instances where the California Consumer Privacy Act does apply to you, this California Consumer Privacy Notice will apply.

This Privacy notice aims to help you understand our personal data collection, usage and disclosure practices by explaining:

1. What personal data we collect about you
2. How we obtain the personal data about you
3. How we use your personal data
4. Who we share your personal data with
5. How we protect your personal data
6. What rights you have in relation to your personal data
7. How we use cookies, tracking, and similar technologies
8. How you can contact us
9. How we will update this Privacy notice

By providing your personal data to us (whether via one of our websites, by email, in person or over the phone), you agree to the processing set out in this Privacy notice. Further notices highlighting certain uses we wish to make of your personal data together with the ability to opt in or out of selected uses may also be provided to you when we collect personal data from you.

Please note: This Privacy notice does not apply to, and NRFUS is not responsible for, any third party websites which may be accessible through links from this website. If you follow a link to any of these third party websites, they will have their own privacy policies and you will need to check these policies before you submit any personal data to such third party websites.

This Privacy notice aims to help you understand our personal data collection, usage and disclosure practices by explaining:

**1. What personal data we collect about you**

We may collect and process different categories of personal data in the course of operating our business and providing our services, such as personal identifiers, commercial information, Internet information, and professional information. These include:

- Basic personal details such as your name and job title;

Case 1:24-bk-11035-MB Doc 33-1 Filed 01/22/25 Entered 01/22/25 18:16:12 Desc Main Document Page

- Contact data such as your telephone number and postal or email address;
- Financial data such as payment related information or bank account details;
- Demographic data such as your address, preferences or interests;
- Website usage and other technical data such as details of your visits to our websites (including our HighQ portals, Dealrooms and the Institute) or information collected through cookies and other tracking technologies;
- Personal data provided to us by or on behalf of our clients or generated by us in the course of providing our services, which may, where relevant, include special categories of personal data;
- Identification and other background verification data such as a copy of passports or utility bills or evidence of beneficial ownership or the source of funds to comply with client due diligence/"know your client"/anti-money laundering laws and collected as part of our client acceptance and ongoing monitoring procedures;
- Recruitment related data such as your curriculum vitae, your education and employment history, details of professional memberships and other information relevant to potential recruitment to NRFUS;
- Data that you may provide to us in course of registering for and attending events or meetings, including access and dietary requirements; and

Any other personal data relating to you that you may provide.

**2. How we obtain the personal data about you**

We may collect or receive your personal data in a number of different ways:

- Where you provide it to us directly, for example by corresponding with us by email, or via other direct interactions with us such as completing a form on our website or registering for and using one of our online tools such as the HighQ portals;
- Where we monitor use of, or interactions with, our websites, any marketing we may send to you, or other email communications sent from or received by NRFUS;
- Third party sources, for example, where we collect information about you to assist with "know your client" checks as part of our client acceptance procedures or where we receive information about you from recruitment agencies for recruitment purposes; or
- Publicly available sources – we may, for example, use such sources to help us keep the contact details we already hold for you accurate and up to date or for professional networking purposes, e.g. LinkedIn.

**3. How we use your personal data**

We will only use your personal data where we are permitted to do so by applicable law. We use your data for a variety of business and commercial purposes:

- Contract performance: where your information is necessary to enter into or perform our contract with you.

- Legal obligation: where we need to use your information to comply with our legal obligations.
- Legitimate interests: where we use your information to achieve a legitimate interest and our reasons for using it outweigh any prejudice to your data protection rights.
- Legal claims: where your information is necessary for us to defend, prosecute or make a claim against you, us or a third party.
- Consent: where you have consented to our use of your information (you will have been presented with a consent form or facility in relation to any such use and may withdraw your consent through an unsubscribe or similar facility).

We may use your personal data in the following ways:

- To provide our legal and other services to you and to conduct our business – to administer and perform our services, including to carry out our obligations arising from any agreements entered into between you and us (please note that our Standard Terms of Engagement apply where we provide legal services).
- To facilitate use of our websites and to ensure content is relevant – to respond to requests for information or inquiries from visitors to our websites and to ensure that content from our websites is presented in the most effective manner for you and for your device.
- For marketing and business development purposes – to provide you with details of new services, legal updates and invites to seminars and events where you have chosen to receive these. We will provide an option to unsubscribe or opt-out of further communication on any electronic marketing communication sent to you or you may opt out by contacting us as set out in section 8 below.
- For research and development purposes – analysis in order to better understand your and our clients' services and marketing requirements and to better understand our business and develop our services and offerings.
- For recruitment purposes – to enable us to process applications for employment submitted via the Careers section of our website and to assess your suitability for any position for which you may apply at Norton Rose Fulbright.
- To fulfil our legal, regulatory, or risk management obligations – to comply with our legal obligations (performing client due diligence/"know your client", anti-money laundering, anti-bribery, sanctions or reputational risk screening, identifying conflicts of interests); for the prevention of fraud and/or other relevant background checks as may be required by applicable law and regulation and best practice at any given time; and to enforce our legal rights, to comply.
- To ensure that we are paid – to recover any payments due to us and where necessary to enforce such recovery through the engagement of debt collection agencies or taking other legal action (including the commencement and carrying out of legal and court proceedings).
- To inform you of changes – to notify you about changes to our services or our Standard Terms of Engagement for legal services or this Privacy notice.
- To reorganize or make changes to our business – In the event that we are undergo a re-organization (for example if we merge, combine or divest a part of our business), we may

need to transfer some or all of your personal data to the relevant third party (or its advisors) as part of any due diligence process or transfer to that re-organized entity or third party your personal data for the same purposes as set out in this Privacy notice or for the purpose of analyzing any proposed re-organization.

**4. Who we share your personal data with**

NRFUS is member firm of Norton Rose Fulbright, a Swiss verein. The members of the firm are separate legal entities, but we coordinate our practices. Any personal data that we collect or you provide to us may be shared with and processed by any Norton Rose Fulbright entity among our global network.

We may also share your personal data with a variety of the following categories of third parties:

- Our professional advisors (e.g. legal, financial, business, risk management or other advisors), bankers and auditors;
- Our insurers and insurance brokers;
- Third party service providers, including a service center based in the Philippines that is operated by Accenture UK Limited, to whom we outsource certain functions such as information and document management, office support, technology and IT services, word processing, photocopying and translation services (we have agreements in place with these service providers to protect the confidentiality and security of information (including personal data) shared with them); and
- Other third party external advisors or experts engaged in the course of the services we provide to our clients and with their prior consent, such as barristers, local counsel and technology service providers such as eDiscovery and document review platforms.

We may also process your personal data to comply with valid government subpoenas or other legal process. Before complying, where possible, we will provide you with notice so that you may object.

**5. How we protect your personal data**

We recognize that information security is an integral element of data privacy. While no data transmission (including over the Internet or any website) can be guaranteed to be secure from intrusion, we implement a range of commercially reasonable physical, technical and procedural measures to help protect personal data from unauthorized access, use, disclosure, alteration or destruction in accordance with data protection law requirements.

Alongside our role, please also note that where we have given you (or where you have chosen) a password which enables you to access certain parts of our websites or online services, you are responsible for keeping this password confidential and for complying with any other security procedures that we notify you of. We ask you not to share a password with anyone.

**6. What rights you have in relation to your personal data**

If you have any questions about our use of your personal data, you should first contact us via the details provided in section 8 below. Under certain circumstances and in accordance with applicable data protection laws:

You have the right to request that we disclose to you what information we collect, use, disclose, and sells.  You also have the right to request that a business delete any personal information about you which the business has collected about you.  To submit either of the above requests, you may call toll-free 1 (877) 203-2849.  You may also submit via email at privacypolicy@NortonRoseFulbright.com for assistance.  Please note for your protection, any request sent to us to delete your personal information will be subject to the a verification procedure that may require you to provide us with information about you that we have in our files.

We may have disclosed your information as described above during the preceding 12 months, but we do not sell your personal information.  We do not have actual knowledge that we sell the personal information of minors under 16 years of age.

We shall not discriminate against you for exercising any of your above rights.

You may designate an authorized agent to make a request to exercise your rights on your behalf.  For your protection, we reserve the right to deny any request from an agent who does not submit proof that they have been authorized to act on your behalf.

You can exercise your right to stop email marketing messages from us at any time by using an unsubscribe facility or contacting us at privacypolicy@nortonrosefulbright.com.

If you contact us to exercise any of these rights we will check your entitlement and respond in most cases within 45 days.

## 7.  How we use cookies, tracking, and similar technologies

When you visit our websites we may send a cookie to your computer.  This is a small data file stored by your computer to help improve functionality or tailor information to provide visitors with more relevant pages.  For details of the cookies employed by us, please see our Cookie Policy, which forms part of this Privacy notice.  We may also analyze website traffic to identify what visitors find most interesting so we can tailor our websites accordingly.

We will not respond to Web browser "do not track" signals.  If you would like additional information about online tracking and various opt-out mechanisms, please see https://youradchoices.com/.

Because we link to social media sites, and from time to time may include third-party advertisements, other parties may collect your personally identifiable information about your online activities over time and across different web sites when you visit this Site.

Please note that not all tracking will stop even if you delete cookies.

## 8.  How you can contact us

If you have a concern or a question about how we have processed your personal information, you should first raise your concern or question with Human Resources.  In the event that Human Resources is unable to resolve the concern or question, you may call 1 (713) 651-7777 or e-mail privacypolicy@NortonRoseFulbright.com for assistance.

Data Protection Officer
799 9th Street NW, Suite 1000
Washington DC 20001
United States

## 9.  How we may update this Privacy notice

We may change the content of our websites and how we use cookies without notice and consequently our Privacy notice and Cookie Policy may change from time to time in the future. We therefore encourage you to review them when you visit the website to stay informed of how we are using personal data.

Effective Date:  June 30, 2020.

# EXHIBIT 14

Document Properties

Description Security Fonts Initial View Custom Advanced

Description

File: 2019_Code of Ethics and Business Conduct - NATPE Board 11

Title: Code of Ethics and Business Conduct - NATPE Board 11

Author: JP BOMMEL

Subject:

Keywords:

Created: 4/7/2025 12:14:36 PM

Modified: 4/7/2025 12:14:36 PM

Application: Word

Additional Metadata...

Advanced

PDF Producer: macOS Version 15.3.2 (Build 24D81) Quartz PDFContext

PDF Version: 1.3 (Acrobat 4.x)

Location: C:\Users\Andrew.Hennigan\Downloads\

File Size: 106.71 KB (109,273 Bytes)

Page Size: 8.50 x 11.00 in

Number of Pages: 3

Tagged PDF: No

Fast Web View: No

Help OK Cancel

# EXHIBIT 15

Document Properties

Description | Security | Fonts | Initial View | Custom | Advanced

Description

File: 1-18-20-Executive Committee 4

Title: Executive Committee 4

Author: JP BOMMEL

Subject:

Keywords:

Created: 4/7/2025 12:22:50 PM

Modified: 4/7/2025 12:22:50 PM

Application: Word

Additional Metadata...

Advanced

PDF Producer: macOS Version 15.3.2 (Build 24D81) Quartz PDFContext

PDF Version: 1.3 (Acrobat 4.x)

Location: C:\Users\Andrew.Hennigan\Downloads\

File Size: 132.03 KB (135,196 Bytes)

Page Size: 8.50 x 11.00 in

Number of Pages: 3

Tagged PDF: No

Fast Web View: No

**EXHIBIT 15** **Page 103**

Help | OK | Cancel

# EXHIBIT 16

Document Properties

Description | Security | Fonts | Initial View | Custom | Advanced

Description

File: Deferred Executive Salary modeling 2021 - 2022

Title: Deferred Executive Salary modeling 2021 - 2022

Author: JP BOMMEL

Subject:

Keywords:

Created: 4/7/2025 4:59:20 PM

Modified: 4/7/2025 4:59:20 PM

Application: Excel

Additional Metadata...

Advanced

PDF Producer: macOS Version 15.3.2 (Build 24D81) Quartz PDFContext

PDF Version: 1.3 (Acrobat 4.x)

Location: C:\Users\Andrew.Hennigan\Downloads\

File Size: 53.62 KB (54,903 Bytes)

Page Size: 8.50 x 11.00 in

Number of Pages: 1

Tagged PDF: No

Fast Web View: No

**EXHBIT 16** **Page 104**

Help | OK | Cancel

# EXHIBIT 17



MAY 5, 2025
Meghann@MarguliesFaithLaw.com

**SENT VIA EMAIL**

Melissa Davis Lowe, Esq. -- mlowe@shulmanbastian.com
Brian D. Caplan, Esq. -- bcaplan@reitlerlaw.com

**Re: In re National Association of Television Program Executives, Inc.**
**Bankruptcy Case No. 1:22-bk-11181-MB**

Dear Counselors:

Thank you for providing documents to us on April 15th and sending additional correspondence on April 28th. In your letter dated April 15, 2025, you called the request of Jeremy W. Faith (the "Plan Fiduciary"), Chapter 11 Plan Fiduciary for the bankruptcy estate of National Association of Television Program Executives, Inc. ("NATPE"), a runaround discovery attempt. You also called the request overly broad and burdensome, imposing time limits. However, the Plan Fiduciary's demand is not a discovery attempt (although he reserves the right to conduct discovery later). Rather, it is a demand for turnover of property of the Estate as required by NATPE's Confirmed Second Amended Plan.

By Court Order, the Plan Fiduciary is the legal successor and representative of NATPE's Estate and is entitled to collect and retain all of NATPE's books and records. *See* NATPE Second Amended Plan, Dkt. No. 251, Exh D at pg. 21 outlining the Plan Fiduciary's duties; *see also* Confirmation Order, Dkt. No. 258 pp. 3-4 approving the Plan. The request also plainly falls within 11 U.S.C. § 542, which requires that any entity in possession, custody, or control of property of the Estate "shall deliver [such property] to the trustee."); subsection (e) requires the turnover of "recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs…"

Mr. Bommel was NATPE's Interim President and CEO and was intimately involved with the settlement negotiations leading to Mr. Faith's appointment as Plan Fiduciary and confirmation of NATPE's plan, including, *inter alia*, for Mr. Faith's collection of NATPE's books and records in order to investigate and prosecute Estate Claims. Although NATPE did sell substantially all of its assets in early 2023, it continued to operate as a Debtor-in-Possession under Mr. Bommel's direction for more than a year following the sale, and the Plan was not confirmed until September 17, 2024.

Mr. Bommel's representation that all of NATPE's corporate governance documents were on the SharePoint server transferred to the new owner, and loss of all information relating to NATPE's administrative credentials and corporate governance documents is in direct conflict with the negotiated terms of the confirmed plan. Moreover, while apparently NATPE gave Peter Law Group more than 5,000 documents in connection with the Fontainebleau arbitration, only approx. 1,000 documents have been turned over to the Plan Fiduciary. Furthermore, the documents that Mr. Bommel did produce to the Plan Fiduciary are PDF copies of the "native" files (original unedited documents in their original unedited format, e.g. Microsoft Word or Excel).

Case 1:24-bk-11015-MB Doc 331 Filed 05/22/25 Entered 05/22/25 13:19:12 Desc Main Document Page 138 of 187

Melissa Davis Lowe, Esq.
Brian D. Caplan, Esq.
May 5, 2025
Page 2

With respect to your statement that Mr. Bommel does not have the external hard drive or the Lenovo ThinkPad laptop he purchased using NATPE's AMEX card one month prior to the Petition Date; we ask Mr. Bommel to advise what happened to this Estate property and its current location? Additionally, the Debtor's 2022 Tax Returns also reflect that Mr. Bommel was in possession of a MacBook computer that has also not been turned over and should be returned to the Plan Fiduciary forthwith.

Finally, the attached page from NATPE's September 2022 billing statement from Peter Law Group includes an expense of $6,084.00 on August 25, 2022, for: "[f]ees to Bankruptcy Counsel for initial consultation (not ultimately retained)." We request that Mr. Bommel provides the name of the attorneys and the firm associated with this charge along with any agreements or communications associated therewith.

Based on the foregoing, the Plan Fiduciary demands that Mr. Bommel turn over all such property of the Estate, including without limitation, all "native" files and all other books, records, documents, emails, entire case files, computers, hard drives, communications, correspondence, invoices, photos, videos, and any other electronically stored information, without any modification whatsoever (e.g., alteration of metadata), by no later than 5:00 p.m. on May 16, 2025; and upload the foregoing to the following DropBox folder: Plan Fiduciary DropBox Link

Failure to comply with the Plan Fiduciary's turnover request, in a timely manner, will result in the Plan Fiduciary taking appropriate action as required to substantially effectuate the terms of NATPE's Confirmed Plan, including filing a motion for turnover.

Thank you for your assistance in this matter.

Best regards,

**MARGULIES FAITH LLP**

*Meghann A. Triplett*

Meghann A. Triplett, Esq.
Counsel for Jeremy W. Faith, Chapter 11 Plan Fiduciary

cc. Jeremy W. Faith, Chapter 11 Plan Fiduciary (via email)
Enclosures

| Date | | Description | Hours | Rate | Total |
|---|---|---|---|---|---|
| 9/27/2022 | AP | Various matters related to bankruptcy filing including conferences and email exchanges with Mr. Bommel; review financial documents and conferences and email exchanges with team consisting of Mr. Bommel, Ms. Jessup, Mr. Harbeson, and retained bankruptcy counsel. | 6.00 | $550.00/hr | $3,300.00 |
| 9/28/2022 | AP | Various matters related to bankruptcy filing including conferences and email exchanges with Mr. Bommel; review financial documents and conferences and email exchanges with team consisting of Mr. Bommel, Ms. Jessup, Mr. Harbeson, and retained bankruptcy counsel. | 8.50 | $550.00/hr | $4,675.00 |
| | | **Hours Total** | **63.50** | **Fee Total** | **$34,925.00** |

## Expense Detail

| Date | | Description | Quantity | Rate | Total |
|---|---|---|---|---|---|
| 8/25/2022 | AP | Fees to Bankruptcy Counsel for initial consultation (not ultimately retained). | 1 | $6,084.00 | $6,084.00 |
| | | | | **Expenses Total** | **$6,084.00** |

| | |
|---|---|
| Fees | $34,925.00 |
| Expense | $6,084.00 |
| **Current Due** | **$41,009.00** |
| Outstanding Balance | $0.00 |
| **Total Due** | **$41,009.00** |

## Timekeeper Summary

| Timekeeper | Hours |
|---|---|
| Arnold Peter | 63.50 |
| **Total Hours** | **63.50** |

# EXHIBIT 18

**Fill in this information to identify the case:**

Debtor Name National Association of Television Program Executives, In

United States Bankruptcy Court for the: Central District of California

Case number: 1:22-bk-11181-MB

☐ Check if this is an amended filing

# Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11

12/17

Month: May 2024

Date report filed: 06/20/2024 (MM / DD / YYYY)

Line of business: Professional Association

NAISC code: 813910

**In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.**

Responsible party: JP Bommel - Interim President and CEO

Original signature of responsible party: [signature]

Printed name of responsible party: JP Bommel

## 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

**If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A*.**

| | Question | Yes | No | N/A |
|---|---|---|---|---|
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☑ | ☐ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☐ | ☑ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☐ | ☑ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☐ | ☑ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☐ | ☑ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☑ |
| 9. | Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☑ |

**If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B*.**

| | Question | Yes | No | N/A |
|---|---|---|---|---|
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☑ | ☐ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☑ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☑ | ☐ |

Case 1:22-bk-11181-MB Doc 53-1 Filed 01/26/26 Entered 01/26/26 09:46:33 Desc
Main Document Page 2 of 150

Debtor Name National Association of Television Program Executives, In Case number 1:22-bk-11181-MB

| | | | |
|---|---|---|---|
| 17. Have you paid any bills you owed before you filed bankruptcy? | ☐ | ☑ | ☐ |
| 18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy? | ☐ | ☑ | ☐ |

## 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts** $ 174,807.21

This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

20. **Total cash receipts**

Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

Report the total from *Exhibit C* here. $ __________

21. **Total cash disbursements**

Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

Report the total from *Exhibit D* here. − $ -1,677.20

22. **Net cash flow**

Subtract line 21 from line 20 and report the result here.
This amount may be different from what you may have calculated as *net profit*. + $ -1,677.20

23. **Cash on hand at the end of the month**

Add line 22 + line 19. Report the result here.

Report this figure as the *cash on hand at the beginning of the month* on your next operating report. = $ 173,130.01

This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

## 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables** $ 71,727.08

*(Exhibit E)*

Debtor Name National Association of Television Program Executives, In Case number 1:22-bk-11181-MB

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables** $ 69,200.00

*(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed? 6
27. What is the number of employees as of the date of this monthly report? 0

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case? $ 0.00
29. How much have you paid in professional fees related to this bankruptcy case since the case was filed? $ 0.00
30. How much have you paid this month in other professional fees? $ 0.00
31. How much have you paid in total other professional fees since filing the case? $ 0.00

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

| | *Column A* **Projected** Copy lines 35-37 from the previous month's report. | – | Column B **Actual** Copy lines 20-22 of this report. | = | *Column C* **Difference** Subtract Column B from Column A. |
|---|---|---|---|---|---|
| 32. **Cash receipts** | $ 0.00 | – | $ 0.00 | = | $ 0.00 |
| 33. **Cash disbursements** | $ 2,000.00 | – | $ 1,677.20 | = | $ 322.80 |
| 34. **Net cash flow** | $ -2,000.00 | – | $ -1,677.20 | = | $ 322.80 |

35. Total projected cash receipts for the next month: $ 0.00
36. Total projected cash disbursements for the next month: - $ 2,000.00
37. Total projected net cash flow for the next month: = $ -2,000.00

Case 1:22-ap-01055-MB Doc 32-1 Filed 01/26/25 Entered 01/26/25 09:06:38 Desc
Main Document Page 34 of 150

Debtor Name National Association of Television Program Executives, In Case number 1:22-bk-11181-MB

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

- ☑ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).
- ☑ 39. Bank reconciliation reports for each account.
- ☐ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.
- ☐ 41. Budget, projection, or forecast reports.
- ☐ 42. Project, job costing, or work-in-progress reports.

Print Save As... Reset

EXHIBIT 18

**NATPE**
**EXHIBIT C**
**RECEIPTS - MONTH OF MARCH MAY 2024**

| Date | Flow | Month | Coding | Name | Amount |
|---|---|---|---|---|---|
| | | | none | | |
| | | | | | - |

**NATPE**

**EXHIBIT D**

**DISBURSEMENTS - MONTH OF MAY 2024**

| Date | Flow | Month | Coding | Name | Amount |
|---|---|---|---|---|---|
| 5/3/2024 | Cash Out | 5/1/2024 | Dues and Subscriptions | RENTAL Public Storage I | (380.00) |
| 5/6/2024 | Cash Out | 5/1/2024 | Dues and Subscriptions | SUMMIT HOSTING | (173.31) |
| 5/6/2024 | Cash Out | 5/1/2024 | Dues and Subscriptions | FORMASSEMBLY.COM | (249.00) |
| 5/17/2024 | Cash Out | 5/1/2024 | Dues and Subscriptions | Bill.com | (90.00) |
| 5/23/2024 | Cash Out | 5/1/2024 | Dues and Subscriptions | Dropbox | (21.76) |
| 5/30/2024 | Cash Out | 5/1/2024 | Dues and Subscriptions | STUDIO CITY MAILBOXES | (349.63) |
| 5/30/2024 | Cash Out | 5/1/2024 | Consulting Fees | JP Bommel | (413.50) |
| | | | | | **(1,677.20)** |

**NATPE**
**EXHIBIT E**
**INCURRED BUT NOT PAID AS OF 05/31/2024**

| Vendor | Type | Description | Amount |
|---|---|---|---|
| Stephanie Beringhele | Commission | Streaming 2022 | 7,580.00 |
| Rebecca Shottland | Commission | Streaming 2022 | 7,375.00 |
| Employees | Severance | 1 week/year | 48,514.16 |
| IRS | Payroll Taxes | PR Taxes on above 3 items | 6,346.92 |
| CT Corporation | Statutory Representation | Registered agent + service | 511.00 |
| bill.com | Dues and Subscriptions | Monthly billing | 400.00 |
| Other | Dues and Subscriptions | Primarily software; monthly recurring costs | 1,000.00 |
| | | | 71,727.08 |

**NATPE**
**EXHIBIT F**
**RECEIVABLES AS OF 05/31/2024**

| Event | Customer | Amount | Likelyhood of Receipt |
|---|---|---|---|
| Streaming Plus 2022 | Allen Media Group | 13,000.00 | 1% |
| Streaming Plus 2022 | Beaumont Blackman Inc | 5,000.00 | 1% |
| Streaming Plus 2022 | Horowitz Research | 4,000.00 | 0% |
| Streaming Plus 2022 | Pluto | 25,000.00 | 1% |
| Streaming Plus 2022 | ROKU | 10,000.00 | 1% |
| Streaming Plus 2022 | Telemundo | 10,000.00 | 1% |
| Budapest | Participant Media | 2,200.00 | 0% |
| | | 69,200.00 | |

| NATPE OPERATING ACCOUNT RECONCILIATION | | | |
|---|---|---|---|
| POST BANKRUPTCY FILING | | | |
| UPDATED 05/31/2024 | | | |
| | | | |
| | ***BALANCE AS OF 04/30/2024*** | ***AXOS BANK*** | ***174,807.21*** |

| Month | 5/1/2024 |
|---|---|

| Flow | Coding | Sum of Amount |
|---|---|---|
| **Cash Out** | Consulting Fees | (413.50) |
| | Dues and Subscriptions | (1,263.70) |
| **Cash Out Total** | | **(1,677.20)** |
| **Grand Total** | | **(1,677.20)** |

| | | | |
|---|---|---|---|
| | ***BALANCE AS OF 05/31/2024*** | ***AXOS BANK*** | ***173,130.01*** |



Date 5/31/24 Page 1
Primary Account 0568

NATIONAL ASSOCIATION OF TELEVISION
PROGRAM EXECUTIVES, INC; Debtor in
Possession Case 1:22-bk-11181, Operating
2051 S HORNE STREET
OCEANSIDE CA 92054

Account Title: NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC; Debtor in Possession Case 1:22-bk-11181, Operating

| Commercial Checking | | | |
|---|---|---|---|
| Account Number | 0568 | Number of Enclosures | 1 |
| Previous Balance | 174,807.21 | Statement Dates | 5/01/24 thru 6/02/24 |
| Deposits/Credits | .00 | Days in the statement period | 33 |
| 7 Checks/Debits | 1,677.20 | Avg Daily Ledger | 173,723.30 |
| Maintenance Fee | .00 | Avg Daily Collected | 173,723.30 |
| Interest Paid | .00 | | |
| Ending Balance | 173,130.01 | | |

## CHECKS AND WITHDRAWALS

| Date | Description | Amount |
|---|---|---|
| 5/03 | RENTAL Public Storage I<br>PPD 091000010661791<br>NATPE | 380.00- |
| 5/06 | DBT CRD 1919 05/06/24 11553065<br>FORMASSEMBLY.COM<br>FORMASSEMBLY. IN C#1361 | 249.00- |
| 5/06 | DBT CRD 0803 05/03/24 70292274<br>SUMMIT HOSTING<br>470-579-5701 GA C#1361 | 173.31- |
| 5/17 | BILLING BILL.COM LLC<br>CCD 021000023170180<br>National Association o | 90.00- |
| 5/23 | DBT CRD 1432 05/22/24 03228558<br>DROPBOX*MGG9HC5XWDQR | 21.76- |



Date 5/31/24 Page 2
Primary Account 0568

Commercial Checking 0568 (Continued)

**CHECKS AND WITHDRAWALS**

| Date | Description | Amount |
|---|---|---|
| | DROPBOX.COM CA C#1361 | |
| 5/30 | Payables Bill.com<br>CCD 021000028449707<br>National Association o | 413.50- |

**CHECKS IN SERIAL NUMBER ORDER**

| Date | Check No | Amount |
|---|---|---|
| 5/09 | 1004 | 349.63 |

* Indicates Skip In Check Number Sequence

**DAILY BALANCE INFORMATION**

| Date | Balance | Date | Balance | Date | Balance |
|---|---|---|---|---|---|
| 5/01 | 174,807.21 | 5/09 | 173,655.27 | 5/30 | 173,130.01 |
| 5/03 | 174,427.21 | 5/17 | 173,565.27 | | |
| 5/06 | 174,004.90 | 5/23 | 173,543.51 | | |

*** END OF STATEMENT ***

Motion to Amend Complaint (part 2) Page 42 of 150 / Main Document Page 152 of 187

THE RED THERMO SECURED "SP" LOGO IN THE LOWER CORNER OF THIS CHECK MUST FADE TEMPORARILY WHEN WARMED BY TOUCH OR FRICTION. SEE BACK FOR ADDITIONAL FEATURES.

NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC
DEBTOR IN POSSESSION, CASE 1:22-bk-11181
OPERATING
3940 LAUREL CANYON BLVD STE 324
STUDIO CITY, CA 91604

1004

DATE 5/3/2024

90-8725/1222

PAY TO THE ORDER OF Studio City Mailboxes $ 349.63

Three Hundred Fourty Nine Dollars and 63/100 DOLLARS

axos BANK

MEMO #324 - Rent + postage

⑈1004⑈ ⑆122287251⑆8900000080568⑈

Check 1004 Date: 05/09 Amount: $349.63

EXHIBIT 18 Page 119

## IMPORTANT DISCLOSURE TO OUR CONSUMER CUSTOMERS

### In Case of Errors or Questions About Your Electronic Transfers

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 1-888-502-2967 or Write us at the address on the front of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will tell you all the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. In that case, we will provisionally credit your account for the amount you think is in error, so that you may have use of the money during the time it takes us to complete our investigation. For transfers initiated outside the United States or transfers resulting from a point of sale (POS) debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

## IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS

Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

**For our 24-hour Automated Banking System, please call the number located on the front of the Statement.**

## CONSUMER BILLING RIGHTS SUMMARY REGARDING YOUR RESERVE LINE

### What to do if you think you find a mistake on your statement:

Contact us at the address shown on the front of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you within 60 days after the error appeared on your statement.

- Tell us your name and account number.
- Tell us the dollar amount of the suspected error.
- Describe the error you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.
While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The amount in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## REPORTS TO AND FROM CREDIT BUREAUS FOR RESERVE LINES

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## CONSUMER REPORT DISPUTES

We may report information about negative account activity on consumer and small business deposit accounts and consumer reserve lines to Consumer Reporting Agencies (CRA). As a result, this may prevent you from obtaining services at other financial institutions. If you believe we have inaccurately reported information to a CRA, you may submit a dispute by calling 1-800-428-9623 or by writing to Chex Systems, Attention Consumer Relations, 7805 Hudson Road, Suite 100, Woodbury, MN 55125. In order to assist you with your dispute, you must provide your name, address and phone number; the account number; the specific information you are disputing; the explanation of why it is incorrect; and any supporting documentation (i.e. affidavit of identity theft). If applicable.

©2018 Axos Bank. All Rights Reserved.
DEP 950 (10/18)

**EXHIBIT 18**





Date 5/31/24 Page 1
Primary Account 0576

NATIONAL ASSOCIATION OF TELEVISION
PROGRAM EXECUTIVES, INC; Debtor in
Possession Case 1:22-bk-11181, Payroll
2051 S HORNE STREET
OCEANSIDE CA 92054

Account Title: NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC; Debtor in Possession Case 1:22-bk-11181, Payroll

| Commercial Checking | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | 0576 | Statement Dates 5/01/24 thru | 6/02/24 |
| Previous Balance | .00 | Days in the statement period | 33 |
| Deposits/Credits | .00 | Avg Daily Ledger | .00 |
| Checks/Debits | .00 | Avg Daily Collected | .00 |
| Maintenance Fee | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | .00 | | |

## DAILY BALANCE INFORMATION

| Date | Balance |
|---|---|
| 5/01 | .00 |

*** END OF STATEMENT ***

## IMPORTANT DISCLOSURE TO OUR CONSUMER CUSTOMERS

### In Case of Errors or Questions About Your Electronic Transfers

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 1-888-502-2967 or Write us at the address on the front of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will tell you all the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. In that case, we will provisionally credit your account for the amount you think is in error, so that you may have use of the money during the time it takes us to complete our investigation. For transfers initiated outside the United States or transfers resulting from a point of sale (POS) debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

## IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS

Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

**For our 24-hour Automated Banking System, please call the number located on the front of the Statement.**

## CONSUMER BILLING RIGHTS SUMMARY REGARDING YOUR RESERVE LINE

### What to do if you think you find a mistake on your statement:

Contact us at the address shown on the front of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you within 60 days after the error appeared on your statement.

- Tell us your name and account number.
- Tell us the dollar amount of the suspected error.
- Describe the error you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The amount in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## REPORTS TO AND FROM CREDIT BUREAUS FOR RESERVE LINES

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## CONSUMER REPORT DISPUTES

We may report information about negative account activity on consumer and small business deposit accounts and consumer reserve lines to Consumer Reporting Agencies (CRA). As a result, this may prevent you from obtaining services at other financial institutions. If you believe we have inaccurately reported information to a CRA, you may submit a dispute by calling 1-800-428-9623 or by writing to Chex Systems, Attention Consumer Relations, 7805 Hudson Road, Suite 100, Woodbury, MN 55125. In order to assist you with your dispute, you must provide your name, address and phone number; the account number; the specific information you are disputing; the explanation of why it is incorrect; and any supporting documentation (i.e. affidavit of identity theft). If applicable.

©2018 Axos Bank. All Rights Reserved.
DEP 950 (10/18)

**EXHIBIT 18**





Case 1:22-bk-11181-MB Doc 329 Filed 06/20/24 Entered 06/20/24 09:48:32 Desc
Main Document Page 246 of 150

Date 5/31/24 Page 1
Primary Account 0592

NATIONAL ASSOCIATION OF TELEVISION
PROGRAM EXECUTIVES, INC; Debtor in
Possession Case 1:22-bk-11181, Tax
2051 S HORNE STREET
OCEANSIDE CA 92054

Account Title: NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC; Debtor in Possession Case 1:22-bk-11181, Tax

| Commercial Checking | | Number of Enclosures | 0 |
|---|---|---|---|
| Account Number | 0592 | Statement Dates | 5/01/24 thru 6/02/24 |
| Previous Balance | .00 | Days in the statement period | 33 |
| Deposits/Credits | .00 | Avg Daily Ledger | .00 |
| Checks/Debits | .00 | Avg Daily Collected | .00 |
| Maintenance Fee | .00 | | |
| Interest Paid | .00 | | |
| Ending Balance | .00 | | |

## DAILY BALANCE INFORMATION

| Date | Balance |
|---|---|
| 5/01 | .00 |

*** END OF STATEMENT ***

## IMPORTANT DISCLOSURE TO OUR CONSUMER CUSTOMERS

### In Case of Errors or Questions About Your Electronic Transfers

In Case of Errors or Questions About Your Electronic Transfers, Telephone us at 1-888-502-2967 or Write us at the address on the front of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will tell you all the results of our investigation within 10 business days and will correct any error promptly. If we need more time, we may take up to 45 days to investigate your complaint. In that case, we will provisionally credit your account for the amount you think is in error, so that you may have use of the money during the time it takes us to complete our investigation. For transfers initiated outside the United States or transfers resulting from a point of sale (POS) debit card transactions, the time period for provisional credit is 10 business days and the time to resolve the investigation is 90 days.

## IMPORTANT DISCLOSURES TO OUR BUSINESS CUSTOMERS

Errors related to any transaction on a business account will be governed by any agreement between us and/or all applicable rules and regulations governing such transactions, including the rules of the Automated Clearing House Association (NACHA Rules) as may be amended from time to time. If you think this statement is wrong, please telephone us at the number listed on the front of this statement immediately.

**For our 24-hour Automated Banking System, please call the number located on the front of the Statement.**

## CONSUMER BILLING RIGHTS SUMMARY REGARDING YOUR RESERVE LINE

### What to do if you think you find a mistake on your statement:

Contact us at the address shown on the front of this statement as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you within 60 days after the error appeared on your statement.

- Tell us your name and account number.
- Tell us the dollar amount of the suspected error.
- Describe the error you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.

You must notify us of any potential errors in writing or electronically. You may call us, but if you do, we are not required to investigate any potential errors and you may have to pay the amount in question.

While we investigate whether or not there has been an error, the following are true:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The amount in question may remain on your statement, and we may continue to charge you interest on that amount. But, if we determine that we made a mistake, you will not have to pay the amount in question or other fees related to that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

## REPORTS TO AND FROM CREDIT BUREAUS FOR RESERVE LINES

We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

## CONSUMER REPORT DISPUTES

We may report information about negative account activity on consumer and small business deposit accounts and consumer reserve lines to Consumer Reporting Agencies (CRA). As a result, this may prevent you from obtaining services at other financial institutions. If you believe we have inaccurately reported information to a CRA, you may submit a dispute by calling 1-800-428-9623 or by writing to Chex Systems, Attention Consumer Relations, 7805 Hudson Road, Suite 100, Woodbury, MN 55125. In order to assist you with your dispute, you must provide your name, address and phone number; the account number; the specific information you are disputing; the explanation of why it is incorrect; and any supporting documentation (i.e. affidavit of identity theft). If applicable.

©2018 Axos Bank. All Rights Reserved.
DEP 950 (10/18)

**EXHIBIT 18**

Motion to Amend Complaint (part 2) Page 158 of 187

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **CHAPTER 11 PLAN FIDUCIARY'S MOTION FOR TURNOVER OF RECORDED INFORMATION RELATING TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS IN THE POSSESSION OF ITS FORMER DIRECTORS; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 26, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **June 26, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**: Service on Judge not required per Judge Barash's Procedures re: Serving Judge's Copy of Documents
**DEBTOR:** National Association of Television Program Executives, Inc., 3940 Laurel Canyon Blvd., Suite 324, Studio City, CA 91604
**Jean Pierre Bommel:** 720 Greenwich St. 2d, New York, NY 10014
**Sarah Jessup:** 228 Rennie Avenue, Venice, CA 90291 & 2051 S Horne St., Oceanside, CA 92054-6527
**Andrew Kaplan:** 2255 Paseo Dorado Ste 110, La Jolla, CA 92037-3209
**Richard Lippin:** 10675-B Santa Monica, Bl. Los Angeles, CA 90025

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 26, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SENT VIA EMAIL:**
**Sarah Jessup:** sarah.jessup@gmail.com
**Andrew Kaplan:** andy.kaplan@kcglobalmedia.com
**Richard Lippin:** alippin@gmail.com; dlippin@lippingroup.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 26, 2025 | Vicky Castrellon | */s/ Vicky Castrellon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Motion to Amend Complaint (part 2) Page 159 of 187

## ADDITIONAL SERVICE INFORMATION (if needed):

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

**Samuel Mushegh Boyamian on behalf of Interested Party Courtesy NEF**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Samuel Mushegh Boyamian on behalf of Other Professional Jeremy W. Faith**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Samuel Mushegh Boyamian on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)**
russell.clementson@usdoj.gov

**Leslie A Cohen on behalf of Debtor National Association of Television Program Executives, Inc.**
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;bryn@lesliecohenlaw.com

**Christopher Cramer on behalf of Interested Party Courtesy NEF**
secured@becket-lee.com

**Jeremy Faith on behalf of Interested Party Courtesy NEF**
Jeremy@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Jeremy Faith on behalf of Other Professional Jeremy W. Faith**
Jeremy@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**John-Patrick McGinnis Fritz (TR)**
jpftrustee@lnbyg.com, jpf@trustesolutions.net

**William E Ireland on behalf of Defendant B.W. Hotel, L.L.C. dba Beverly Wilshire, A Four Seasons Hotel, a Delaware Limited Liability Company**
wireland@hbblaw.com, edocs@hbblaw.com

**Melissa Davis Lowe on behalf of Defendant Jean Pierre Bommel, an individual**
mlowe@shulmanbastian.com, avernon@shulmanbastian.com

**Melissa Davis Lowe on behalf of Interested Party Melissa Davis Lowe**
mlowe@shulmanbastian.com, avernon@shulmanbastian.com

**Michael B Lubic on behalf of Creditor Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach**
michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com

**Jonathan Serrano on behalf of Interested Party Courtesy NEF**
Jonathan@MarguliesFaithLaw.com,
vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com

**Derrick Talerico on behalf of Interested Party Brunico Communications Ltd**
dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Motion to Amend Complaint (pt 2 of 2) Page 160 of 187

**Meghann A Triplett on behalf of Interested Party Courtesy NEF**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Meghann A Triplett on behalf of Other Professional Jeremy W. Faith**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Meghann A Triplett on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**United States Trustee (SV)**
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT 4

MEGHANN A. TRIPLETT (SBN 268005)
*Meghann@MarguliesFaithLaw.com*
JONATHAN SERRANO (SBN 333225)
*Jonathan@MarguliesFaithLaw.com*
**MARGULIES FAITH, LLP**
16030 Ventura Blvd., Suite 470
Encino California 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777

Attorneys for Jeremy W. Faith,
Chapter 11 Plan Fiduciary

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

In re:

NATIONAL ASSOCIATION OF TELEVISION PROGRAM EXECUTIVES, INC.,

Debtor.

Case No.: 1:22-bk-11181-MB

Chapter: 11 (Subchapter V)

**CHAPTER 11 PLAN FIDUCIARY'S MOTION FOR TURNOVER OF RECORDED INFORMATION RELATING TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS IN THE POSSESSION OF ARNOLD PETER DBA PETER LAW GROUP; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

[Declarations of Chapter 11 Plan Fiduciary, Jeremy W. Faith and Meghann A. Triplett and Exhibits in support, filed concurrently]

**Hearing**:
**Date:** July 17, 2025
**Time:** 2:30 p.m.
**Place:** Courtroom 303
United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills. CA 91367

## TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 2

II. JURISDICTION .......... 3

III. BACKGROUND .......... 3

A. The Bankruptcy Case and the Plan Fiduciary's Appointment .......... 3

B. PLG's Representation of the Debtor .......... 4

C. The Pending Litigation .......... 5

D. The Plan Fiduciary's Demands for Turn Over .......... 6

IV. LEGAL ANALYSIS .......... 13

A. The Plan Fiduciary is Entitled to Turnover of All Recorded Information Related to the Debtor’s Property, including the Client File, and the Debtor’s Financial Affairs .......... 13

B. The Relief Sought by the Plan Fiduciary Does Not Require an Adversary Proceeding .......... 16

V. CONCLUSION .......... 17

Case 1:24-bk-11085-MB Doc 32-1 Filed 01/26/25 Entered 01/26/25 19:16:40 Desc Main Document Page 3 of 24

# TABLE OF AUTHORITIES

**CASES** **Page**

Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343 (1985) ....... 14

Gottlieb v. Fayerman (In re Ginzburg), 517 B.R. 175, 182 (Bankr. C.D. Cal. 2014) ....... 15

In re Crescent Res., LLC, 457 B.R. 506, 530 (Bankr. W.D. Tex. 2011) ....... 16

In re Hotels Nev., LLC, 458 B.R. 560, 567 (Bankr. D. Nev. Oct. 20, 2011) ....... 15

In re Old BPSUSH Inc., 2019 Bankr. LEXIS 1867, at *7-9 (Bankr. D. Del. June 20, 2019) ....... 16

In re Ramirez, 183 B.R. at 587 (citing Rose v. State Bar, 49 Cal. 3d 646, 655 (1989) ....... 1, 14

Kallen v. Delug, 157 Cal.App.3d 940, 950 (1984) ....... 14

Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Grp. (in Re Hechinger Inv. Co. of Del., Inc.), 285 B.R. 601, 605, 615 (D. Del. 2002) ....... 16

Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995) ....... 1

Rose v. State Bar, 49 Cal. 3d 646, 655 (1989) ....... 14

Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining Co.), 442 B.R. 44, 47 (Bankr. D. Utah 2010) ....... 15

**RULES** **Page**

11 U.S.C. § 105(a) ... 1, 17

11 U.S.C. § 541 ... 15

11 U.S.C. § 541(a) ... 2

11 U.S.C. § 542 ... 13

11 U.S.C. § 542(e) ... *Passim*

28 U.S.C. § 157 ... 3

28 U.S.C. § 157(b) ... 3

28 U.S.C. § 1334 ... 3

28 U.S.C. § 1408 ... 3

28 U.S.C. § 1409 ... 3

Federal Rule of Bankruptcy Procedure 2002 ... 1

Federal Rule of Bankruptcy Procedure 9014 ... 1, 17

California Rules of Professional Conduct Rule 1.16 ... 15

California Rules of Professional Conduct Rule 1.16(e) ... 14

California Rules of Professional Conduct Rule 1.16(e)(1) ... 10

**TO THE HONORABLE MARTIN A. BARASH, UNITED STATES BANKRUPTCY JUDGE:**

Jeremy W. Faith, in his capacity as the Chapter 11 Plan Fiduciary (the “Plan Fiduciary” or “Mr. Faith”), for the bankruptcy Estate of National Association of Television Program Executives, Inc., (“NATPE” or “Debtor”) herby submits this motion (the “Turnover Motion”), pursuant to sections 105(a) and 542(e) of title 11 of the United States Code (the “Bankruptcy Code”), the *Second Amended Plan of Liquidation for Small Business Under Chapter 11* (the “Plan”) [Dkt. No. 251], the *Order Confirming Second Amended Subchapter V Chapter 11 Plan, with Modifications* (the “Confirmation Order”) [Dkt. No. 258], and Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure, and seeks entry of an order compelling NATPE’s former general and special counsel, Arnold Peter dba Peter Law Group (together, “PLG”), to turn over and disclose to the Plan Fiduciary PLG’s complete client file with respect to any and all matters in which it represented NATPE during the period of January 1, 2018 through September 18, 2024 (the “Period”)[1] including all recorded information constituting, evidencing, or relating to all files, emails, correspondence (including texts and instant messages or other electronic communication), documents, records, memoranda, attorney notes, billing records, analyses, draft pleadings, deposition transcripts, exhibits, reports, and any other related documents, prepared, maintained, or received by PLG in connection with its representation of NATPE during the Period, whether maintained in hard copy or electronic form (in its original unedited format, including metadata) (collectively, the “Client File”); and any other recorded information or property of the Debtor in PLG’s possession not previously turned over to the Plan Fiduciary (“Turnover Records”).

In support of the Turnover Motion, the Plan Fiduciary respectfully states as follows:

---

[1] As an attorney, Mr. Peter has a duty to preserve his files for five years after the conclusion of the litigation. *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 587 (B.A.P. 9th Cir. 1995) (noting that attorneys are required to maintain litigation files for five years after the conclusion of a case.).

Case 1:24-ap-01151-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:43 Desc
Main Document Page 6 of 24

## I.

## INTRODUCTION

The Plan Fiduciary is entitled to turnover of PLG's Client File generated during its representation of NATPE because that client file is both NATPE's property under California law and is property of the estate under 11 U.S.C. § 541(a). There is no dispute that: (1) PLG served as NATPE's general counsel for many years leading up to its bankruptcy and also represented NATPE post-petition as its special and general counsel; (2) PLG has a professional and ethical responsibility to promptly produce NATPE's Client File to the Plan Fiduciary; (3) PLG has possession, custody or control of NATPE's Client File; (4) NATPE's Client File is property of the estate or the Debtor; (5) PLG has not produced (in the words of Mr. Peter) "the overwhelming number of emails" either in their "native" format[2] or PDF, or any text messages between it and NATPE, which constitute client communications; (6) instead, PLG has produced only approximately 42 Outlook emails in their native format; and (7) PLG and Mr. Peter have affirmatively withheld recorded information, including electronic documents and communications, that are part of the Client File or relate to the Debtor's property or financial affairs. These and other actions have harmed the Estate and need to end.

Thus, PLG should be ordered to (1) immediately begin making rolling productions and (2) complete its production of the Turnover Records by no later than 5:00 p.m. (PST) on July 31, 2025 (the "Turnover Deadline"). For avoidance of doubt, the Court should make clear that NATPE's Client File includes all of PLG's work product and communications of any type that Mr. Peter and/or PLG's other attorneys and staff in their capacity as NATPE's counsel, which includes emails, texts, and instant messages. Notably, the question is not the form of communication but rather its context, *i.e.*, did Mr. Peter or another PLG attorney or employee send or receive the document in their role as

---

[2] "Native" format describes electronically stored files in their original format without subsequent conversion of such files into another format (*e.g.*, from a Microsoft Word document into a PDF) and without any modification, alteration, or deletion of metadata. For emails, the "native" format is most commonly .msg or .eml.

Case 1:24-ap-01151-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:06:40 Desc Main Document Page 7 of 24

NATPE's counsel during the Period.

**II.**

**JURISDICTION**

The Court has jurisdiction over this Turnover Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**III.**

**BACKGROUND**

**A. The Bankruptcy Case and the Plan Fiduciary's Appointment**

On October 11, 2022 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under Subchapter V of chapter 11 of the Bankruptcy Code. The Debtor is a "small business debtor" as that term is defined under Sections 101(51D) and 1182(1) of the Bankruptcy Code. The Debtor elected to proceed under Subchapter V of the Bankruptcy Code for the purpose of liquidating its assets.

The Debtor operated as a "debtor in possession," allowing it to exercise substantially all rights of a trustee in the bankruptcy case. This also allowed the principal officers and directors of the Debtor to control the Debtor's books, records, email systems, and other electronic data almost two years after the Petition Date. On or about September 17, 2024, the Court entered the Confirmation Order confirming the Plan and approving the appointment of Jeremy W. Faith as the Plan Fiduciary of the Estate.

Confirmation of the Plan and the provision for the appointment of the Plan Fiduciary arose out of the mediated settlement between the Debtor and its largest creditor, Fontainebleau, the terms of which were incorporated into the Plan. Fontainebleau's acceptance of the Plan was conditioned in part on the appointment of the Plan Fiduciary, *inter alia*, to investigate the Debtor's financial records, and to pursue the Estate's claims. Thus, under the Plan, all of the Debtor's claims and interests, including causes of action, recovery of property, were expressly reserved under 11 U.S.C. § 1123(b)(3) and vested in the Plan Fiduciary. (*See* Conf. Order at pgs. 6-7, ¶K,

Case 1:24-bk-11055-MB Doc 32-1 Filed 06/26/25 Entered 06/26/25 21:06:40 Desc Main Document Page 8 of 24

lines 25-28, 1-3).

The Confirmation Order further provides for, directs, and authorizes, "[t]he Plan Fiduciary, as Disbursing Agent, . . . to take all actions necessary or appropriate, . . .to implement, effectuate and consummate the Plan in accordance with its terms, and to carry out the transactions contemplated by the Plan." (Conf. Order at p. 4, ¶G, lines 21-25).[3]

The Plan's Effective Date occurred on September 18, 2024.

**B. PLG's Representation of the Debtor**

Prior to the Petition Date, PLG provided general counsel services to the Debtor for more than 15 years. (*See* Decl. of Arnold Peter, Dkt. No. 97, pg. 11 ¶3). PLG was also an estate professional and represented the Debtor on numerous matters the Plan Fiduciary is tasked to investigate.

On March 16, 2023, the Debtor filed an Application for Authorization to Employ PLG as its general counsel and special litigation counsel effective as of the Petition Date (the "Application") [Dkt. No. 97]. The Application stated that PLG would render services to the Debtor that included, "representing the Debtor in the Navigators Action [defined below], addressing purchase and/or other business offers, and providing the contemplated general counsel services, and advise bankruptcy counsel accordingly. . ." (*Id*. pg. 6, ¶ 10). PLG also sought to continue its representation of the Debtor in the following pre-petition litigation: (i) arbitration filed by Fontainebleau before JAMS in the State of Florida, case number 5460000066 (the "JAMS Arbitration") and, (ii) lawsuit filed by Debtor in the United States District Court for the Central District of California against Navigators Insurance Company ("Navigators") for denial of directors and officers coverage Fontainebleau litigation (the "Navigators Action").

/ / /

[3] *See also*, Conf. Order at pg. 2, lines 17-19 ("The Plan Fiduciary's fees and expenses will be paid only from funds he collects through **the prosecution of estate claims** against third-parties to be **filed postconfirmation**[.]") (emphasis added).

In support of the Application, Mr. Peter submitted a declaration stating that:

> Since the filing of the Petition, PLG has performed the following tasks:
>
> (a) Assisting and advising NATPE's management in the negotiation of the Asset Purchase Agreement with Brunico,
>
> (b) Assisting and advising NATPE's management in responding to inquiries from employees,
>
> (c) Coordinating with NATPE management regarding the termination of independent contractors,
>
> (d) Assisting in addressing and responding to Fontainebleau's Objection to Confirmation of the Debtor's Plan,
>
> (e) Drafting, responding to, and participating in hearing on Debtor's application in the JAMS Arbitration to enforce a Confidentiality Order violated by the Fontainebleau, and
>
> (f) Providing various general counsel functions, as requested from time-to time.

(Peter Decl., Dkt. No. 97, pg. 12, ¶6). The Application was granted on May 9, 2023. In short, PLG was intimately involved with the Debtor's operations and financial affairs both pre and post-petition.

**C. The Pending Litigation**

Due to the impending statute of limitations, shortly after his appointment, on October 11, 2024, the Plan Fiduciary commenced a number of adversary proceedings, *inter alia*, seeking to avoid and recover the Debtor's interest in property pursuant to Sections 544(b), 547, 548, 549, and 550 of the Bankruptcy Code, including filing a complaint against PLG and Bommel (Adv. Case No. 1:24-ap-23288-MB) (collectively referred to herein as, the "Adversaries").[4] *See* Docket Nos. 273-279. In addition, the Adversaries also assert claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, corporate waste and negligence.

/ / /

[4] Approximately 24 days after the Plan Fiduciary's appointment, the two-year statute under 11 U.S.C. § 546(a) for the commencement of avoidance actions which the Plan Fiduciary was expressly charged to investigate expired necessitating the filing of the adversaries on October 11, 2024.

Case 1:24-bk-11051-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:43 Desc Main Document Page 10 of 24

Following the filing of the Adversaries, and as contemplated by the Plan, the Plan Fiduciary tendered an insurance coverage claim to the Debtor's insurance carrier Navigators, requesting *inter alia*, coverage for certain claims in the Adversaries under the applicable Directors and Officers liability coverage provisions of the policy.

On February 14, 2025, the Plan Fiduciary received a response letter from Navigators denying his request for coverage (the "Denial Letter"). The Plan Fiduciary disputes the Denial Letter and is in the process of contesting this decision; and is further considering bringing an action against Navigators for breach of the insurance agreement, among other things. However, the Plan Fiduciary's investigation has been frustrated in part by PLG's failure to make any reasonable effort to turn over the Client File, including documents related to its representation of NATPE in the Navigators Action.

**D. The Plan Fiduciary's Demands for Turn Over**

Beginning on October 3, 2024, the Plan Fiduciary sent an email to PLG's principal, Arnold Peter ("Mr. Peter"), demanding turn over NATPE's records in the possession of PLG. Multiple emails were exchanged regarding the turnover request, including Mr. Peter's representation that he needed to consult with insolvency counsel prior to turning over the requested documents. Mr. Peter responded to the Plan Fiduciary on October 8, 2024, indicating that he would turn over what he received from NATPE and turned over to Fontainebleau. Further that the documents were in PDF form and would be sent via transfer link. A transfer link was subsequently provided to the Plan Fiduciary on or about October 14, 2024 (after the 2-year statute of limitations), containing approximately 1,050 pages in PDF format.

However, the Plan Fiduciary later discovered that PLG has failed to produce significant portion of NATPE's documents in its possession as according to a declaration filed in the Bankruptcy Case by Mr. Peter, Fontainebleau's discovery request in 2022 generated "over 5,000 pages of electronically stored documents" and ultimately produced over 1,000 of those pages to Fontainebleau. (*See* Declaration of Arnold P.

Peter in Support of Confirmation Memorandum [Dkt. No. 85, 2:15-17]).

On March 31, 2025, the counsel for the Plan Fiduciary sent a letter to PLG specifically demanding turnover of PLG's Client File for NATPE (the "March 31 Letter," attached as Exhibit A to the concurrently filed Declaration of Meghann A. Triplett in support of the Turnover Motion ("Triplett Decl."). On April 15, 2025, counsel for the Plan Fiduciary sent a separate email to Mr. Peter reiterating the demand for turnover of NATPE's Client File and further clarifying that the Client File should include all PLG invoices not previously turned over as well as providing a Dropbox link to upload the requested documents. A true and correct copy of the April 15, 2025 Email is attached as Exhibit B to the Triplett Decl.

In response, on April 28, 2025, Mr. Peter advised that PLG would, "[o]f course, [produce] any documents within our possession or control that fall within what you describe as the 'client file'" and further that PLG "intend[ed] to upload these materials within two weeks [by Monday May, 12, 2025] to the link you have provided." Mr. Peter further admonished the Plan Fiduciary for seeking what he characterized as improper and "sweeping demands for electronically stored information ("ESI") implicate significant obligations under federal law and best practices governing discovery," and requested that the Plan Fiduciary comply with ESI protocol regarding the turnover request (the "4/28 Letter"). A true and correct copy of the 4/28 Letter is attached as Exhibit C to the Triplett Decl.

On May 2, 2025, Plan Fiduciary's counsel responded to the 4/28 Letter and provided additional authority for the proposition that the obligations and best practices governing discovery were not applicable to the Plan Fiduciary's request for turnover of NATPE's property, and PLG was obligated under both federal bankruptcy law and state law to turnover NATPE's Client File to the Plan Fiduciary. A true and correct copy of the Plan Fiduciary's May 2, 2025 Response is attached as Exhibit D to the Triplett Decl.

Notwithstanding its prior statement that PLG would turnover the NATPE "Client File to the Plan Fiduciary, Mr. Peter sent an additional response on May 12, 2025,

Case 1:24-ap-01051-MB Doc 32-1 Filed 06/26/25 Entered 06/26/25 11:16:40 Desc
Main Document Page 12 of 24

stating among other things that, he was unable to access the Dropbox link provided to upload; and further, "[t]o the extent your letter implies that the entirety of the attorney's file must be turned over without any limitation is an inaccurate statement of the law and inconsistent with governing ethical obligations." (the "May 12 PLG Response," at pp. 7-9). A true and correct copy of the May 12 PLG Response is attached as Exhibit E to the Triplett Decl. On May 13, 2025, counsel for the Plan Fiduciary sent an email (the "May 13 Email" attached to the Triplett Decl. as Exhibit F, at pg. 6) informing Mr. Peter that it had sent him a new direct link to the Dropbox folder and that Mr. Peter's email address was also added for access to the folder directly in Dropbox. Exh F, pg. 6. The May 13 email also requested that PLG "[p]lease provide the responsive documents to the Plan Fiduciary's requests for turnover without further delay. *Id*. Thereafter, to the extent you believe certain documents are not required to be produced, please identify and explain the reasons such documents, client materials, and/or estate property is being withheld." *Id*.

By May 27, 2025, PLG had yet to upload any documents and counsel for the Plan Fiduciary sent an additional email (*see* Exh F, "May 27 Email to Peter," at pp. 5-6) regarding the status of the documents PLG represented it would produce. *Id*. In response, Mr. Peter stated in an email (the "May 27 Email from Peter," *see* Exh F, at pg. 6) that he "spent an entire day last week attempting to complete the upload; however, it appears that the process did not go through successfully. I have contacted our IT technician and will carve out time in the next couple of days to attempt the upload again. I will email you once I believe the upload has been completed." Exh F, pg. 5.

On June 10, 2025, after nine months of obfuscation and undue delay, Mr. Peter finally provided an additional batch of documents relating to its representation of NATPE (the "June 10 Documents"). In an email sent that day, Mr. Peter informed the Plan Fiduciary that the June 10 Documents "were extracted directly from our document retention database" (which Mr. Peter would later reveal to be Clio, the online legal practice management software). Exh F, pp. 3-4. Mr. Peter further represented that the

Case 1:24-bk-11035-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:40 Desc Main Document Page 213 of 224

June 10 Documents, in combination with (presumably) all the documents he previously turned over (collectively, the "Turned Over Documents"), constituted "all documents in [PLG's] possession, custody, or control that you identified as falling within the scope of your request." Mr. Peter indicated that he would turn his attention to any invoices previously omitted covering the period from Dec. 2020 to Dec. 2022.

On June 12, 2025, Counsel for the Plan Fiduciary emailed Mr. Peter (the "June 12 Email to Mr. Peter") and requested that he confirm that the documents and emails that the Turned Over Documents "constitute the entire NATPE Client File (as outlined by the California State Bar in Formal Opinion NO. 19-0004, reproduced below in relevant part) during the period of January 1, 2018 through September 18, 2024." Exh F, pp. 3-4. As indicated, the June 12 Email to Mr. Peter then reproduced, in relevant part, California State Bar in Formal Opinion NO. 19-0004, which, among other things, states

> While not exhaustive, the following items are typically considered part of the former client's 'client materials and property' for purposes of release to the client at termination of representation:
>
> - **Original client papers and property**—original materials furnished to the lawyer by the former client and on behalf of the client.
> - **Communications to and from lawyer**—*communications to and from the client*, opposing counsel, witnesses or third parties, and notes of telephone or in-person conversations.
> - **Filed documents, discovery materials and transcripts**—pleadings and other documents filed with the court, court orders and opinions, discovery, and verbatim transcripts of the proceedings.
> - **Investigation and research reports**—investigation and research reports (both legal and factual) prepared by the lawyer or at the lawyer's direction.
> - **Attorney work product communicated to the client in the course of the representation**— research notes, notes regarding witnesses, strategy and tactics, and similar items generated in the course of the representation and communicated to the client.
> - **Electronic files and digital data**—intangible data concerning the matter in the form of electronic files and digital data, *including emails, text messages, other SMS messages, whether stored on hard drives, local or remote server, mobile*

> *devices, or messaging apps or cloud platforms*, and whether maintained solely in electronic/digital format or copies of physical files."

June 12 Email to Mr. Peter, pp. 3-4 (quoting CA State Bar, Formal Opinion No. 19-0004, at 4:143-144, 5:146-166) (italics added).

Later that same day, Mr. Peter replied by email (the "June 12 Email from Mr. Peter," Exh F, pg. 3) to the earlier email asking him to confirm that the Turned Over Documents included all of NATPE's Client File. Mr. Peter did not provide a straight "yes" or "no" answer. Nor did he state that PLG were intentionally withholding certain documents. Rather, Mr. Peter stated that

> *[a] reasonable and diligent search was conducted of all documents within the scope of the definition you provided, and all documents within our control, custody, or possession that are responsive to your request have been produced. These materials were extracted directly from our document retention database and were provided in their native electronic formats, to the extent applicable.*
>
> *To clarify further, the documents produced include—but are not necessarily limited to—the categories outlined in Formal Opinion No. 19-0004 of the California State Bar, and encompass all client materials and property reasonably necessary to the client's representation under Rule 1.16(e)(1) of the California Rules of Professional Conduct for the period from January 1, 2018 through September 18, 2024.*
>
> *Should any further responsive documents be identified, or should we locate files inadvertently omitted from our production, we will promptly supplement our production accordingly.*
>
> *Please let me know if you require any additional clarification*.

Exh F, pg. 3.

However, when Counsel for the Plan Fiduciary tested the completeness of the Turned Over Documents, including the June 10 Documents, by searching for material documents or communications internally referenced in the Turned Over Documents, it became apparent that a substantial amount of material documents and communication remain withheld, despite Mr. Peter's representations that he had turned over all NATPE-related documents and communications within his possession, control or custody.

Case 1:24-ap-01151-MB Doc 52-1 Filed 06/26/25 Entered 06/26/25 19:06:03 Desc Main Document Page 15 of 24

On June 13, 2025, Counsel for the Plan Fiduciary sent an email to Mr. Peter, reiterating that the Plan Fiduciary was seeking NATPE's entire client file, and that "NATPE's Client File includes all communications of any type that you and/or PLG's other attorneys and staff in their capacity as NATPE's counsel, which includes emails, texts, and instant messages." Exh F, pg. 2.

In sharp contrast with the representations in his June 12 Email, Mr. Peter admitted in an email two days later (the "June 15 Email", Exh F, pg. 1) that he intentionally withheld emails involving NATPE related communications and that the Turned Over Documents does not include all of NATPE's Client File. Specifically, Mr. Peter stated in the June 15 Email that

> *[e]mails directly related to [PLG's] representation [of NATPE] were preserved in one of two places:*
>
> *(a) If an email was determined to be directly relevant to a specific issue, it was saved to CLIO. This was not common as all emails were otherwise preserved as described below.*
>
> *(b)* ***The overwhelming number of emails remained in individual Outlook boxes or archives****. These archives are not organized by client and contain thousands of unrelated communications. We did not and do not maintain a separate, segregated Outlook folder containing all emails related to NATPE. Nor do we store any NATPE-related communications via text message or instant message platforms*.

Exh F, pg. 1 (emphasis added). In other words, Mr. Peter did not turnover any email communications between PLG and NATPE stored on Microsoft Outlook, which he still has access to unless he affirmatively deleted such emails. And, although Mr. Peter indicates that those NATPE related emails were not already separate or segregated, Outlook (and other similar email software programs) allows the user to search email addresses (e.g., Mr. Bommel's NATPE Address at "jpbommel@NATPE.org") or terms (*e.g.*, NATPE), which separates all such relevant emails with a simple term search. Then, the user may select any or all of the search results and save those emails by "dragging and dropping" them into a folder, creating files. Those files can then easily be uploaded onto Dropbox,

Case 1:24-ap-01155-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:43 Desc Main Document Page 16 of 24

Sharepoint, or like file-sharing program. In fact, PLG's document management system Clio, includes several functions to easily share client files, including direct upload to Dropbox or allowing third parties to access designated files. Mr. Peter's explanation that the NATPE related emails were not already separated or segregated is not a valid reason for Mr. Peter failing to provide any emails from Outlook as they are unquestionably part of the NATPE Client File.

Given PLG's intimate knowledge and involvement in the financial affairs of the Debtor, and its representation of NATPE as general and special counsel both pre-and post-petition, the Plan Fiduciary believes that PLG's Client File for NATPE is necessary to his investigation of the Debtor and the estate claims as required by the terms of the Plan and Confirmation Order. Moreover, it is imperative that the Plan Fiduciary receive PLG's Client File, including all correspondence and email communications related to NATPE for the Period because the Plan Fiduciary does not have access to the Debtor's data servers. As such, an unknown number of NATPE's records, including communications and information furnished to, exchanged among, and relied upon by NATPE which directly relate to NATPE's property and financial affairs, have not been transferred to the Plan Fiduciary as required by the Confirmation Order and are subject to turnover.

As explained above, the Plan Fiduciary has not received the vast majority of highly relevant email communications in PLG's possession. Invoices from PLG to NATPE from Nov. 2020 to Sept. 2022 (the month before the petition date) indicate Mr. Peter exchanged *scores* of emails with JP Bommel (NAPTE's former CEO), Andrew Kaplan (NAPTE's former Chairman of the Board), and other NATPE directors and officers, on matters relating to the financial condition of NATPE, litigation involving Fontainebleau, personal liability involving the directors and officers, employment contracts, severance packages, and the executive "deferred compensation" scheme, among other things.

/ / /

In addition, the Plan Fiduciary believes Mr. Peter is in possession, custody or control of recorded information related to the financial affairs of the Debtor. For example, the June 10 Documents include a retainer agreement entitled "Financial Restructuring Options" between Mr. Peter and Norton Rose Fulbright US LLP ("Norton Rose"), dated August 14, 2022, whereby the latter agreed to represent Mr. Peter and PLG in connection with their work was legal counsel for NATPE (the "Retainer Agreement", attached to the Triplett Decl. as Exhibit G)..[5] The Retainer Agreement indicates it was sent by email. *Id*. Because Norton Rose's representation of PLG relates to the financial affairs of the Debtor, the Plan Fiduciary believes all Mr. Peter's client held by Norton Rose, including all communications, related to the services performed pursuant to the Retainer Agreement, are subject to turnover under section 542(e).

The Plan Fiduciary has made good faith efforts to resolve this matter informally; however, given the lack of cooperation, delay, and apparent misrepresentations by Mr. Peter, the circumstances require this Court's intervention.

## IV.

## LEGAL ANALYSIS

### A. The Plan Fiduciary is Entitled to Turnover of All Recorded Information Related to the Debtor's Property, including the Client File, and the Debtor's Financial Affairs

Pursuant to section 542 of the Bankruptcy Code and applicable California law, materials created by PLG in the course and scope of representing the Debtor are property of the estate, not privileged as to the Plan Fiduciary, and must be turned over to the Plan Fiduciary.

/ / /

[5] This representation appears to be related to a $6,084 expense invoiced to NATPE in September 2022 by PLG for NATPE "Fees to Bankruptcy Counsel for initial consultation (not ultimately retained)." However, no such payment to Norton Rose was disclosed in the Debtor's Statement of Financial Affairs, Question No. 11 (Dkt. 27, SOFA, Part 6, 11¶).

Case 1:24-bk-11081-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:40 Desc
Main Document Page 18 of 24

Under California law, "an attorney has a duty to promptly surrender any communicated work product contained in an attorney's litigation file upon request of the client." *In re Ramirez*, 183 B.R. at 587 (*citing Rose v. State Bar*, 49 Cal. 3d 646, 655 (1989)); *see also Kallen v. Delug*, 157 Cal.App.3d 940, 950 (1984) (recognizing that attorney has unconditional duty to turn over files upon client's request because "an attorney's work product belongs absolutely to the client."). Rule 1.16(e) of the California Rules of Professional Conduct unequivocally provides that the attorney has the obligation to release, at the client's request, all client materials and property. The rule clarifies that this includes all "correspondence, pleadings, deposition transcripts, experts' reports and other writings, exhibits, and physical evidence, whether in tangible, electronic or other form..." In expounding upon Rule 1.16(e), the State Bar of California found that it covers, among other things, "communications to and from the client" and "electronic files and digital data, including emails, text messages, other SMS messages, whether stored on hard drives, local or remote server, mobile devices, or messaging apps or cloud platforms." CA State Bar, Formal Opinion No. 19-0004, at 4:143-144, 5:146-166.

The Bankruptcy Code expands PLG's obligation to turnover recorded information. Section 542(e) of the Bankruptcy Code provides that "subject to any applicable privilege . . ., the court **may order an attorney . . . that holds recorded information. . .relating to the debtor's property or financial affairs**, to turn over or disclose such recorded information to the trustee." 11 U.S.C. § 542(e) (emphasis added).

Here, the Client File unquestionably constitutes "recorded information . . . relating to the debtor's property or financial affairs," which is not subject to any privilege as NATPE's attorney-client privilege rests exclusively in the Plan Fiduciary. *See generally*, *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985) (a corporation's trustee in bankruptcy controls its attorney-client privilege). Thus, the qualification in § 542(e) providing for turnover "subject to any applicable privilege," is not appliable here because the Plan Fiduciary may waive any privilege rights held by

NATPE. Moreover, in matters before this Court, the scope and extent of the work-product doctrine is determined under federal, not state law, and federal case law uniformly holds that a client is entitled to ***all*** work product created by an attorney during his or her representation of the client.[6] Specifically, under section 541, "[a]s a matter of law, documents prepared while representing a debtor-corporation are property of the estate, as are documents, records, or papers relating to property of the estate." *Rushton v. Woodbury & Kesler, P.C. (In re C.W. Mining Co.)*, 442 B.R. 44, 47 (Bankr. D. Utah 2010)). Indeed, courts examining this exact issue have held that "under the broad scope of § 541, even attorney notes and research memoranda that were prepared in representing the debtors are property of the estate." *In re Hotels Nev., LLC*, 458 B.R. 560, 567 (Bankr. D. Nev. Oct. 20, 2011).

Despite this clear binding authority, and multiple requests over the past nine months, PLG has failed to make reasonable efforts to produce all of NATPE's Client File to the Plan Fiduciary. As established above, Mr. Peter has failed to conduct any search for NATPE related emails on Microsoft Outlook, where he may retrieve the "overwhelming number of emails" between PLG and NATPE by conducting simple searches, such as "NATPE" or "Bommel," for example. *See* Exh F, June 15 Email, pg. 1. Thus, Mr. Peter has not produced the "overwhelming number of emails" within NATPE's Client File. Also, based on Mr. Peter's June 15 Email, it appears that Mr. Peter has not conducted a single search of his cell phone or related cloud storage service, *e.g.*, iCloud, for relevant text messages between he and Mr. Bommel or other NATPE directors, officers, or employees. *Id*. Further, on information and belief, the Plan Fiduciary also believes that Mr. Peter has withheld documents that Mr. Peter compiled and/or reviewed as part of the discovery process in the Fontainebleau dispute. As such, Mr. Peter is violating Rule 1.16 by refusing to "promptly" provide the Plan Fiduciary with all NATPE's

[6] The question of privilege asserted in bankruptcy court is a procedural question and existing federal law is to be used." *Gottlieb v. Fayerman (In re Ginzburg)*, 517 B.R. 175, 182 (Bankr. C.D. Cal. 2014) (internal citations omitted).

Case 1:24-bk-11051-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:43 Desc Main Document Page 20 of 24

Client File. This is not a situation where PLG has been honestly and diligently working to produce NATPE's Client File and simply needs more time to finish its production. Rather, PLG has effectively stonewalled the Plan Fiduciary for more than nine months.

PLG also has an independent obligation under § 542 to turnover the Client Files to the Plan Fiduciary because that client file is NATPE's property now controlled by the Plan Fiduciary. Moreover, the recorded information described herein at issue relate to estate property (including the causes of action asserted in the pending Adversary Proceedings), and the Debtor's property and financial affairs, such as the documents and communications involved in Norton Rose's representation of Mr. Peter in connection with NATPE's financial restructuring options. Accordingly, all such recorded information is subject to turnover under § 542(e) unless the files are "[s]ubject to any applicable privilege," such as the attorney-client or work-product privilege, which are not applicable here.

This Court should not condone such violations and should order turnover of PLG's entire Client File relating to the Debtor for the Period, including any "privileged" documents.

**B. <u>The Relief Sought by the Plan Fiduciary Does Not Require an Adversary Proceeding</u>**

As for the suggestion that the Plan Fiduciary's is limited by ESI protocol and discovery in the pending litigation against PLG, § 542(e) authorizes the document production the Trustee seeks, irrespective of the pendency of any proceeding other than the bankruptcy case itself, and specifically provides that the Court can order the turnover of recorded information "after notice and a hearing" – no adversary proceeding is necessary. *See e.g.*, *In re Old BPSUSH Inc*., 2019 Bankr. LEXIS 1867, at *7-9 (Bankr. D. Del. June 20, 2019) (granting turnover motion under § 542(e)); *In re Crescent Res., LLC*, 457 B.R. 506, 530 (Bankr. W.D. Tex. 2011) (same); *Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Grp.* (*in Re Hechinger Inv. Co. of Del., Inc*.), 285 B.R. 601, 605, 615 (D. Del. 2002) (same). The United States Supreme Court, in examining §

Case 1:24-ap-01185-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 19:16:40 Desc
Main Document Page 21 of 24

542(e), concluded that "the legislative history establishes that § 542(e) was intended to restrict, not expand, the ability of accountants and attorneys to withhold information from the trustee." *Weintraub*, 471 U.S. at 351. The language of § 542(e) suggests that for the category of documents relating to the property or financial affairs of the debtor, Congress intended debtor to secure access through the streamlined procedure of "notice and hearing" rather than an adversary. In addition, pursuant to Rule 9014, in a contested matter not otherwise governed by the bankruptcy rules, a party may request relief by motion. The existence of pending litigation against PLG does not change this obligation or limit the Plan Fiduciary's ability to seek an order compelling PLG to promptly turn over the Client File and all records in its possession that "relat[e] . . . to the debtor's property or financial affairs," as the requested relief is independent.

Based on the foregoing, the Plan Fiduciary seeks the Court's intervention and an Order in furtherance of implementation of the Plan. Turnover relief pursuant to Bankruptcy Code §§ 105(a) and 542(e) is necessary, appropriate and warranted under the totality of the circumstances.

## V.

## **CONCLUSION**

For the reasons set forth above, Plan Fiduciary respectfully requests that the Court enter the Order granting the relief requested herein and granting such other relief as is just and proper.

DATED: June 26, 2025

**MARGULIES FAITH, LLP**

By: */s/ Meghann A. Triplett*
Meghann A. Triplett
Jonathan Serrano
Attorneys for Jeremy W. Faith,
Chapter 11 Plan Fiduciary

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **CHAPTER 11 PLAN FIDUCIARY'S MOTION FOR TURNOVER OF RECORDED INFORMATION RELATING TO THE DEBTOR'S PROPERTY OR FINANCIAL AFFAIRS IN THE POSSESSION OF ARNOLD PETER DBA PETER LAW GROUP; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **June 26, 2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On **June 26, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**: Service on Judge not required per Judge Barash's Procedures re: Serving Judge's Copy of Documents
**DEBTOR:** National Association of Television Program Executives, Inc., 3940 Laurel Canyon Blvd., Suite 324, Studio City, CA 91604

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **June 26, 2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

NONE.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 26, 2025 | Vicky Castrellon | */s/ Vicky Castrellon* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Motion to Amend Complaint (pt 2 of 2) Page 184 of 187

## ADDITIONAL SERVICE INFORMATION (if needed):

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

**Samuel Mushegh Boyamian on behalf of Interested Party Courtesy NEF**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Samuel Mushegh Boyamian on behalf of Other Professional Jeremy W. Faith**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Samuel Mushegh Boyamian on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Russell Clementson on behalf of U.S. Trustee United States Trustee (SV)**
russell.clementson@usdoj.gov

**Leslie A Cohen on behalf of Debtor National Association of Television Program Executives, Inc.**
leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com;bryn@lesliecohenlaw.com

**Christopher Cramer on behalf of Interested Party Courtesy NEF**
secured@becket-lee.com

**Jeremy Faith on behalf of Interested Party Courtesy NEF**
Jeremy@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Jeremy Faith on behalf of Other Professional Jeremy W. Faith**
Jeremy@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**John-Patrick McGinnis Fritz (TR)**
jpftrustee@lnbyg.com, jpf@trustesolutions.net

**William E Ireland on behalf of Defendant B.W. Hotel, L.L.C. dba Beverly Wilshire, A Four Seasons Hotel, a Delaware Limited Liability Company**
wireland@hbblaw.com, edocs@hbblaw.com

**Melissa Davis Lowe on behalf of Defendant Jean Pierre Bommel, an individual**
mlowe@shulmanbastian.com, avernon@shulmanbastian.com

**Melissa Davis Lowe on behalf of Interested Party Melissa Davis Lowe**
mlowe@shulmanbastian.com, avernon@shulmanbastian.com

**Michael B Lubic on behalf of Creditor Fontainebleau Florida Hotel, LLC d/b/a Fontainebleau Miami Beach**
michael.lubic@klgates.com, jonathan.randolph@klgates.com,klgatesbankruptcy@klgates.com

**Jonathan Serrano on behalf of Interested Party Courtesy NEF**
Jonathan@MarguliesFaithLaw.com,
vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com

**Derrick Talerico on behalf of Interested Party Brunico Communications Ltd**
dtalerico@wztslaw.com, maraki@wztslaw.com,sfritz@wztslaw.com,admin@wztslaw.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Motion to Amend Complaint (pt 2 of 2) Page 185 of 187
Case 1:24-bk-11051-MB Doc 32-1 Filed 01/22/25 Entered 01/22/25 21:06:40 Desc
Main Document Page 24 of 24

**Meghann A Triplett on behalf of Interested Party Courtesy NEF**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Meghann A Triplett on behalf of Other Professional Jeremy W. Faith**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**Meghann A Triplett on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**United States Trustee (SV)**
ustpregion16.wh.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Motion to Amend Complaint (pt 2 of 2) Page 186 of 187

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 16030 Ventura Blvd., Suite 470, Encino, CA 91436

A true and correct copy of the foregoing document entitled **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN ORDER GRANTING LEAVE TO AMEND THE COMPLAINT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 22, 2026**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On **January 22, 2026**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**JUDGE**: Service on Judge not required per Judge Barash's Procedures re: Serving Judge's Copy of Documents (Rev. 1/8/24).

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **January 22, 2026**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**SENT VIA EMAIL**
**DEFENDANT**: Arnold P. Peter, an individual d/b/a PETER LAW GROUP – apeter@peterlawgroup.com; aramirez@peterlawgroup.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 22, 2026 | Vicky Castrellon | /s/ Vicky Castrellon |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

Motion to Amend Complaint (pt 2 of 2) Page 187 of 187

## ADDITIONAL SERVICE INFORMATION (if needed):

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

**Samuel Mushegh Boyamian on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
samuel@marguliesfaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com

**John-Patrick McGinnis Fritz (TR)**
jpftrustee@lnbyg.com, jpf@trustesolutions.net

**Melissa Davis Lowe on behalf of Defendant Jean Pierre Bommel, an individual**
mlowe@shulmanbastian.com, avernon@shulmanbastian.com

**Jonathan Serrano on behalf of Interested Party Courtesy NEF**
Jonathan@MarguliesFaithLaw.com,
vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com

**Meghann A Triplett on behalf of Plaintiff Jeremy W. Faith, Chapter 11 Plan Fiduciary**
Meghann@MarguliesFaithlaw.com,
Angela@MarguliesFaithLaw.com;Vicky@MarguliesFaithLaw.com;Amber@MarguliesFaithLaw.com;Drew@MarguliesFaithLaw.com

**United States Trustee (SV)**
ustpregion16.wh.ecf@usdoj.gov

**2. SERVED BY UNITED STATES MAIL:**

**DEFENDANTS:**

Arnold P. Peter dba Peter Law Group
270 Coral Circle
El Segundo, CA 90245

Agent for Service of Process for
Arnold P. Peter, A professional Corporation
dba Peter Law Group--Arnold Peter
1230 Rosecrans Avenue, Suite 150
Manhattan Beach, CA 90266

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**